1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ETEROS TECHNOLOGIES USA, INC.; and
AARON MCKELLAR, a citizen of Canada,

        Plaintiffs,

        *v.*

UNITED STATES OF AMERICA;

UNITED STATES DEPARTMENT OF HOMELAND
SECURITY, a department of the U.S. Government;

UNITED STATES CUSTOMS AND BORDER
PROTECTION, an agency of the U.S. Department of
Homeland Security;

HARMIT S. GILL, in his Official Capacity as the Area
Port Director of United States Customs and Border
Protection for Blaine, Washington.

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE No. 25-181

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Noted for Consideration:
May 19, 2025

**<u>ORAL ARGUMENT REQUESTED</u>**

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................2
TABLE OF AUTHORITIES ...........................................................................................3
INTRODUCTION ...........................................................................................................1
STATEMENT OF FACTS ...............................................................................................2

    A.    Expedited Removal of Eteros's CEO, Plaintiff Aaron McKellar. ..........................3
    B.    Defendant Gill Denies ERO Reconsideration. .....................................................4
    C.    This Litigation and Related Proceedings. ............................................................5
    D.    CBP Vacates McKellar's Removal Order but Maintains its Legal Position...........6
    E.    CBP Rejects McKellar's April 29, 2025 Attempted U.S. Entry. ...........................7

ARGUMENT ..................................................................................................................8

I.    The Case Is Not Moot Because Effective Relief Can Still Be Granted and the
    Ongoing Dispute Falls Within Well-Recognized Exceptions to Mootness ......................8

    A.    The Legal Issues Are "Capable of Repetition, Yet Evading Review." ................10
    B.    The Government's Voluntary Rescission of the Challenged October ERO
        Does Not Moot the Case, Which Remains an Active Controversy. .....................13
    C.    Incomplete Relief and Ongoing Harm Confirm that the Case Is Not Moot..........18

II.    This Court Possesses Jurisdiction to Review Plaintiffs' Claims, Which Are Not
    Barred by 8 U.S.C. § 1252. ..........................................................................................21

    A.    Plaintiff Eteros Technologies USA, Inc. is a U.S. Corporation—Not an
        "Alien" Seeking Admission as the Government Claims—and the APA and
        Federal Question Jurisdiction Permit this Court's Review of the Issues Before
        It. .....................................................................................................................22
    B.    Dismissing this Case Would Effectively Immunize CBP from Judicial Review
        When it Misapplies the Law or Targets Company Executives with Retaliatory
        Motives. ............................................................................................................25

CONCLUSION...............................................................................................................28
WORD COUNT CERTIFICATION ................................................................................2

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 2

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013)..................................................................10, 14

4

*Church of Scientology of Cal. v. United States*, 506 U.S. 9 (1992)............................................21

5

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) .................................................16

*Eteros Techs. USA Inc. v. United States,* Ct. Int'l Tr. Case 25-36..............................................6

6

*Eteros Techs. USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Tr. 2022)..... 1, 3, 24, 26

7

*FBI v. Fikre*, 601 U.S. 234 (2024). ......................................................... 2, 14, 15, 17

8

*FEC v. Akins*, 524 U.S. 11 (1998)...............................................................................24

9

*Fikre v. FBI*, 35 F.4th 762 (9th Cir. 2022). ...............................................................15

10

*Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167 (2000) .......................... 2, 14, 17

11

*Honig v. Doe*, 484 U.S. 305 (1988) ...................................................................... 12, 13

*INS v. St. Cyr*, 533 U.S. 289 (2001) .......................................................................27

12

*Marbury v. Madison*, 5 U.S. 137 (1803). ...............................................................27

13

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943)...............................................................24

14

*Spencer v. Kemna,* 523 U.S. 1 (1998) ...................................................................20

*Turner v. Rogers*, 564 U.S. 431 (2011). ...............................................................2, 10

15

*United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199 (1968) .............................14

16

*United States v. Sanchez-Gomez*, 138 S. Ct. 1532 (2018) .........................................12

17

*United States v. W. T. Grant Co.*, 345 U.S. 629 (1953) ...............................................15

18

*Webster v. Doe*, 486 U.S. 592 (1988) ...................................................................24

**Statutes**

19

20

21 U.S.C. § 1907...................................................................................................passim

21

21 U.S.C. § 841...................................................................................................passim

21 U.S.C. § 863...................................................................................................passim

22

28 U.S.C. § 1331..................................................................................................25

23

5 U.S.C. § 701.....................................................................................................23

24

5 U.S.C. § 702.....................................................................................................25

25

5 U.S.C. § 706.....................................................................................................22

26

8 U.S.C. § 1252...................................................................................................passim

27

28

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00181-KKE] - 3

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

**Other Authorities**

Ruling HQ H327540 (March 7, 2024) .......................................................................3, 5

**Regulations**

8 C.F.R. § 235.4 ............................................................................................4

## INTRODUCTION

On October 4, 2024, Defendant U.S. Customs and Border Protection ("CBP") subjected Plaintiff Aaron McKellar—a Canadian national with a valid L-1A visa and CEO of Plaintiff Eteros Technologies USA, Inc.—to expedited removal, five-year inadmissibility, and immediate revocation of his NEXUS trusted traveler status. CBP's purported basis: a legally untenable view that Eteros's lawful involvement in a state-authorized and federally-legal business which deals in *inter alia* cannabis equipment rendered McKellar an "illicit trafficker" of controlled substances under INA § 212(a)(2)(C), as informed by 21 U.S.C. §§ 841 and 1907. Defendants' position is flatly inconsistent with:

- 21 U.S.C. § 863(f)(1), which exempts from all federal "drug paraphernalia" prohibitions and penalties "**any person** authorized by local, State, or Federal law," and

- judicial decisions from the U.S. Court of International Trade expressly reviewing Eteros's operations under 21 U.S.C. § 863(f)(1) and confirming they are lawful and exempt from federal drug paraphernalia laws and not subject to federal prohibition. *See Eteros Techs. USA, Inc. v. United States*, 592 F. Supp. 3d 1313, 1317 (Ct. Int'l Tr. 2022); *see also, Keirton USA, Inc. v. United States*, 600 F. Supp. 3d 1270 (Ct. Int'l Tr. 2022).

On the same day Defendants' Motion to Dismiss was filed— April 21, 2025—Plaintiff learned that CBP had unilaterally vacated the removal order and now contends this case is moot. But soon thereafter, on April 29, 2025, Plaintiff McKellar presented himself for admission and CBP again barred McKellar from entering the United States, invoking the same grounds of inadmissibility, contradicting the insincere mootness claims of Defendants' Motion.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00181-KKE] - 1

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

This controversy remains live. CBP's litigation-driven rescission is a textbook example of a dispute "capable of repetition, yet evading review." *See Turner v. Rogers*, 564 U.S. 431, 439–40 (2011). So too is the Defendants' insincere vacatur of the ERO precisely the kind of "voluntary cessation" that does not moot a case. *See e.g., Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167 (2000); *FBI v. Fikre*, 601 U.S. 234 (2024). The events of April 29 demonstrate that the challenged conduct has already recurred and will continue unless this Court rejects Defendants' repeated attempts to insulate its unlawful and retaliatory conduct.

