UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ETEROS TECHNOLOGIES USA, INC. et al., <br><br> Plaintiff(s), <br> v. <br><br> UNITED STATES OF AMERICA et al., <br><br> Defendant(s). | CASE NO. C25-181-KKE <br><br> ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

Plaintiff Eteros Technologies USA, Inc. ("Eteros") and its Chief Executive Officer, Aaron McKellar, allege that the U.S. Customs and Border Patrol ("CBP") is unlawfully retaliating against them on the basis of Eteros's involvement in the cannabis industry. Dkt. No. 1. Defendants move to dismiss this action for lack of subject matter jurisdiction, arguing that the case is moot and that 8 U.S.C. § 1252 divests the Court of jurisdiction over this matter. Dkt. No. 19.

The Court held oral argument on this motion on June 17, 2025. Dkt. No. 27. For the reasons below, the Court grants in part and denies in part Defendants' motion to dismiss (Dkt. No. 19).

# I. BACKGROUND

## A. Factual Allegations[1]

McKellar is a Canadian citizen and the CEO of Eteros, a Washington corporation with its U.S. headquarters in Las Vegas, Nevada. Dkt. No. 1 ¶¶ 4–5. "Eteros specializes in manufacturing, importing, and distributing agricultural machinery, including cannabis-related equipment[.]" *Id.* ¶ 4. McKellar holds a L-1A visa, which allows him to travel to the United States to oversee Eteros's U.S. operations. *Id.* ¶ 5.

In 2021, Eteros attempted to import agricultural machinery used in marijuana production through the land port of entry at Blaine, Washington. *Eteros Techs. USA, Inc. v. United States*, 592 F. Supp. 3d 1313, 1317–18 (Ct. Int'l Trade 2022) ("*Eteros I*"). CBP excluded the machinery as "drug paraphernalia" barred under the Controlled Substances Act. *Id.* at 1318. Eteros timely protested the exclusion, which was denied. *Id.* Eteros then challenged the denial of its protest before the U.S. Court of International Trade ("CIT"). *Id.* at 1319. The court held that because Washington had legalized marijuana, the Controlled Substances Act did not justify the seizure or forfeiture of Eteros's machinery. *Id.* at 1332. The CIT further explained that Washington's repeal of certain marijuana-related prohibitions "authorize[s] Eteros under the exemption at 21 U.S.C. § 863(f)(1) such that section 863—including the prohibitions of subsection (a) and the basis for seizure and forfeiture under subsection (c)—is inapplicable to Eteros' Subject Merchandise at the Port of Blaine, Washington[.]" *Id.* (cleaned up). The United States did not appeal this decision.

In March 2024, CBP issued a prospective ruling ("HQ H327540") in response to an unrelated third party's request concerning the importation of certain hemp products. Dkt. No. 1-2 at 89. In that ruling, CBP addressed whether certain hemp products would be considered "drug

---

[1] For purposes of a motion to dismiss, the Court assumes that the facts alleged in the complaint are true. *Edmonson v. City of Martinez*, 17 F. App'x 678, 679 (9th Cir. 2001).

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 2

paraphernalia" under 21 U.S.C. § 863 and identified the proper tariff classification of these products. *Id.* HQ H327540 did not discuss the admissibility of individuals, but Plaintiffs allege that through rulings like this one, CBP "indicated that companies may engage in the importation of cannabis-related merchandise pursuant to 21 U.S.C. § 863(f)(1) when persons, like Eteros, are authorized to engage in such activities by state law." Dkt. No. 1 at 17. In HQ H327540, CBP summarized the *Eteros* decision:

> Recently, the Court of International Trade ("CIT") in *Eteros Technologies USA, Inc. v. United States* examined the 21 U.S.C. § 863(f)(1) exception. The CIT discussed cannabis drug paraphernalia being directly imported into a state that has legalized cannabis use to a consignee in the same state. The court determined "…authorization' by one legislative body—be it local, state, or federal—to engage in one of the enumerated activities—be it manufacture, possession, or distribution of drug paraphernalia—would be sufficient to trigger the (f)(1) exemption's applicability.