This Court has ample jurisdiction to resolve the legal questions presented, including whether CBP's interpretation of 21 U.S.C. §§ 841, 863, and 1907 unlawfully broadens the "reason to believe" standard under INA § 212(a)(2)(C), and whether Plaintiffs are entitled to declaratory and injunctive relief under the APA and the Constitution. Because Plaintiffs' harms, including serious harms to Eteros (a U.S. corporate plaintiff) are ongoing, meaningful relief remains available, and a continuing controversy exists, the Government's Motion to Dismiss should be denied.

## STATEMENT OF FACTS

Eteros Technologies USA, Inc. ("Eteros") is a U.S. company that manufactures and distributes specialized agricultural equipment, including machinery used in cannabis processing, through operations in the U.S. and in coordination with its Canadian sister company, Eteros Technologies Inc. This equipment is considered "drug paraphernalia" under federal law, 21 U.S.C. § 863(d), but Congress has expressly exempted from federal prohibition "<u>any person</u> <u>authorized by local, State, or Federal law</u>" to possess or distribute such items. 21 U.S.C. § 863(f)(1). This is a *personal exemption* that attaches to individuals, corporate or natural persons,

Plaintiffs' Response in Opposition to
Defendants' Motion to Dismiss
[Case No. 2:25-cv-00181-KKE] - 2

Neville Peterson LLP
701 Fifth Ave., Ste. 4200-2159
Seattle, WA 98104-4089
(206) 905-3648

U.S. and foreign citizens alike. *Eteros Techs. USA, Inc. v. United States*, 592 F. Supp. 3d 1313, 1331 (Ct. Int'l Tr. 2022) (citing the Government's brief, the CIT observed: "While it is true that 'subsection 863(f)(2) exempts an entire category of items, while **subsection 863(f)(1) … applies to … person[s]**,' Def.'s Br. at 17-18." (emphasis added)). In other words, state-authorized cannabis-related merchandise and conduct attendant thereto (*e.g.,* manufacture, possession, distribution) is legal under federal paraphernalia law. Both the U.S. Court of International Trade and CBP have recognized this. In 2022, the CIT held that it is lawful for Eteros to import cannabis-related equipment into states that authorize cannabis activity, confirming that Eteros's products fall squarely within § 863(f)(1)'s exemption—confirming there is nothing illicit about Eteros's business. *Eteros, supra*; CBP Headquarters Ruling HQ H327540 (March 7, 2024).

Despite these clear pronouncements, Defendants have treated Eteros and its personnel as illicit drug traffickers under 21 U.S.C. §§ 841 and 1907, inadmissible under the Immigration and Nationality Act, codified at 8 U.S.C. § 1182 ("INA § 212"), and specifically INA § 212(a)(2)(C), and leading to the dispute now before this Court.

### A. Expedited Removal of Eteros's CEO, Plaintiff Aaron McKellar.

Plaintiff Aaron McKellar is a Canadian citizen and the founder and CEO of Eteros Technologies Inc., and Plaintiff Eteros Technologies USA, Inc. As part of his role, McKellar frequently travels to the United States to oversee Eteros's U.S. operations. He holds a valid L-1A intracompany transferee visa (valid through April 30, 2026) and, until last year, was a member of the NEXUS trusted traveler program (McKellar Decl. ¶ 12). On October 4, 2024, McKellar attempted to enter the United States at the Blaine, Washington port of entry using his NEXUS card, intending to make a short personal trip (*id.* ¶ 8). CBP officers pulled him aside for secondary

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 3

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

inspection and intensely questioned McKellar about Eteros's business, suggesting that Eteros "facilitated" illegal marijuana production (*id.* ¶ 9). McKellar explained that Eteros's activities are entirely lawful and even referenced the CIT's 2022 decisions in *Eteros* and *Keirton* confirming the legality of Eteros's products. CBP dismissed 21 U.S.C. § 863(f)(1) and the CIT's seminal decisions, claiming incorrectly that "the exemption doesn't apply to people" (*id.* ¶ 10)—a view that, notably, contradicts the text of § 863(f)(1), which exempts "**persons authorized**" by state law.

After several hours of hostile questioning, McKellar withdrew his application for admission and sought to return to Canada, as permitted by regulation (McKellar Decl. ¶ 11); 8 C.F.R. § 235.4. CBP refused and instead issued an Expedited Removal Order ("ERO") against McKellar. The ERO claimed McKellar was inadmissible not as a controlled substance trafficker under INA § 212(a)(2)(C)(i)—which would have afforded McKellar the right to a hearing before an immigration judge for adjudication of the legal issue underlying this dispute. Rather, the ERO was issued under INA § 212(a)(7)(A)(i)(I) (insufficient documentation), likely because document deficiency determinations are not reviewable legal issues. McKellar's ERO carried an automatic five-year ban on reentry and resulted in the immediate revocation of McKellar's NEXUS membership. CBP officers warned McKellar that any attempt to re-enter the U.S. would be a federal felony (McKellar Decl. ¶ 13). CBP then removed McKellar back to Canada that same day, on October 4, 2024.

**B. Defendant Gill Denies ERO Reconsideration.**

Through counsel, McKellar promptly filed a motion for reconsideration with the Area Port Director at Blaine, Defendant Harmit S. Gill, seeking vacatur of the ERO (McKellar Decl. ¶ 13).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 4

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

The motion documented multiple errors and abuses of discretion in the removal process, including CBP's refusal to allow withdrawal of the application for admission, the validity/sufficiency of travel documents and lack of questions/allegations relating to INA § 212(a)(7), and the legally incorrect premise that Eteros's lawful business made McKellar an illicit trafficker (*id.* ¶ 14).

By letter dated November 12, 2024, Port Director Gill denied reconsideration (Compl. ¶ 31), asserting that McKellar was inadmissible, not under INA § 212(a)(7) (as had been asserted in the October 4, 2025 ERO), but instead, under INA § 212(a)(2)(C)(i) because of "the involvement of Eteros in the production of marijuana and the proliferation of the marijuana industry." Compl. Ex. C at 1. The letter further noted that the CIT's 2022 *Eteros* decision did not govern "the admissibility of individuals"—this, despite § 863(f)(1) applying to "**any person authorized**" by state law—explicitly rejecting the CIT rulings (and CBP HQ Ruling H327540) as irrelevant. Compl. Ex. C at 2. Having exhausted administrative remedies, Plaintiffs turned to the courts for relief.