Dkt. No. 1-2 at 95. The referenced exemption at 21 U.S.C. § 863(f)(1) exempts from the general criminal prohibition on the sale, transport, or importation of drug paraphernalia "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items[.]" *Id.* at 94. Ultimately, CBP concluded that the specific hemp products at issue did not constitute drug paraphernalia under 21 U.S.C. § 863 because they were not primarily intended for ingesting cannabis or marijuana. *Id.* at 98.

On October 4, 2024, McKellar attempted to enter the United States for personal reasons, unrelated to his work with Eteros. Dkt. No. 1 ¶ 20. CBP detained him at the Blaine, Washington port of entry and interrogated him about Eteros's operations and the company's litigation before the CIT. *Id.* Plaintiffs allege that CBP officers made inappropriate comments during their encounter, such as "[y]our customers should buy from an American company" and "buy from an American citizen." *Id.* ¶ 23. McKellar told CBP that his company was a legitimate American business and that he had been granted a L-1A work authorization on two prior occasions. *Id.* ¶ 22.

CBP sought a formal statement from McKellar, which he refused to provide. Dkt. No. 1 ¶ 24. McKellar then requested to withdraw his application for admission and return to Canada. *Id.* CBP denied his request for withdrawal and proceeded to conduct a sworn statement interview. *Id.* ¶ 25. CBP issued an Expedited Removal Order ("ERO") against him pursuant to Section § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), which bars admission to foreign nationals who do not possess adequate documentation. *Id.* ¶ 26; Dkt. No. 1-2 at 2. (stating that McKellar did not "possess[] … a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document"). The ERO included a five-year entry ban and warnings that attempts to re-enter the United States would lead to felony prosecution and imprisonment. Dkt. No. 1 ¶ 27. CBP also revoked McKellar's NEXUS membership and confiscated his NEXUS membership card.[2] *Id.* ¶ 28.

On October 16, 2024, McKellar submitted a formal request for reconsideration of the ERO under 8 C.F.R § 103.5. Dkt. No. 1 ¶ 31, Dkt. No. 1-2. The reconsideration request sought to vacate the ERO, rescind the five-year ban, and restore McKellar's NEXUS membership. Dkt. No. 1-2 at 11–18. CBP denied the request on November 12, 2024. Dkt. No. 1 ¶ 32. The denial determination stated that Plaintiffs "are encouraging, promoting and assisting in the production of marijuana for the purpose of distributing and dispensing and thus, are aiding and abetting the narcotics trafficking of marijuana … in violation of 21 USC 841." Dkt. No. 1-2 at 102. CBP also determined that the *Eteros* litigation before the CIT:

> did not determine [Plaintiffs'] business was outside the scope of federally illegal marijuana production, it simply granted them an exemption from the importation prohibitions in Title 21 USC 863. This ruling solely addressed the import restrictions associated with marijuana drug paraphernalia … 21 USC 863(f)[] has

---

[2] "The NEXUS program allows pre-screened travelers expedited processing when entering the United States and Canada." NEXUS, U.S. CUSTOMS & BORDER PROTECTION, https://www.cbp.gov/travel/trusted-traveler-programs/nexus. NEXUS program participants receive a NEXUS card—a credential that expedites customs processing when the participant crosses the U.S.-Canada border. *See Gill v. Mayorkas*, No. C20-939 MJP, 2021 WL 3367246, at *1 (W.D. Wash. Aug. 3, 2021).

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 4

no basis on the federal legality or immigration consequences pertaining to an individual's involvement in the marijuana industry by a noncitizen.