## C. This Litigation and Related Proceedings.

On January 29, 2025, Plaintiffs Eteros and McKellar filed this action seeking judicial review of CBP's underlying legal theory of narcotics trafficking and related retaliatory measures against Eteros employees. Plaintiffs' Complaint asks this Court to:

(1) vacate the October 4, 2024 ERO and resulting five-year entry ban;
(2) declare unlawful and set aside Defendants' *de facto* policy of treating individuals involved in authorized and federally exempt cannabis commerce as "illicit traffickers" under INA § 212(a)(2)(C);
(3) enjoin Defendants from engaging in further retaliatory or unlawful actions against Plaintiffs (such as unwarranted inadmissibility findings, visa cancellations, or NEXUS revocations); and
(4) order affirmative relief including reinstatement of McKellar's NEXUS membership.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 5

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

On the same day, Eteros (as a sole plaintiff) also filed a related action in the CIT seeking to enforce that court's seminal rulings interpreting the sole federal law prohibiting drug paraphernalia, 21 U.S.C. § 863, and to prevent what Eteros alleged was CBP's deliberate and retaliatory circumvention of the CIT's *Eteros* and *Keirton* decisions. In the CIT action, Eteros seeks relief under the All Writs Act, among other claims. *See e.g., Eteros Techs. USA Inc. v. United States,* Ct. Int'l Tr. Case 25-36.

The Government's response in the CIT case is telling: in moving to dismiss the CIT case, the Government argued that the CIT lacks jurisdiction over these immigration-related issues, emphasizing that any remedy should be pursued "outside" the CIT (notwithstanding Defendants' circumvention of the CIT's 2022 *Eteros* decision). *See e.g.,* Motion to Dismiss, CIT Case No. 25-36, ECF 24. Indeed, the Government has repeatedly insisted that judicial review of the treatment of Eteros and its personnel is available in a district court—even as it now attempts to shut the courthouse door in this district court case.

### D. CBP Vacates McKellar's Removal Order but Maintains its Legal Position.

In April 2025, faced with litigation in two federal courts, and after unsuccessful settlement negotiations, Defendants took some sudden corrective action seeking to shield CBP's unlawful conduct from this Court's review. On April 18, 2025, CBP's Acting Area Port Director in Blaine sent notice to Eteros that, upon further consideration, the Port had decided "to vacate the Order of Expedited Removal in [McKellar's] case." Gov't Mot. Dismiss, Ex. 1. The notice stated that CBP would update its records to reflect that McKellar's October 4, 2024 removal order was vacated and that his departure from the U.S. that day would instead be recorded as a "withdrawal"

Plaintiffs' Response in Opposition to
Defendants' Motion to Dismiss
[Case No. 2:25-cv-00181-KKE] - 6

Neville Peterson LLP
701 Fifth Ave., Ste. 4200-2159
Seattle, WA 98104-4089
(206) 905-3648

of his application for admission. *Id.* at Ex. 1. In effect, CBP unilaterally rescinded the ERO and the attendant five-year ban on entry.

Two days later, on April 21, 2025, the Government filed the present Motion to Dismiss, arguing that because McKellar's ERO had been vacated, Plaintiffs' claims were now moot (ECF 19 at 8). The Government's motion contends that, even aside from mootness, this Court lacks subject-matter jurisdiction over Plaintiffs' claims under certain jurisdiction-limiting provisions of the INA.

Crucially, however, Defendants' belated vacatur of the ERO did not resolve the underlying dispute or remedy the harm to Plaintiffs. CBP has never disavowed its position that McKellar (and others at Eteros) are inadmissible "traffickers" under INA § 212(a)(2)(C).

### E. CBP Rejects McKellar's April 29, 2025 Attempted U.S. Entry.

Just days after disingenuously claiming this case was mooted by the ERO vacatur, CBP again barred McKellar from the United States on the very same grounds—this time citing both INA §§ 212(a)(2)(C) and (a)(7). Indeed, on April 29, 2025, McKellar appeared for U.S. preclearance at Vancouver International Airport, seeking to board a flight to Las Vegas, Nevada (McKellar Decl. ¶ 17). CBP officers at the airport were presented with a packet of information disclosing relevant documents related to McKellar's immigration saga. CBP reviewed the documents, subjected McKellar to renewed secondary inspection and questioning, and ultimately determined that he was inadmissible to the United States under INA § 212(a)(2)(C) (*i.e.,* "reason to believe" involvement in illicit drug trafficking) and refused him entry. This time, CBP refused admission but allowed McKellar to "withdraw" his application for admission and return to Canada (presumably because an ERO could not be issued on Canadian soil) (McKellar Decl.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 7

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

¶¶ 19-20). The result for Plaintiffs McKellar and Eteros was the same: McKellar was once again excluded from the U.S. based on the continued implementation of Defendants' *de facto* policy treating state-authorized and federally exempt cannabis equipment business involvement as equivalent to drug trafficking.

As of this filing, McKellar remains unable to enter the U.S. based on Defendants' misapplication of INA § 212(a)(2)(C). His NEXUS trusted traveler privileges remain revoked (McKellar Decl. ¶ 23). Eteros's U.S. operations continue to suffer from the absence of its CEO and the near-guarantee of similar actions against other personnel[1] (*see* McKellar Decl ¶ 24). As CBP instructed McKellar in their encounter in October 2025, the agency clearly meant what it said when it told Eteros that U.S. customers of cannabis processing equipment should buy from U.S. companies and citizens (McKellar Decl ¶ 9).

## **ARGUMENT**

### **I. The Case Is Not Moot Because Effective Relief Can Still Be Granted and the Ongoing Dispute Falls Within Well-Recognized Exceptions to Mootness**

Defendants' mootness argument fails. Although the October 2024 ERO was vacated, Plaintiffs' actions are hardly limited to that now-rescinded order. The ongoing legal controversy—*i.e.,* whether CBP may treat McKellar's federally lawful activities as a basis for inadmissibility and punitive immigration consequences—remains unresolved. A case is not moot if "the parties continue to have a personal stake in the outcome" and if concrete relief is still

---

[1] Another Eteros executive, Amanda James – a Canadian citizen and recent/former L-1A work visa holder– was likewise targeted by Defendants. This began in June 2024 when CBP refused Ms. James admission at the Blaine, WA port of entry, and recommended to USCIS that they not approve her L-1A visa application. Ms. James reapplied and eventually, USCIS approved her application and issued a new L-1A visa. Then, on March 28, 2025, USCIS issued a Notice of Intent to Revoke (NOIR) Ms. James's visa petition, alleging eligibility issues again premised on the nature of Eteros's business. Ms. James's ability to travel to the United States for her job has been jeopardized as a result, and she faces the prospect of revocation of her status. (McKellar Decl. ¶24(f)-(g); *id.* Ex. G).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00181-KKE] - 8

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

available. Here, Plaintiffs plainly retain a stake for which concrete relief is available as McKellar remains banned from travel to the U.S. on an unlawful basis; Eteros's ability to have its representative freely conduct business pursuant to L-1A employment visas is unlawfully revoked; and McKellar's NEXUS membership remains revoked. Eteros—a U.S. corporation—is slowly but surely being pushed out of the U.S. market by CBP's deliberate and retaliatory exclusion of its senior leadership. By weaponizing the border to prevent the entry of Eteros's executives, CBP has effectively crippled the company's ability to manage U.S. operations, meet with customers, oversee compliance, and fulfill its commercial obligations, inflicting precisely the kind of structural harm that equitable relief is designed to redress. McKellar Decl ¶ 24.