*Id.* CBP concluded that "[t]he CIT ruling does not form a basis to argue that McKellar is admissible in states that have legalized marijuana." *Id.* As a result, although the ERO had found McKellar inadmissible for lacking appropriate documentation under § 212(a)(7)(A)(i)(I); CBP upheld the order on the basis that McKellar is inadmissible under § 212(a)(2)(C)(i)—the INA provision declaring inadmissible illicit traffickers or noncitizens knowingly assisting with illicit trafficking of prohibited substances under the Controlled Substances Act. *Id.*

B. **Procedural Background**

Plaintiffs filed this case on January 29, 2025, alleging that CBP's actions "lack legal and factual support, contravene binding precedent, and violate Plaintiffs' constitutional rights under the Due Process Clause." Dkt. No. 1 ¶ 1. Plaintiffs claim violations of the Administrative Procedure Act ("APA") and the Fifth Amendment to the Constitution, and allege *ultra vires* action. *Id.* at 11–19. Plaintiffs alleged harm to Eteros's U.S. operations due to exclusion of key personnel; exposure to potential criminal liability and deterrence to recruitment, retention, and workforce stability; fear of travel bans, EROs, and threatened criminal prosecution; financial and reputational damage; legal and compliance costs; risk to Eteros's business operations; and "broader industry impact" due to the potential chilling effects on challenges to CBP actions. *Id.* at 10–11. To remedy these purported harms, Plaintiffs sought declaratory and injunctive relief, including an order enjoining Defendants from enforcing the ERO and requiring that CBP reinstate McKellar's NEXUS membership. *Id.* at 20–21. Plaintiffs also asked the Court to vacate the ERO, five-year ban, and CBP's denial of McKellar's request for reconsideration. *Id.* at 21.

On April 21, 2025, after this litigation was filed, CBP vacated the ERO against McKellar. Dkt. No. 19 at 8, Dkt. No. 19-1. The same day, Defendants moved to dismiss this action. Dkt.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 5

No. 19. On April 29, 2025, McKellar attempted to enter the United States after the ERO vacatur. Dkt. No. 22 at 11, Dkt. No. 22-1 at 12. CBP determined that he was inadmissible under § 212(a)(2)(C) of the INA (8 U.S.C. § 1182(a)(2)(C)) and refused entry, but allowed McKellar to withdraw his application for admission. Dkt. No. 22-1 at 13. His NEXUS privileges remain revoked. *Id.* at 14–15.

On August 7, 2025, Plaintiffs filed a notice of supplemental authority. Dkt. No. 29. Plaintiffs notified the Court of a recent decision from the CIT, in which the court granted a motion to dismiss the complaint in *Eteros Technologies USA, Inc. v. United States* No. 25-00036 (Ct. Int'l Trade Aug. 6, 2025) ("*Eteros II*") for lack of subject matter jurisdiction before the CIT.[3] Dkt. No. 29-1.

## II.   LEGAL STANDARDS

**A.   Motion to Dismiss Under Rule 12(b)(1)**

Defendants move to dismiss Plaintiffs' action for lack of subject matter jurisdiction under Rule 12(b)(1). Dkt. No. 19. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In contrast, a factual attack involves disputes regarding the truth of the jurisdictional allegations, which by themselves, would otherwise invoke federal jurisdiction. *Id.* For a facial attack, the Court accepts all the allegations as true and draws all reasonable inferences

---

[3] Eteros brought this action the same day it sued in the Western District of Washington. *Eteros II*, No. 25-00036, Dkt. No. 30 at 5. Eteros asked the CIT to issue a declaratory judgment that (1) the importation of cannabis-related "drug paraphernalia" that falls under the exception provided in 21 U.S.C. § 863(f)(1) does not *per se* constitute a violation of 21 U.S.C. § 1907 or 21 U.S.C. § 841 and that (2) "CBP will refrain from taking actions that contravene judicial opinions like *Eteros I* and internal agency rulings." *Id.* at 2. The CIT dismissed this action for lack of subject matter jurisdiction because it found that the CIT's jurisdictional statute (28 U.S.C. § 1581) does not extend to Eteros' claims that the federal government circumvented its prior judgment under *Eteros I*. *Id.* at 7. The alleged retaliatory actions did not involve denial of a customs protest or any law relating to the administration and enforcement of a customs protest, such that the CIT could exercise its limited, specialized jurisdiction. *Id.* at 9. CIT decisions are not binding on this Court, and *Eteros II* is irrelevant to the Court's disposition here.

in the party asserting jurisdiction's favor. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020). In considering a factual attack on jurisdiction, the responding party "must support her jurisdictional allegations with 'competent proof' ... under the same evidentiary standard that governs in the summary judgment context." *Id.* (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).