These harms can each be redressed by a favorable decision from this Court holding that CBP lacks sufficient "reason to believe" that McKellar and Eteros are engaged in criminal aiding and abetting of narcotics trafficking under 21 U.S.C. §§ 841 and 1907, and have no facts to support a finding of inadmissibility under INA § 212(a)(2)(C) because *inter alia* the relevant conduct is not "illicit" and has been found lawful by the CIT, and therefore, CBP has no "reason to believe" sufficient to support their baseless 212(a)(2)(C) theory.

A live case and controversy remains. Meaningful relief hinges on clearing Eteros and its employees of the narcotics trafficking allegations. The Court can grant meaningful relief by denying the instant dismissal motion, and on the merits, for example, declaring inadmissibility determinations unlawful insofar as they rely on conduct reviewed and found lawful by the CIT, and enjoining CBP from re-imposing INA § 212(a)(2)(C) findings based on that same conduct, as well as ordering restoration of NEXUS privileges. Such relief would directly redress Plaintiffs'

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 9

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

injuries. Accordingly, the case is not moot under basic Article III principles and the Court can fashion meaningful relief for Plaintiffs' persisting injuries.

Indeed, as examined below, this case squarely fits at least two well-recognized exceptions to mootness: (i) disputes capable of repetition, yet evading review; and (ii) voluntary cessation by the defendant of the challenged conduct.

**A. The Legal Issues Are "Capable of Repetition, Yet Evading Review."**

This is a classic case that where the legal dispute at the center of this litigation is inherently capable of recurring but, due to the actions and gamesmanship of Defendants, evades judicial review in the absence of an exception to mootness. The Supreme Court has held that a case falls within the "capable of repetition, yet evading review" exception where "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Turner v. Rogers*, 564 U.S. 431, 439–40 (2011) (internal quotations omitted). Both criteria are satisfied here.

A party "cannot automatically moot a case simply by ending its unlawful conduct once sued," because under such a paradigm it "could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [it] left off, repeating this cycle until [it] achieves all [its] unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Here, by vacating the October ERO after litigation commenced, the Government tries to shield CBP's unlawful behavior before any court could adjudicate its legality—a pattern that has already repeated, and will repeat endlessly absent a court decision on the merits. Thus, the first element is easily satisfied.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 10

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

An expedited removal at the border is, by design, a summary action executed immediately, and the very nature of expedited removal means the "challenged action" (removal and ban from entry) is essentially over as soon as it begins unless CBP follows required due process procedures and sends the matter to an immigration law judge. McKellar's October ERO was cleverly disguised as an action taken under INA § 212(a)(7) (insufficient documentation), despite the true reason lying under INA § 212(a)(2)(C). This gamesmanship sought to shield the unlawful INA § 212(a)(2)(C) determination from immediate judicial review, despite due process requiring the issuance of a Notice to Appear before an immigration judge. The agency's legal errors have already repeated in actions against Eteros, which is exactly what the mootness exception is meant to prevent.

Indeed, there is now more than a "reasonable expectation"—McKellar has already attempted entry following Defendants' performative revocation of the October ERO and he was again deemed inadmissible for the same fabricated reasons: INA § 212(a)(2)(C) and INA § 212(a)(7). The agency's determination of inadmissibility is continuing—it was applied on April 29 to exclude McKellar and, absent relief, will be applied to McKellar and other Eteros employees on future attempts to enter the U.S. The same CBP policy or practice of treating state-authorized cannabis paraphernalia involvement as a disqualifying drug trafficking offense—despite this conduct being lawful under federal law—will dog McKellar each time he appears at the border. Thus, this is not a situation of mere speculation that perhaps Eteros or McKellar will re-trigger the issue; rather, CBP has effectively marked Eteros employees as inadmissible indefinitely, meaning the next attempted entry will certainly yield the "same action"—unlawful

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 11

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

refusal of admission (and potentially another expedited removal, forced withdrawal, or more severe immigration action that flouts constitutional due process protections).

Importantly, the capable-of-repetition doctrine requires the same complaining party (here, McKellar) to be *likely* to experience the issue again. That standard is clearly met. McKellar's situation is ongoing and recurrent by nature of his international business and the agency's stance. Additionally, Plaintiff Eteros—a U.S. corporation—also faces repetition of harm: the company will continue to be deprived of its executive's presence and face disruption of its U.S. operations so long as CBP's legal position persists. In effect, the policy and legal interpretation at issue remains in force and threatens repeated impact on Plaintiffs.

The Supreme Court instructs that courts should not require a plaintiff to forego lawful activity or assume the risk of enforcement in order to get judicial relief. Unlike the criminal defendants in *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540-41 (2018) (mootness exception not applicable based on mere conjecture of future criminal prosecution; requiring more than the possibility of repetition through illegal acts, with the Court reasoning that we "assume [people] will conduct their activities within the law" rather than presume future criminality), McKellar's exposure to repetitive unlawful enforcement by CBP does not depend on him breaking any law. It depends on him engaging in normal, lawful behavior—*e.g.,* traveling for work pursuant to his L1 visa, and continuing to operate a business lawful under state and, by virtue of § 863(f)(1), federal law. Thus, the policy rationale that mooted Sanchez-Gomez (which involved assuming people would commit crimes again) is absent here. If anything, the more analogous precedent is *Honig v. Doe*, 484 U.S. 305, 320-21 (1988), where a student's disability-driven behavior was likely to recur—the Court found it reasonable to expect recurrence given

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 12

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

conditions beyond the plaintiff's full control (there, an emotional condition). Likewise, here McKellar cannot unilaterally eliminate the risk—short of abandoning his U.S. business and the requisite travel to the U.S. involved in running a U.S. company and employing U.S. citizens— because the recurrence stems from CBP's untenable legal position, not from wrongful or illicit conduct McKellar should simply stop. The *Honig* Court deemed such a situation capable of repetition. *Honig,* 484 U.S. at 320-21. So too here, it is eminently reasonable to expect CBP will repeat its unlawful actions against McKellar whenever he appears at the border, as long as the legal question is unresolved in Plaintiffs' favor. McKellar's April 29th refusal of admission makes this cycle of unlawful treatment crystal clear and not speculative.

We submit that both prongs of the "capable of repetition, yet evading review" tests are satisfied. Dismissing this case now would virtually ensure that the important legal issue—whether compliance with § 863(f)(1) protects an individual from being deemed a drug trafficker under immigration law—would escape judicial resolution, even as CBP continues to apply its policy to McKellar (and other Eteros employees). The exception to mootness exists to prevent exactly that scenario. The Court should therefore treat the controversy as live despite the vacatur of the October removal order.