Defendants assert both facial and factual attacks. First, Defendants attack Plaintiffs' allegations regarding the ERO, arguing that CBP subsequently vacated McKellar's removal order, thus mooting the issue. Dkt. No. 19 at 10–11. Second, Defendants claim that the complaint's allegations cannot provide a basis for federal jurisdiction because 8 U.S.C. § 1252(a)(2)(A) and (e)(2) specifically divest this Court of jurisdiction over all of Plaintiffs' claims. *Id.* at 9–10.

### III. ANALYSIS

**A.  This Case is Not Mooted by the Vacatur of the October 4, 2024 ERO.**

"Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'" *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1037 (9th Cir. 2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013)). "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* (cleaned up); *United States v. Larson*, 302 F.3d 1016, 1020 (9th Cir. 2002) (noting that "the party claiming the benefit of mootness" must carry the burden of establishing that the claim is moot).

The parties do not dispute that the October 4, 2024 ERO has been vacated. Dkt. No. 19 at 8, Dkt. No. 22 at 30. Defendants represent that they, in "good faith[,]" "reevaluated McKellar's June 2024 border encounter and decided to rescind the order and the associated five-year ban precluding McKellar's reentry into the United States." Dkt. No. 23 at 4. On this basis, they urge the Court to dismiss this case as moot. *Id.* at 2. Plaintiffs maintain that the legal issues raised by

their complaint are capable of repetition, yet evade review, such that the Court should reject Defendants' mootness claim, or that the voluntary cessation doctrine saves their claim. Dkt. No. 22 at 17–22.

With respect to the challenge to the vacated ERO itself, the Court agrees that claim is moot. While Plaintiffs' complaint challenged the basis for the ERO and sought to invalidate it (Dkt. No. 1 at 15, 16, 20), Plaintiffs' opposition to the motion to dismiss concedes that the ERO has been vacated such that any challenge to that order is moot (Dkt. No. 22 at 12–13). As such, the Court need not reach Defendants' secondary argument that 8 U.S.C. § 1252(a)(2)(A) also bars review of the October 4, 2024 ERO.

Regarding the remaining claims, the Court also need not reach the exceptions to the mootness doctrine because Plaintiffs assert several claims that are not resolved by vacatur of the October ERO. For example, CBP has not restored McKellar's NEXUS privileges. *Id.* at 4 n.4. Nor has CBP meaningfully contested Plaintiffs' allegations that CBP has unlawfully adopted a policy of retaliating against Eteros and its employees for working in the cannabis industry, or generally exceeded its authority under the INA.[4] *Id.* Indeed, Defendants do not explain why CBP rescinded its order, only that the agency exercised its discretion to complete a full review and then vacate the ERO. Dkt. No. 22-1 at 12–13, Dkt. No. 19-1 at 2. Plaintiffs' claims beyond the issuance of the ERO itself therefore remain live.

Accordingly, Defendants' motion is granted to the extent Plaintiffs challenge the October 4, 2024 ERO, but denied as to several of the remaining claims as specified below.

---

[4] As detailed below, the viability of these claims is not currently before the Court.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 8

**B.    Plaintiffs' Due Process Claim Is Dismissed with Leave to Amend.**

Count II of the complaint alleges a Fifth Amendment constitutional due process claim. Dkt. No. 1 at 14. The majority of the allegations in that count concern McKellar's challenge to the vacated ERO and are thus not live claims. To the extent McKellar intends to bring claims based on events that have transpired since the ERO was vacated, he must set forth such allegations and the legal basis for them in an amended complaint.