**B.  The Government's Voluntary Rescission of the Challenged October ERO Does Not Moot the Case, Which Remains an Active Controversy.**

Even apart from the capable-of-repetition doctrine, the Supreme Court has made clear that a defendant cannot automatically moot a case simply by rescinding its unlawful conduct once sued. This is known as the voluntary cessation doctrine. When the defendant voluntarily ceases the challenged action but retains the power to resume it, the case remains live unless the defendant meets a "stringent" burden to show mootness. Specifically:

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 13

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

> A defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power to determine the legality of the practice. If it did, courts would be compelled to leave the defendant free to return to its old ways. Thus, the standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 173 (2000) (citing *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). The burden on the party asserting mootness is "heavy"—it is not enough to protest that the issue is over; the defendant must essentially demonstrate that it will not—and cannot—relapse into its old ways

More recently, in *FBI v. Fikre*, the Supreme Court reiterated that a defendant's voluntary cessation of challenged conduct does not automatically moot a case. Instead, the defendant bears the "formidable" burden of showing it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." 601 U.S. 234, 241 (2024) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). The *Fikre* decision emphasizes that this heavy burden exists because "[t]he Constitution deals with substance, not strategies[,]" *Fikre, supra*, and were the rule more lenient, a defendant could temporarily halt its misconduct after being sued, get the case dismissed as moot, and then resume the wrongful behavior once the court is out of the picture. The law does not permit such tactical mooting; otherwise a defendant could "'suspend its challenged conduct … win dismissal, and later pick up where it left off,' even repeating 'this cycle' until it accomplishes all its unlawful ends." *Fikre*, 601 U.S. at 241-42 (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). "A live case or controversy cannot be so easily disguised, and a federal court's constitutional authority cannot be so readily manipulated. To show that a case is truly moot, a defendant must prove 'no reasonable

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 14

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

expectation' remains that it will 'return to [its] old ways.'" *Id.* (citing *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)).

Defendants cannot meet that heavy burden here. CBP's rescission of McKellar's ERO is a classic example of a voluntary, strategic retreat that does nothing to preclude the agency from reinstituting the challenged conduct. Tellingly, CBP has not disavowed the grounds on which it removed McKellar, nor has it changed or renounced the interpretation of law that led to the removal. To the contrary, CBP's actions on April 29, 2025, show that the agency persists in the very conduct at issue—*i.e.,* excluding McKellar from the U.S. on the premise that his company's lawful importation of machinery used by customers in the legal cannabis industry makes him an illicit trafficker. The Supreme Court decision in *FBI v. Fikre*, arose after the FBI removed plaintiff from the No-Fly List during litigation and argued the case was moot. The Ninth Circuit rejected that argument, emphasizing that the FBI's bare declaration that it did "not anticipate" relisting the plaintiff was insufficient; the agency had not "repudiated the decision" to put him on the list or changed the underlying criteria for listing. *Fikre v. FBI*, 35 F.4th 762, 771 (9th Cir. 2022). Thus, nothing prevented the agency from reinstating the plaintiff to the list later. The Ninth Circuit concluded there was "no reason to believe that the government would not place Fikre on the list 'for the same reasons that prompted'" the original action, and accordingly the case was not moot. *Id.* at 770–72. The Supreme Court agreed that Fikre's case was not moot, stressing that the FBI had failed to demonstrate that its change "could not reasonably be expected to recur." 601 U.S. at 242. The Court explained that "[w]hat matters is not whether a defendant repudiates its past actions, but what the defendant can prove about its future conduct." *Id.* at 235. In other words, a superficial rescission unaccompanied by a meaningful change in policy, will not moot the case.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 15

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

1   Here, CBP's litigation-driven vacatur of the removal order falls far short of meeting the

2   *Laidlaw/Fikre* standard. Far from an indication that the wrongful conduct will never recur, CBP's

3   continued treatment of McKellar as inadmissible (in April 2025 and going forward) shows the

4   opposite. CBP has not corrected or renounced its legal position that McKellar is inadmissible for

5   trafficking – it has simply removed the formal October ERO that was subject to direct attack in

6   the Plaintiffs' Complaint. This is akin to a city repealing an ordinance during a lawsuit in an effort

7   to moot the issue but immediately reenacting it even before the suit is dismissed, a scenario in

8   which courts routinely refuse to dismiss as moot even when the reenactment has not occurred at

9   the time of the court's review of defendant's mootness argument. *See, e.g., City of Mesquite v.*

10  *Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n.11 (1982) (holding that repeal of a law did not moot

11  the case, because the city openly indicated it might reenact the law; thus "the defendant is free to

12  return to [its] old ways" and the controversy remains).

13      All evidence indicates that CBP's rescission of the removal order was a tactical litigation

14  move—a classic "voluntary cessation"—rather than a genuine change of heart or position. The

15  agency gave McKellar no relief beyond lifting the technical 5-year bar, and it certainly did not

16  restore his NEXUS card or admit error. To the contrary, on the same day Defendants filed their

17  motion to dismiss, they appended "Exhibit 1" documenting the vacatur, but notably did not

18  provide any assurance that McKellar would be treated as admissible henceforth. There was no

19  statement that CBP had reconsidered its (mis)interpretation of INA § 212(a)(2)(C) or that it now

20  agrees state-authorized and federally exempt cannabis paraphernalia should not trigger

21  inadmissibility. There is no doubt that CBP will continue to unlawfully refuse admission on the

22  same grounds; and indeed, CBP has already done so by forcing withdrawal of his application for

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 16

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

admission on April 29 under the identical INA provisions. At best, the Defendants' representations to this Court in its Motion to Dismiss are insincere; at worst, they demonstrate a lack of candor.

CBP has maintained McKellar on an inadmissible footing. No law or binding policy change prevents CBP from issuing a new ERO against McKellar tomorrow if he attempted entry without withdrawing. Defendants have not changed the "criteria" or rationale underlying their actions. They have never acknowledged Plaintiffs' central contention that compliance with § 863(f)(1) should foreclose a finding of illicit trafficking. Thus, the offending conduct is ongoing, and even if briefly paused, easily could recur. Under these circumstances, the voluntary cessation doctrine squarely applies to keep the case alive. *See Friends of the Earth*, 528 U.S. at 189 (case not moot where defendant's compliance and cessation efforts did not make it absolutely clear violations would not restart).

Here, we have no formal policy revision by CBP—just a rescission of McKellar's October removal now shown to be tactical, rather than sincere. We already know McKellar and other Eteros employees will be subjected to adverse immigration actions on the same unlawful policy. Clearly then, the Defendants' litigation posture indicates that CBP believes it acted lawfully and is free to act similarly in the future. The mootness doctrine does not countenance this cat-and-mouse game, where an agency avoids judicial scrutiny by temporarily altering the facts on the ground, only to resume the challenged conduct later.