Regarding Eteros' "corporate due process" claim, Plaintiffs argue that "Eteros as a U.S. company can assert a due process right against arbitrary governmental interference in its lawful business activities[.]" Dkt. No. 22 at 28. In Plaintiffs' view, "effectively blocking the company from doing lawful business in the U.S. by barring" McKellar and other executives[5] from entering the country violates Eteros's due process rights. *Id.* During the hearing, Plaintiffs reiterated these concerns and argued that Eteros is asserting a due process claim separately from McKellar. Plaintiffs assert that because Eteros is not the subject of the October 4, ERO, the fact that the order has been vacated does not relieve its asserted harms, and it is not impacted by any limitations on judicial review of EROs in 8 U.S.C. § 1252(a)(2)(A). Dkt. No. 22 at 26–27.

Plaintiffs' claim suffers from two faults. First, while Eteros raised this theory in its opposition brief and elaborated on it at oral argument, any "corporate due process" claim potentially belonging to Eteros is not sufficiently pleaded in the complaint. The Court does not consider allegations raised only in a party's briefing or during oral argument and the complaint itself is sparse on this point. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir.

---

[5] As noted above, after the ERO was vacated, Plaintiffs argue that McKellar again attempted entry into the United States and was determined inadmissible and that another Eteros executive, Amanda James, was also wrongfully denied entry and that CBP revoked James's visa application. Dkt. No. 22 at 12 n.1. Plaintiffs argued at the hearing that these incidents support their due process and other claims. These allegations are not in the operative complaint. To the extent Eteros seeks to base any substantive claim on these incidents (or any other incidents impacting its employees) such facts must be properly alleged in an amended complaint.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 9

2018). Plaintiffs broadly assert that "Defendant's actions further deprived *Plaintiffs* of meaningful notice and an opportunity to respond to the allegations, as the [ERO] process does not permit review of substantive inadmissibility claims under § 212(a)(2)(C)." Dkt. No. 1 at 15 (emphasis added). But the complaint lacks factual content supporting this legal conclusion as it pertains to Eteros, and this statement alone remains insufficient to plausibly state a due process claim arising from Eteros's alleged harms.[6] *Id.* Second, on the face of the complaint, Plaintiff Eteros does not clearly allege constitutional due process rights or violations separate and apart from McKellar's individual claims. Dkt. No. 1 at 15.

Thus, Eteros's corporate due process claim also fails. The Court expresses no opinion on the potential merit of such a claim, but because it is not clear that these defects could not be remedied, the Court grants leave to amend.

**C.    The Court Has Jurisdiction to Review the Revocation of McKellar's NEXUS Card.**

With respect to McKellar's NEXUS card revocation, Defendants cursorily argue that the revocation constitutes an unreviewable "discretionary decision" pursuant to the expedited removal proceedings. Dkt. No. 19 at 14. In support, Defendants cite 8 C.F.R. § 235.12, which provides that "[a]n individual is ineligible to participate in Global Entry if CBP, at its sole discretion, determines that the individual presents a potential risk for terrorism, criminality (such as

---

[6] The thrust of Plaintiffs' claim appears to be that CBP improperly invoked the ERO procedure in 8 U.S.C. § 1225(b)(1)(A)(i), which authorizes expedited removal of foreign nationals found to be inadmissible on only two of the grounds stated in 8 U.S.C. § 1182(a). Specifically, if an immigration officer determines that a person "is inadmissible under section 1182(a)(6)(C) [material misrepresentation] or 1182(a)(7) [lack of proper documentation] the officer shall order the alien removed from the United States without further hearing or review" unless the person intends to apply for asylum. Where an immigration officer finds a person inadmissible for any other reason, the person is referred for non-expedited proceedings before an immigration judge. *See Smith v. U.S. Customs & Border Prot.*, 785 F. Supp. 2d 962, 965 (W.D. Wash. 2011) (cleaned up), *aff'd*, 741 F.3d 1016 (9th Cir. 2014). Here, Plaintiffs claim that McKellar was found inadmissible under § 1182(a)(2)(C), which bars entry of individuals the Attorney General has reason to believe are engaged in narcotics trafficking, yet was nonetheless issued an expedited removal order citing § 1182(a)(7) for lack of proper documentation. While troubling, Plaintiffs fail to allege facts tying this allegation to a protectible interest of Eteros itself.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 10