*Fikre* is particularly instructive as the FBI at least provided a declaration stating it did not anticipate relisting Fikre on the no-fly list and pointed to "currently available information" that gave no reason to relist. The Supreme Court found even such a declaration insufficient to moot

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 17

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

the case, because the FBI did not rule out future relisting and had not undone the past harm. Here, CBP offers no declaration at all that it would not reimpose the ERO or that it had reconsidered McKellar's status; quite the opposite: CBP merely removed one penalty (the October ERO and 5-year bar) while contemporaneously continuing to brand McKellar inadmissible (the April 29 determination of inadmissibility under INA § 212(a)(2)(C) and INA § 212(a)(7)). This is far weaker than the FBI's assurance deemed inadequate in *Fikre*. If *Fikre* was not moot, a fortiori this case is not.

Defendants' voluntary cessation leaves the core dispute unresolved and already recurring. They have not met their burden—indeed, they did not even try—to show that the challenged conduct will never recur. Therefore, the case remains live under the voluntary cessation exception to mootness. Dismissing under these circumstances would reward an obvious litigation tactic and thwart review of an agency action that is capable of repetition. The Court should decline to find mootness where the challenged policy remains in effect in practical terms and can be, and has already been, applied to Plaintiffs again and again.

### C.  Incomplete Relief and Ongoing Harm Confirm that the Case Is Not Moot.

Even when a specific agency order is rescinded, a case is not moot if that order or action has caused continuing collateral consequences that remain unremedied. Here, the October 2024 ERO, although strategically vacated, and conclusions reached by the agency in its review of Plaintiffs' Motion to Reconsider, have enduring effects that go far beyond the rescinded ERO. First, the manufactured basis cited for the October ERO says that McKellar was removed and banned from entry under INA § 212(a)(7) (insufficient documentation); however, Plaintiffs' request to vacate the ERO was denied by Defendant CBP Port Director Gill because:

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 18

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

> [McKellar] was found inadmissible under section 212(a)(2)(C)(i) of the INA due to the involvement of the Eteros Technologies USA, Inc in the production of marijuana and the proliferation of the marijuana industry, which results in reason to believe that employees of the organization are engaged in narcotics trafficking and inadmissible under section 212(a)(2)(C)(i) of the INA.

ECF 1-2 at Ex. C. The denial letter concludes by stating: "Based on the aforementioned, Mr. McKellar is inadmissible under section 212(a)(2)(C)(i) of the INA." There is no discussion in this document of 212(a)(7), which was the basis dishonestly listed as the reason for the October ERO. This strongly indicates that CBP (i) viewed McKellar as an inadmissible narcotics trafficker under 212(a)(2)(C); and (ii) wanted there to be a severe consequence for McKellar (e.g. the ERO, 5-year ban, and NEXUS revocation); but (iii) CBP did not want their decision to be subject to judicial review, which explains why it justified the ERO initially under 212(a)(7), which does not require a hearing before an immigration judge.

Thus, even though the ERO was strategically vacated after litigation commenced in an attempt to further shield CBP's unlawful and retaliatory behavior from judicial review, the erroneous legal position asserted by Port Director Gill in his denial of Plaintiffs' Motion for Reconsideration stands. McKellar Decl. at Ex. D. Port Director Gill's denial determination remains subject to legal review, especially since CBP will not follow DHS protocol in scheduling the dispute for a hearing before an immigration judge. There is no other course of relief available for Plaintiffs Eteros and McKellar available here, other than potentially acting contrary to CBP (*e.g.* seeking entry without a waiver at a land border and subjecting an employee to arrest and detention), and hoping that CBP will, this time, follow the law and schedule a hearing in immigration court. Surely this Court can see through CBP's conduct and will not require such hoop jumping to answer the legitimate legal question presented.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 19

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

Likewise, McKellar's NEXUS membership revocation—executed as part of the October ERO process—remains in place. CBP has not restored his trusted traveler privileges, and consequently, the NEXUS revocation stands as an outstanding grievance that can be redressed by this Court (by ordering reconsideration or reinstatement) and that keeps the case live.

Additionally, the stigma and legal classification of McKellar as an aider and abettor of drug trafficking is a significantly harmful collateral consequence stemming directly from CBP's October 4 ERO action that persists. Courts have recognized that being labeled as having engaged in criminal conduct (even without a formal conviction) can be a continuing injury. In the immigration context, being found inadmissible under a serious ground like INA § 212(a)(2)(C) is a lifelong black mark unless removed. The vacatur of the removal order did not erase the finding that he is inadmissible; it only erased the consequence (the removal itself and the five-year bar) for that particular October 4 instance. McKellar remains inadmissible unless this Court grants relief. This is analogous to the principle from *Spencer v. Kemna,* 523 U.S. 1, 7-8 (1998) (" … some concrete and continuing injury other than the now-ended incarceration or parole— some 'collateral consequence' of the conviction—must exist if the suit is to be maintained."), and similar cases[2]: if concrete collateral legal consequences remain, the case is not moot. While *Spencer* itself found no collateral consequences in a parole revocation after release (because any future consequence depended on the plaintiff committing another crime)—here the future consequences do not depend on new misconduct, they attach from a continuing government

---

[2] *See e.g., Carafas v. LaVallee,* 391 U.S. 234, 237-38 (1968); *Fiswick v. United States*, 329 U.S. 211, 237-38 (1946).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 20

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

position that can only be undone by judicial determination or affirmative agency act (which has not occurred). Therefore, the controversy has not "expired" whatsoever.

The overarching relationship between the parties and the legal issue at the center of their dispute remains contentious and unsettled. The Court should still issue declaratory relief on the legality of CBP's interpretation and thereby affect the parties' rights going forward—that is not an abstract exercise, but a resolution of a live legal dispute that will guide future conduct. In *Church of Scientology of Cal. v. United States*, the Supreme Court held that handing over tapes to the IRS did not moot an appeal because the court could still order relief (destruction or return of tapes) to partially redress the injury. 506 U.S. 9, 13 (1992). Similarly here, the Court can order relief (restoring NEXUS, declaring rights vis-à-vis admissibility, etc.) that will materially improve Plaintiffs' position. As long as "effective relief" is available, the case is not moot and the controversy between Plaintiffs and Defendants remains alive under multiple mootness exceptions. It would undermine Article III's purposes—and basic principles of justice and fairness—to dismiss the case as moot when CBP's challenged conduct continues to affect Plaintiffs and has already recurred since the time the Government's Motion was filed. The Court should therefore refuse to dismiss the case for mootness.