smuggling), or is otherwise not a low-risk traveler." 8 C.F.R. § 235.12(b)(2). Citing the concurrence in *Kucana v. Holder*, 558 U.S. 233, 253 (2010) (J. Alito, concurring), Defendants argue that under 8 U.S.C. § 1252(a)(2)(B), CBP's discretionary authority under 8 C.F.R § 235.12(b)(2) is unreviewable. Dkt. No. 19 at 14.

This argument fails. First, the concurrence is not the controlling opinion, and does not support CBP's argument in any event.[7] More crucially, *Kucana* undermines Defendants' position. There, the Supreme Court considered whether 8 U.S.C. § 1252(a)(2)(B) precludes review of certain discretionary decisions of the Attorney General. *Kucana*, 558 U.S. at 237. Section 1252(a)(2)(B) bars judicial review of:

> [A]ny other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii). The *Kucana* Court held that "the key words 'specified under this subchapter' refer to statutory, but not to regulatory, specifications." 558 U.S. at 237. Therefore, § 1252(a)(2)(B) only divests courts of jurisdiction over actions made discretionary by statute. *Id.* As a result, the Court concluded that the lower court had jurisdiction to review the denial of a motion to reopen. *Id.* at 253.

Here, CBP's discretion with respect to NEXUS card eligibility is established by regulation. Defendants do not identify (and the Court is not aware of) any *statute* committing to CBP the

---

[7] In his concurrence, Justice Alito agreed with the majority's conclusion that the court had jurisdiction over the denial of a motion to reopen removal proceedings, though on a narrower basis, opining that "some regulations can render a decision of the Attorney General unreviewable." *Kucana v. Holder*, 558 U.S. 233, 255 (2010) (J. Alito, concurring). Yet he concluded that § 1252(a)(2)'s phrase "under this subchapter" refers to Subchapter II of Chapter 12 of Title 8 (8 U.S.C. §§ 1151–1381), and "no provision of Subchapter II confers discretionary authority on the Attorney General to decide motions to reopen." *Id.* at 253. Therefore, Justice Alito concluded that the disputed regulation did not bar judicial review of the Attorney General's denial of the motion to reopen removal proceedings. *Id.* Likewise, here, Subchapter II contains no provision conferring the Attorney General with discretion to revoke NEXUS or other trusted traveler statuses. Under any reading of *Kucana*, § 1252(a)(2) does not foreclose judicial review of McKellar's NEXUS card revocation.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 11

discretion to grant, deny, or revoke acceptance into the NEXUS program. *See* Dkt. No. 19 at 14–15. Indeed, the authorizing statute for the NEXUS program, 8 U.S.C. § 1753, does not specify the eligibility requirements for the program, nor does it expressly preclude judicial review. Accordingly, because CBP's discretionary authority over NEXUS eligibility is not established by *statute*, 8 U.S.C. § 1252(a)(2)(B) does not bar judicial review of its exercise thereof. *Kucana*, 558 U.S. at 237.

To the extent Defendants argue that the NEXUS revocation is unreviewable under the APA, this argument also fails. While 5 U.S.C. § 701(a)(2) precludes review of actions "committed to agency discretion by law," this prohibition is only applicable when there is "no law to apply" or where there is "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830–831 (1985). "[T]he mere fact that a statute contains discretionary language does not make agency action unreviewable." *Beno v. Shalala*, 30 F.3d 1057, 1066 (9th Cir. 1994). "In fact, courts routinely treat discretion-laden standards as providing 'law to apply.'" *Perez Perez v. Wolf*, 943 F.3d 853, 862 (9th Cir. 2019).