## II. This Court Possesses Jurisdiction to Review Plaintiffs' Claims, Which Are Not Barred by 8 U.S.C. § 1252.

Beyond mootness, Defendants argue that 8 U.S.C. § 1252 deprives this Court of subject-matter jurisdiction over Plaintiffs' claims, characterizing the suit as an impermissible challenge to an ERO and related discretionary decisions. Defs. Br. at 10-11. This argument misreads the different types of plaintiffs involved in this case—both foreign and U.S. persons—as well as the scope of Plaintiffs' claims. In fact, now that the October 2024 removal order has been vacated by

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 21

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

the agency, it is incorrect for Defendants to assert that Plaintiffs are asking the Court to "reverse" any specific ERO *per se*. Rather, Plaintiffs seek review of CBP's legal determinations and actions that are outside the ERO (such as the April 29, 2025 inadmissibility finding, NEXUS revocation) and a declaratory judgment clarifying the relationship of the laws under 21 U.S.C. §§ 841, 863, and 1907 to prevent—or, at the very least, to inform—future issues. The Court has ample jurisdiction under the APA and the federal-question statute to entertain such matters.

**A. Plaintiff Eteros Technologies USA, Inc. is a U.S. Corporation—Not an "Alien" Seeking Admission as the Government Claims—and the APA and Federal Question Jurisdiction Permit this Court's Review of the Issues Before It.**

Under the Administrative Procedure Act, agency actions that are "final" and alleged to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (5 U.S.C. § 706(2)(A)), or "contrary to constitutional right" (§ 706(2)(B)), are subject to judicial review, except where statutes preclude review or the action is committed to agency discretion by law. Here, CBP's finding that McKellar is inadmissible under certain INA provisions, and its resultant revocation of his NEXUS card, are final agency actions in the sense that they mark the consummation of the agency's decision-making process regarding McKellar's current and future admissibility, and legal consequences flow from them (denial of entry, loss of NEXUS, potential inadmissibility flag in databases). There is no further administrative appeal available to McKellar—his request for reconsideration of the removal was denied, and NEXUS revocation decisions are at CBP's "sole discretion" with no appeal by regulation. Thus, Plaintiffs have no avenue to seek redress except through the courts.

The jurisdiction-stripping provisions of § 1252, particularly those added to curb aliens' challenges to removal orders, do not apply to a U.S. corporate plaintiff like Eteros with

Plaintiffs' Response in Opposition to
Defendants' Motion to Dismiss
[Case No. 2:25-cv-00181-KKE] - 22

Neville Peterson LLP
701 Fifth Ave., Ste. 4200-2159
Seattle, WA 98104-4089
(206) 905-3648

independent harms extending beyond the ERO itself. *See* Compl. at ¶ 21. Eteros alleges repeated *ultra vires* and retaliatory CBP actions at the U.S. border, which presents a different posture than Defendants would have this Court believe. Eteros's presence as a U.S. corporation reinforces the case for jurisdiction: at the very least, Eteros can seek declaratory relief that CBP's interpretation of the drug trafficking laws, 21 U.S.C. §§ 841 and 1907, is wrong, and separate injunctive relief preventing the agency from retaliating or impeding Eteros's lawful business through unlawful means.

To be clear, no statute expressly or otherwise prohibits APA review of such claims. Plaintiffs' focus now is on the legal standard applied (reason to believe trafficking), and the collateral NEXUS decision, and the unlawful application of these erroneous legal theories to Eteros employees at the border, none of which is shielded from review by statute.

The APA's "committed to agency discretion" exception, 5 U.S.C. § 701(a)(2), is also no bar here. While the decision to grant or deny NEXUS membership is discretionary in general (based on risk assessments, etc.), Plaintiffs are not merely saying CBP should have exercised its discretion differently. They allege CBP acted with an improper motive and on an improper legal premise—*i.e.*, that McKellar was a drug trafficker—which is a legal determination, not a discretionary judgment, that affords the accused a day in court. An agency cannot shield itself from review by cloaking a legal error (misinterpretation of a statute) under the mantle of discretion.[3] Courts routinely review whether an agency has relied on improper factors or

---

[3] Note the agency's cloaking as discretionary determinations that clearly impose legal conclusions and are not discretionary: in McKellar's April 29 entry rejection, as well as his October 4 initial rational of inadmissibility, CBP cites INA § 212(a)(7) even though § 212(a)(2)(C) was revealed in Defendant Gill's rejection letter as the true basis for inadmissibility. Notably, in the October 4 and April 29 actions, CBP never once mentioned any document deficiencies despite citing INA § 212(a)(7) as the basis for the actions taken.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 23

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

erroneous legal standards in determinations that otherwise might be discretionary. *FEC v. Akins*, 524 U.S. 11, 25-26 (1998) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). Here, if CBP revoked NEXUS because it deemed McKellar involved in illicit trafficking, and if that premise is "not in accordance with law" (given the § 863(f)(1) exemption), then the Court can and must set aside the decision as unlawful without second-guessing any true "discretionary" judgment about McKellar's risk profile. In other words, the APA permits the Court to ensure that CBP's actions comply with the governing statutes—21 U.S.C. §§ 841, 863, 1907, and 8 U.S.C. § 1182— and are not arbitrary or retaliatory.

The Complaint also raises a retaliation and due process claim (noting violations of the Fifth Amendment). *See* Compl. at ¶¶ 44-51. It alleges that Defendants targeted Plaintiffs because of Eteros's CIT litigation victory and imposed severe penalties without the procedural safeguards that due process requires. *Id.* at 34.

Moreover, Eteros as a U.S. company can assert a due process right against arbitrary governmental interference in its lawful business activities—such as an agency ignoring the federal exemption to drug paraphernalia prohibitions, 21 U.S.C. § 863(f)(1), and effectively blocking the company from doing lawful business in the U.S. by barring its CEO and executives despite multiple CIT decisions determining this authorized conduct is exempt from federal prohibitions and lawful. *Eteros Techs. USA, Inc. v. United States*, 592 F. Supp. 3d 1313, 1317 (CIT 2022); *see also*, *Keirton USA, Inc. v. United States*, 600 F.Supp.3d 1270 (CIT 2022).

These constitutional deprivations bolster the case for judicial review because if no court can hear these claims, Plaintiffs suffer an injury with no remedy, raising serious constitutional red flags. *Webster v. Doe*, 486 U.S. 592 (1988), is illustrative: even where a statute committed certain

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 24

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

decisions to agency discretion (CIA Director firing an employee), the Court held that there was a presumption in favor of judicial review of colorable constitutional claims absent the clearest congressional statement.

Therefore, the better reading is that this Court has § 1331 federal-question jurisdiction to hear the statutory and constitutional claims, and the APA provides a cause of action and waiver of sovereign immunity, 5 U.S.C. § 702, for Plaintiffs to obtain equitable relief. Indeed, Plaintiffs expressly styled the action as one for "Declaratory Relief and Review of Agency Action under the APA." *See* Compl. at ¶ 1. The APA's requirements (finality, no other adequate remedy, etc.) are satisfied. No alternative remedy exists—McKellar could not have, for example, petitioned an immigration judge to overturn the October ERO because CBP intentionally disguised their action under INA § 212(a)(7)—which is committed to agency discretion and does not provide an opportunity to appear before an immigration judge—until after McKellar was returned to Canada, and only then did the agency abruptly shift its reasoning and justified his ERO under INA § 212(a)(2)(C). *See* ECF 1-2 at Ex. C.