Here, judicial review is available. Section 235.12 of Title 8 of the Code of Federal Regulations provides NEXUS program eligibility criteria guiding the agency's decision making. Section 235.12 also outlines the program application process, redress procedure, and other articulated standards that sufficiently "support judicial review for abuse of discretion." *Perez*, 943 F.3d at 862. Numerous other district courts have agreed with this assessment. *See, e.g.*, *Boylan v. Morgan*, No. 20-cv-1967-WQH-AHG, 2021 U.S. Dist. LEXIS 261796, at *21–22 (S.D. Cal. July 22, 2021) (denying motion to dismiss APA claim arising from denial of plaintiff's application to SENTRI trusted traveler program); *McLean v. Morgan*, No. 20-2145-JWB, 2020 WL 5094683, at *5–6 (D. Kan. Aug. 28, 2020) (denying motion to dismiss case challenging denial of plaintiff's application to the Global Entry program); *Martinez v. United States Customs & Border Prot.*, No.

20-cv-02726 (APM), 2021 WL 12271412, at *1 (D.D.C. Nov. 11, 2021) (finding jurisdiction over APA claim challenging decision to deny acceptance into the NEXUS program); *Borowski v. U.S. Customs & Border Prot.*, 718 F. Supp. 3d 280, 291–92 (W.D.N.Y. 2024) (same). *C.f. Roberts v. Napolitano*, 792 F. Supp. 2d 67, 73 (D.D.C. 2011) (deciding whether judicially manageable standards exist before Global Entry and NEXUS eligibility requirements were finalized). Defendants did not address this line of cases in their briefs and at the hearing were unable to distinguish them from the facts here.

In short, the Court has jurisdiction to review the revocation of McKellar's NEXUS card and Defendants' motion to dismiss this claim is denied.

**D.     The Motion to Dismiss the APA Violations Alleged in Counts 4 and 5 Is Denied.**

While Defendants asserted at oral argument that their motion intended to seek a complete dismissal, they fail to address Counts IV and V in their briefing. In Count IV, Plaintiffs allege that CBP violated the APA and acted arbitrarily by implementing a new policy asserting that certain employees of cannabis-involved companies are per se inadmissible for engaging in "aiding and abetting" narcotics trafficking. Dkt. No. 1 at 17. Plaintiffs claim that CBP previously acknowledged that companies may import cannabis-related merchandise under 21 U.S.C. § 863(f)(1), and their employees were not excluded on this basis. *Id.* (referencing HQ H327540). Therefore, Plaintiffs argue CBP promulgated inconsistent and contradictory positions without a rational basis, thus violating the APA. *Id.* Under Count V, Plaintiffs allege that CBP failed to conduct notice-and-comment rulemaking before implementing the new policy that treats cannabis-related equipment as per se unlawful and employees of cannabis-involved companies as per se inadmissible. *Id.* at 18. Plaintiffs assert that CBP's failure to publish notice, solicit public comment, and provide a reasoned explanation for this departure from their previous position

regarding cannabis-related merchandise violates the APA. *Id.* at 18–19. These allegations go unacknowledged in Defendants' motion to dismiss.

During oral argument, the Court questioned counsel on Defendants' failure to address Counts 4 and 5. Defendants' counsel conceded that the briefing is silent on these two causes of action, and gave only the cursory argument that these claims should be dismissed for failure to state a claim without explaining why.

Defendants' neglect in moving to dismiss Counts 4 and 5 alone provides a basis for denying the motion as to these claims. "Arguments raised for the first time at oral argument are generally not considered because the opposing party is deprived of its opportunity to evaluate the merits of the new argument before responding." *Amini v. Bank of Am. Corp.*, No. C11-0974RSL, 2012 WL 398636, at *7 (W.D. Wash. Feb. 7, 2012); *see Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) ("[I]ssues which are not specifically and distinctly argued and raised in a party's opening brief are waived."). The Court will not "manufacture arguments" for Defendants, and a "bare assertion" that Counts 4 and 5 fail to state a claim is insufficient to support dismissal. *Arpin*, 261 F.3d at 919. Therefore, to the extent Defendants attempt to dismiss Counts 4 and 5, the Court denies the motion.