### B. Dismissing this Case Would Effectively Immunize CBP from Judicial Review When it Misapplies the Law or Targets Company Executives with Retaliatory Motives.

The Government's Motion to Dismiss leans heavily on 8 U.S.C. § 1252(a)(2)(A), which restricts judicial review of EROs, providing: "no court shall have jurisdiction to review … any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of [expedited] removal…." However, § 1252(a)(2)(A) does not strip this Court's jurisdiction because *inter alia* Plaintiffs are not seeking reversal of an

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 25

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

ERO; rather, judicial review of the unlawful legal policies underlying CBP's retaliatory treatment of Plaintiffs.

Moreover, Section 1252(a)(2)(D) reflects a clear and deliberate congressional judgment that constitutional and legal questions must remain subject to judicial review, and this is especially true where the agency and litigation counsel engage in tactical gamesmanship to shield unlawful agency actions from judicial review. The statutory language—"Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law…" (*id.*)—demonstrates Congress's affirmative desire to carve out a space for judicial oversight of the legal and constitutional contours of immigration enforcement. Thus, when CBP applies a retaliatory and erroneous interpretation of federal narcotics law to impose draconian immigration penalties and then takes measures to insulate itself from judicial review, § 1252(a)(2)(D) demonstrates Congressional intent for such legal questions to not be insulated from Article III review.[4]

To be clear, with the ERO now vacated, Plaintiffs do not seek to relitigate the facts of the removal proceeding. Rather, they challenge the legal premise underlying CBP's retaliatory misapplication of INA § 212(a)(2)(C): namely, that lawful conduct under 21 U.S.C. § 863(f)(1)—as judicially recognized as lawful in *Eteros Techs. USA Inc. v. United States*, 592 F. Supp. 3d

---

[4] While § 1252(a)(2)(D) preserves judicial review for constitutional claims and legal questions via a "petition for review," the petition route is unavailable in ERO cases like McKellar's—where Defendants' intentionally obfuscated their removal action under INA § 212(a)(7) (discretionary and non-reviewable) instead of INA § 212(a)(2)(C) (non-discretionary and reviewable), so that McKellar could not raise these legal issues before an immigration judge. This was all intended to insulate the agency's indefensible legal position from judicial review so Defendants could continue their relentless targeting of Eteros and its executives at the border.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 26

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

1313 (Ct. Int'l Trade 2022)—nonetheless constitutes evidence of being an "illicit trafficker" in a controlled substance.

This Court should not countenance the Government's attempts to collapse this wide-ranging dispute into a single, since-vacated removal action. To dismiss this action as jurisdictionally barred would be to allow CBP to adopt and apply legally erroneous interpretations of INA § 212(a)(2)(C)—with profound consequences for US persons like Eteros and its US-based employees, and foreign persons like McKellar—while insulating those interpretations from meaningful judicial oversight. This is precisely the result Congress sought to avoid by enacting § 1252(a)(2)(D), and Defendants' Motion to Dismiss cannot be squared with longstanding principles of judicial review or the presumption in favor of reviewability of administrative action. *See INS v. St. Cyr*, 533 U.S. 289, 298 (2001) ("A construction of the amendments that would entirely preclude review of pure questions of law ... would give rise to substantial constitutional questions.").

There is simply no legal or equitable principle that prevents this Court from granting declaratory or injunctive relief in the unique, retaliation-driven circumstances presented. To the contrary, judicial relief is the only way to resolve this injustice and provide Plaintiffs with a non-retaliatory interpretation of the laws under Title 21. The Court should reject any suggestion that it must dismiss simply because immigration facts are involved. When an agency's action is unlawful, it is "the province and duty of the judicial department" to say so and to fashion appropriate relief. *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-cv-00181-KKE] - 27

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

1

## <u>CONCLUSION</u>

2

Plaintiffs respectfully submit that the Governments' Motion to Dismiss should be denied.

3

This case is not moot. Plaintiffs continue to face adverse harm from Defendants' actions. The

4

legal questions presented are ongoing, have repeated, and will remain capable of repetition if left

5

unaddressed by this Court. Dismissal on mootness would reward an apparent tactical rescission

6

to evade judicial review and leave Plaintiffs without a forum to vindicate their rights. Moreover,

7

this Court has jurisdiction to hear Plaintiffs' claims under the APA and general federal-question

8

principles—claims extending beyond the four corners of the ERO and implicating broader

9

patterns of unlawful retaliation against a U.S. corporate Plaintiff and its Canadian CEO and

10

executives that the INA was not intended to shield from review.

11

For these reasons, Plaintiffs respectfully request that the Court deny the Motion and allow

12

this case to proceed to a determination on the merits. By doing so, the Court will ensure that the

13

important questions raised receive the thorough consideration and resolution that they warrant.

14

15

16

17

DATED this 12th day of May, 2025.

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00181-KKE] - 28

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

PRESENTED BY:        NEVILLE PETERSON LLP

/s/ Richard F. O'Neill
Richard F. O'Neill, WSBA 43858
NEVILLE PETERSON LLP
701 Fifth Ave., Ste. 4200-2159
Seattle, WA 98104-4089
(206) 905-3648
roneill@npwny.com

/s/ John M. Peterson
John M. Peterson*
Patrick B. Klein*
NEVILLE PETERSON LLP
One Exchange Plaza at 55 Broadway
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

/s/ Douglas A. Cowgill
Douglas A. Cowgill, WSBA 44319
CROSS BORDER VISAS, U.S. BUSINESS IMMIGRATION LAWYERS
808 Nelson Street Box 12148, 17th Floor
Vancouver, BC, Canada, V6Z 2H2
(604) 689-8472
dcowgill@crossbordervisas.com

*Counsel for Plaintiff Eteros Technologies USA, Inc. and
Plaintiff Aaron McKellar*

*Counsel admitted pro hac vice*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
[CASE NO. 2:25-CV-00181-KKE] - 29

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

## **CERTIFICATE OF SERVICE**

I hereby certify that on today's date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the defendants, who are CM/ECF participants.


Dated: this 12th day of May, 2025

                                        /s/ Richard F. O'Neill
                                        Richard F. O'Neill

Response in Opposition to Motion to Dismiss
[Case No. 2:25-cv-00181-KKE]

Neville Peterson LLP
701 Fifth Ave., Ste. 4200-2159
Seattle, WA 98104-4089
(206) 905-3648

## **WORD COUNT CERTIFICATION**

I, Richard F. O'Neill, hereby certify that this memorandum contains 8,382 words, in compliance with the Local Civil Rules, specifically LCR 7(e).


 /s/ Richard F. O'Neill
Richard F. O'Neill, WSBA 43858
NEVILLE PETERSON LLP
701 Fifth Ave., Ste. 4200-2159
Seattle, WA 98104-4089
(206) 905-3648
roneill@npwny.com

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
[CASE NO. 2:25-CV-00181-KKE]

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648