Lastly, the Court notes that during oral argument, Plaintiffs argued that Defendants held retaliatory motives for the policy changes, which serve as the basis for Counts 4 and 5. Given the lack of argument on these causes of action, the Court declines to decide on the merits whether Counts 4 and 5 are sufficiently pleaded. That said, the Court observes that despite Plaintiffs' characterization of the complaint, the claims—and specifically, Counts 4 and 5—lack any factual content supporting Plaintiffs' theory of retaliation. *See* Dkt. No. 1 at 17–19. Thus, to the extent

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 14

Plaintiffs seek to advance a retaliation theory under Counts 4 and 5, or in conjunction with any other claim, Plaintiffs must set forth factual allegations sufficient to support such a claim.[8]

E.  **Plaintiffs' Claim for Declaratory Relief is Dismissed with Leave to Amend.**

Plaintiffs request that the Court issue an order "clarifying the relationship of the laws under 21 U.S.C. §§ 841, 863, and 1907 to prevent—or, at the very least, to inform—future issues." Dkt. No. 22 at 26, Dkt. No. 1 at 20 (stating declaratory relief sought). Plaintiffs' desired declaratory relief largely concerns the basis for the vacated October 4, 2024 ERO, or tracks the relief sought in the APA claims in Counts IV and V. Defendants argue Plaintiffs' request amounts to an advisory opinion on McKellar's admissibility (and that of other Eteros executives) at a future border encounter. Dkt. No. 23 at 2. Defendants further assert that the Court lacks jurisdiction over this issue pursuant to 8 U.S.C. 1252(e)(5), and that the issue is not ripe. *Id.*

"Federal judicial power is limited to those disputes which confine federal courts to a rule consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process." *Ctr. for Biological Diversity v. United States Forest Serv.*, 925 F.3d 1041, 1047 (9th Cir. 2019). To present a justiciable dispute rather than a request for an advisory opinion, a case must (1) present "an honest and actual antagonistic assertion of rights by one [party] against another[,]" and (2) ensure that the Court is "empowered to issue a decision that serves as more than an advisement or recommendation." *Id.* at 1047–48.

The Court has concluded that claims arising from the now-rescinded ERO are moot. The April 29, 2025 inadmissibility finding and allegations related to other Eteros employees have not yet been pleaded, and thus are not before the Court on this motion to dismiss. The surviving claims in the existing complaint concern whether CBP acted arbitrarily and violated the APA by

---

[8] The Court expresses no opinion on the viability of such a theory at this stage of the case.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 15

(1) revoking McKellar's NEXUS card, (2) disparately treating the entry of cannabis-related merchandise versus individuals involved in the same cannabis-related activities, and (3) applying a policy asserting that employees of cannabis-involved companies are per se inadmissible without abiding by notice-and-comment procedures. The Court will not issue advisory opinions or declare rights in hypothetical, future border crossings. *Washington v. United States Dep't of Homeland Sec.*, 598 F. Supp. 3d 1051, 1059 (E.D. Wash. 2020) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)). Thus, the motion to dismiss this claim is granted. Because Plaintiffs may elect to allege other facts in an amended complaint that may support some form of declaratory relief, the Court will also grant leave to amend this claim.

## IV.  CONCLUSION

The Court GRANTS Defendants' motion to dismiss as it relates to Plaintiffs' claims challenging the vacated October 4, 2024 ERO, Plaintiffs' due process claims, and the claim for declaratory relief.

The Court DENIES the motion to dismiss as to all other claims and GRANTS leave to amend as detailed above. Any amendment to the complaint must be filed by **August 22, 2025**.

The Court LIFTS the stay on the joint status report and discovery plan. *See* Dkt. No. 20. The deadline for the parties to complete the Federal Rule of Civil Procedure 26(f) conference is **August 22, 2025**. Initial disclosures pursuant to Rule 26(a)(1) are due **September 5, 2025**. The parties' combined joint status report and discovery plan, as required by Rule 26(f) and Local Civil Rule 26(f) are due **September 12, 2025**.

Dated this 7th day of August, 2025.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 16