1

2

3

4

5

6

7

8

9

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| ETEROS TECHNOLOGIES USA, INC.; and AARON MCKELLAR, a citizen of Canada; AMANDA JAMES, a citizen of Canada; and RYAN BJERGSO, a citizen of Canada. <br><br> Plaintiffs, <br><br> *v.* <br><br> UNITED STATES OF AMERICA; <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, a department of the U.S. government; <br><br> UNITED STATES CUSTOMS AND BORDER PROTECTION, an agency of the U.S. Department of Homeland Security; and <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, an agency of the U.S. Department of Homeland Security; <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No.  25-181 <br><br> AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT <br><br> <u>Administrative Procedure Act Case;</u> <u>Immigration Case;</u> <u>Freedom of Information Act Case</u> <br><br> No Request for Jury Trial |

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

1

## INTRODUCTION AND SUMMARY OF ACTION

Plaintiffs, ETEROS TECHNOLOGIES USA, INC. ("ETEROS USA"), AARON MCKELLAR, AMANDA JAMES, and RYAN BJERGSO (collectively, "Plaintiffs"), by and through undersigned counsel, for their FIRST AMENDED COMPLAINT in this matter against Defendant, UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (collectively, "Defendants"), do hereby state, plead, and allege as follows:

1.    Plaintiffs bring this Amended Complaint to challenge the unlawful actions of Defendants that have deprived Eteros Technologies USA, Inc. ("Eteros USA") and its executives of their ability to lawfully conduct business in the United States. Although the United States Court of International Trade and binding Customs rulings have conclusively determined that importation and distribution of Eteros USA's agricultural equipment is lawful under 21 U.S.C. § 863(f)(1), Defendants have adopted a contradictory and punitive "dual policy": permitting Eteros USA's goods to enter the United States, while branding its executives as narcotics traffickers and barring them from entry based on the very same activities held to be lawful. Defendants have carried out this campaign through expedited removal orders, repeated inadmissibility determinations, revocation and denial of NEXUS trusted traveler privileges, manipulation of statutory grounds to evade judicial review, obstruction of FOIA access, and the refusal to lawfully process and finalize USCIS adjudications of L-1A petitions. These measures have collectively crippled Eteros USA's operations, stigmatized the company and its executives, and undermined its multi-million-dollar U.S. investments in Eteros USA.

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

2.      Through this action, Plaintiffs seek declaratory and injunctive relief to remedy Defendants' violations of the Administrative Procedure Act, the Fifth Amendment's Due Process Clause, and the Freedom of Information Act. Plaintiffs ask this Court to vacate the unlawful agency actions and determinations, reinstate NEXUS privileges, compel USCIS to conclude its pending revocation proceeding, prohibit further reliance on the trafficking grounds of inadmissibility with respect to Plaintiffs' lawful business activities, and declare binding the judgment of *Eteros Technologies USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022), as res judicata between the parties on the legality of conduct compliant with 21 U.S.C. § 863(f)(1). Plaintiffs further request orders requiring production of withheld FOIA records, the expungement of stigmatizing trafficking designations, and restoration of their ability to manage lawful U.S. operations through their chosen executives without arbitrary interference.

## PARTIES

3.      Plaintiff Eteros Technologies USA, Inc. is a Washington corporation with its U.S. headquarters in Las Vegas, Nevada. Eteros specializes in manufacturing, importing, and distributing agricultural machinery, including cannabis-related equipment exempt from federal import prohibitions under 21 U.S.C. § 863(f)(1). The legality of Eteros Technologies USA's importing activities was determined by a final judgment of the United States Court of International Trade in *Eteros Technologies USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022), and is a matter of *res judicata*. Eteros USA is a lawful U.S. enterprise that operates in compliance with state and federal law. As a U.S. company, Eteros USA possesses constitutionally protected liberty and property interests in continuing its lawful business operations, maintaining its reputation, and relying on the entry and services of its chosen

FIRST AMENDED COMPLAINT

executives and personnel; those corporate interests cannot be arbitrarily undermined by governmental action directed at the company or its officers.

4.     Plaintiff Aaron McKellar is a Canadian citizen and the CEO of Eteros USA. McKellar holds a valid L-1A nonimmigrant visa to oversee Eteros USA's United States operations. McKellar was a member of the NEXUS trusted traveler program until Defendants revoked his NEXUS membership on October 4, 2024, as described herein. Although an initial Expedited Removal Order and five-year ban on re-entry was withdrawn by Defendants earlier in this litigation, McKellar remains barred from the United States as a result of a determination of inadmissibility Defendants issued to him on April 29, 2025, asserting that Defendants had "reason to believe" McKellar is involved in illicit drug trafficking (which he emphatically is not).

5.     Plaintiff Amanda James is a Canadian citizen and a senior executive of Eteros Canada and Eteros USA, specifically serving as the Director of Strategy and Business Development. James held a valid L-1A visa, allowing her to travel to the United States to oversee Eteros' U.S. operations, until it expired on June 9, 2024. Two days later, on June 11, James sought entry into the United States at the Port of Blaine, WA, and submitted to CBP a petition for renewal of her L-1A visa. Defendants refused James admission allegedly because of unsupported "reason to believe" she is involved in illicit drug trafficking (which she emphatically is not). In connection with that refusal, CBP: (i) issued a recommendation to USCIS to deny James's L-1A renewal petition; and (ii) revoked her NEXUS trusted traveler privileges. James subsequently obtained a new L-1A visa approval from USCIS on February 11, 2025. However, on March 28, 2025, USCIS issued a Notice of Intent to Revoke ("NOIR") James's approved L-1A visa status, citing her association with purported "illicit" cannabis-related activity. James's ability to travel to the United States for her job has thus been jeopardized. James joins this action to challenge

Defendants' actions that have wrongfully impaired her ability to enter the U.S. and work for Eteros USA pursuant to her L-1A status.

6.      Plaintiff Ryan Bjergso is a Canadian citizen and a senior executive of Eteros USA. As part of his duties, Bjergso regularly needs to travel to Eteros USA's U.S. facilities. Bjergso holds a valid L-1A visa, allowing him to travel to the United States to oversee Eteros USA's U.S. operations, valid until April 26, 2026. He applied, and was conditionally approved, for NEXUS trusted traveler status, but his NEXUS application was thereafter denied. On information and belief, the denial was solely due to Defendants' policy of treating individuals affiliated with Eteros USA as presumed drug traffickers. Bjergso reasonably fears that if he attempts to enter the United States, he will be subjected to the same treatment as McKellar and James – namely, summary denial of entry or visa privileges based on the false characterization of his work as "illicit drug trafficking."

7.      Defendant, United States of America, is the federal defendant in this action. The actions complained of herein were undertaken by its agencies U.S. Customs and Border Protection and United States Citizenship and Immigration Services, which are components of the U.S. Department of Homeland Security.

8.      Defendant, U.S. Department of Homeland Security ("DHS"), is a cabinet department of the United States government responsible for immigration-related services, enforcement, and investigations. DHS oversees CBP and its implementation of federal law and policy with respect to immigration and admissibility determinations. The actions complained of herein were undertaken by U.S. Customs and Border Protection and U.S. Citizenship and Immigration Services, which are components of DHS.

FIRST AMENDED COMPLAINT

9.     Defendant, U.S. Customs and Border Protection ("Customs" or "CBP"), is an agency of DHS, responsible for making admissibility determinations for merchandise and for foreign travelers, including overseeing the adjudication of immigration benefits. CBP, through its officers and officials, carried out the acts at issue, including revoking Plaintiffs' NEXUS memberships and barring Plaintiffs from entry based on alleged drug trafficking grounds. CBP has adopted or implemented the unlawful policy or pattern of action challenged here.

10.     Defendant, U.S. Citizenship and Immigration Services ("USCIS") is an agency of the U.S. Department of Homeland Security. USCIS is responsible for administering and adjudicating applications for immigration benefits, including L-1A intracompany transferee visas and related petitions. The actions by USCIS complained of herein include USCIS's issuance of a March 28, 2025 NOIR Plaintiff Amanda James's previously approved L-1A visa petition, citing her association with alleged "illicit" cannabis-related activity.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 5 U.S.C. §§ 702 and 706, and 5 U.S.C. § 552, as this action arises under the Constitution, the INA, the APA, and the FOIA.

12.     Venue is proper under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703 because the actions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### A.  Eteros's Lawful Business, the *Eteros I* Precedent, and CBP Rulings.

13.     Plaintiff Eteros USA (and its Canadian parent company, Eteros Technologies Inc. ("Eteros Canada")) is a leader in agricultural technology, manufacturing and importing machinery such as trimmers and extractors which can be used with cannabis and other crops. The term "cannabis" refers to the plant genus Cannabis sativa L., and under federal law includes both hemp (defined at 7 U.S.C. § 1639o(1) as cannabis with a Δ-9 THC concentration not more than 0.3

FIRST AMENDED COMPLAINT

percent on a dry weight basis) and marijuana (cannabis with a higher than 0.3 percent THC concentration). Thus, the fact that equipment may be used with "cannabis" does not indicate whether it is designed or intended for use with a controlled substance (as opposed to federally lawful hemp or other agricultural applications). *See e.g., Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 521–22 (1994).

14.    Eteros USA deals in lawful cannabis-related merchandise whose manufacture, importation, possession and sales are specifically "authorized" under state law in certain jurisdictions, including the State of Washington, and therefore, the importation, distribution and sales of these goods in such jurisdictions is lawful and federal prohibitions under 21 U.S.C. § 863 do not apply. *See Eteros Technologies USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022); *see also, Keirton, Inc. v. United States*, 600 F. Supp. 3d 1270 (Ct. Int'l Trade 2022); *HQ H327540* (Mar. 7, 2024).

15.    Eteros USA currently acts as importer of record for all Eteros imports of merchandise into the United States and arranges entry through the ports of Washington State in alignment with *Eteros I* and *HQ H327540* (Mar. 7, 2024).

16.    Plaintiff, Eteros USA, and Defendant, United States of America, previously litigated the lawfulness of Eteros USA's import and distribution activities. In 2022, the U.S. Court of International Trade ("CIT"), in *Eteros Technologies USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Tr. 2022) ("*Eteros I*"), ruled that Eteros' importation and distribution of cannabis processing machinery into the United States was lawful under 21 U.S.C. § 863(f)(1) if the goods are imported into, and destined for, States where possession, manufacture, or distribution of cannabis paraphernalia is legal. The CIT's decision affirmed that state authorization of persons to engage in 21 U.S.C. § 863(f)(1) conduct related to cannabis "drug

FIRST AMENDED COMPLAINT

1  paraphernalia" (*i.e.,* possession, distribution, *or* manufacture of "drug paraphernalia"), exempts

2  such merchandise from all federal prohibitions otherwise attendant thereto and authorizes

3  Plaintiff Eteros USA to lawfully import and deal in its machinery in the United States.

4

5  17.    The *Eteros I* decision underscores that when the 21 U.S.C. § 863(f)(1) exemption

6  applies, none of the provisions under § 863 are enforceable, meaning there can be no violations

7  of § 863(a). *See Eteros I*, 592 F. Supp. 3d at 1321 ("[T]he court agrees that '[t]here can be no

8  question that subsection (f)'s use of the word 'section' refers to the entirety of 21 U.S.C. § 863,'

9  Pl.'s Br. at 20, such that when the (f)(1) exemption is implicated, none of the provisions under

10 section 863 … apply.").

11

12 18.    No other federal statute prohibits or penalizes the possession, distribution, or

13 importation of "drug paraphernalia" outside of 21 U.S.C. § 863.

14 19.    The government did not appeal the Court of International Trade's decision in

15 *Eteros I*, and the judgment in that action is final.

16

17 20.    In addition to not appealing the *Eteros I* decision, CBP publicly acknowledged the

18 CIT's holding in *Eteros I* and *Keirton, Inc. v. United States*, 600 F. Supp. 3d 1270 (Ct. Int'l Trade

19 2022), in formal customs rulings which, pursuant to 19 C.F.R. § 177.9(a), represent the official

20 position of CBP and are binding on all CBP officers nationwide. In March 2024, CBP

21 Headquarters issued a binding ruling letter, *HQ H327540* (Mar. 7, 2024), which cited *Eteros I,*

22 and confirmed that cannabis-related merchandise imported into U.S. states that have legalized

23 cannabis may indeed be entered under the § 863(f)(1) exemption and is not prohibited or unlawful.

24 *See also, New York Customs Ruling N350730* (July 22, 2025) ("importers importing marijuana-

25 related drug paraphernalia through a port in the State of Washington are 'authorized' by the State

26 of Washington to possess such items, within the meaning of the exemption in 21 USC § 863(f)(1),

27

28

FIRST AMENDED COMPLAINT

and are therefore exempt from this prohibition."); *New York Customs Ruling N348157* (May 1, 2025); *New York Customs Ruling* N347153 (Apr. 15, 2025); *New York Customs Ruling N347153* (Apr. 15, 2025); *New York Customs Ruling N347161* (Apr. 15, 2025); *New York Customs Ruling N340357* (Jun. 18, 2024); *New York Customs Ruling N335656* (Nov. 9, 2023). Thus, as of early 2024, two federal courts and at least eight binding CBP rulings confirmed that cannabis-related merchandise is exempt from federal prohibitions, and may be lawfully imported, manufactured, possessed, and/or distributed without violating federal law. The holdings in *HQ H327540* and other rulings preclude CBP from treating activities deemed lawful under § 863(f)(1) as *per se* violations of other federal drug laws in Title 21. *See* 21 U.S.C. §§ 841, 1907.

21.    The final judgment in *Eteros I* is *res judicata* as to Plaintiff Eteros USA and Defendant United States (and its officials and employees), and preclusive of the question of whether Eteros USA's importing and distribution activities violate federal narcotics laws.

**B.  CBP's Unfounded Allegations of Narcotics Trafficking Against Eteros USA and its Executives.**

22.    Notwithstanding the above, CBP has taken the position (in decisions described below), that while Eteros USA's cannabis-related merchandise is lawful and may enter the United States for consumption under § 863(f)(1), Eteros USA's personnel are inadmissible as "illicit" narcotics traffickers based on the very same federally exempt activities. *See* 21 U.S.C. §§ 841, 1907. This untenable "dual policy" permits U.S. entry and distribution of *the goods* that allegedly proliferate the U.S. cannabis industry but bans *the people* engaged in such activities from entering the United States to pursue those activities, despite the fact that the 21 U.S.C. § 863(f)(1) exemption applies to "any **person** authorized," and does not focus on the goods. *Compare* 21 U.S.C. § 863(f)(1) (person-specific exemption) and § 863(f)(2) (goods-specific exemption).

FIRST AMENDED COMPLAINT

**Aaron McKellar (CEO, Eteros USA)**

23.    Plaintiff Aaron McKellar has previously been granted L-1 status on two separate occasions to work for Eteros in the U.S. Both petitions were initially approved by CBP, and subsequently approved by USCIS (Most recently, SRC-24-210-50539, valid until April 30, 2026).

24.    On October 4, 2024, McKellar attempted to enter the United States for personal reasons unrelated to his L-1A visa work authorization. CBP officers detained him at the Blaine, WA, port of entry and interrogated him at length about Eteros' operations and the *Eteros I* litigation. McKellar provided documentation (including his Canadian passport and L-1A credentials) and information supporting his admissibility into the United States and the judicially resolved legality of Eteros USA's operations. McKellar also noted that Eteros USA petitioned for, and was granted, a L-1A work authorization for McKellar as beneficiary, on two prior occasions—the most recent of which issued in 2023 after the *Eteros I* litigation was finished.

25.    During McKellar's interrogation, CBP officers made statements revealing animus toward Eteros USA and bias against its foreign leadership. Officers told him, "Your customers should buy from an American company," and that they should "buy from an American citizen." McKellar replied that Eteros USA is, in fact, an American company that employs U.S. citizens and pays U.S. taxes, underscoring the baseless nature of the officers' comments.

26.    CBP officers insisted on taking a formal statement. After answering many questions, McKellar informed the officers that he would not be providing further information for a sworn statement, and requested to withdraw his application for admission, and to return to Canada. *See* 8 U.S.C. § 1225(a)(4) (permitting withdrawal of application for admission "at any time"). CBP officers denied McKellar's request to withdraw his application for admission and proceeded with conducting a sworn statement (which McKellar refused to sign due to

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

10

inaccuracies). CBP officers summarily concluded that McKellar is "knowingly and intentionally contributing to the proliferation of the marijuana industry in the United States," and issued an expedited removal order ("ERO") against McKellar.

27.    The purported justification for the ERO was INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(C), which relates to insufficient documentation. The removal order included a five-year entry ban and warnings that any attempt to re-enter the U.S. would lead to felony prosecution and imprisonment. CBP officers also revoked McKellar's NEXUS membership and confiscated his NEXUS membership card. Defendants have not, to date, taken any action to revoke or rescind McKellar's L1A visa work authorization.

28.    On October 16, 2024, McKellar submitted a formal request for reconsideration of the ERO with CBP Area Port Director for the Port of Blaine, Director Harmit Gill, pursuant to 8 C.F.R. § 103.5(a). The Reconsideration Request sought specific relief from Defendants, namely a determination that CBP officers exceeded their authority in placing McKellar into ERO proceedings on October 4, 2024, when he was travelling for personal reasons; vacatur of the ERO, rescission of the five-year ban; and vacatur of the rescission of McKellar's NEXUS membership. The Reconsideration Request emphasized that "[s]hould CBP continue to allege section 2(C) violations in this matter, a hearing is certainly warranted. Eteros is a legitimate business that is established with entities in both the U.S. and Canada. The company employs numerous workers in both countries, and pays taxes as required to all applicable state and federal governments."

29.    On November 12, 2024, Defendant CBP and Port Director Gill refused to reconsider or vacate the ERO issued against McKellar, instead denying the Reconsideration Request and refusing to conduct a hearing. However, the justification for the ERO's issuance completely changed. As suspected, Defendants' statutory justification for the ERO was not

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

founded under INA § 212(a)(7) (insufficient documentation), but relied instead on the unfounded

theory that Plaintiffs Eteros USA and McKellar are "aiding and abetting the narcotics trafficking

of marijuana in the United States," in violation of 21 U.S.C. §§ 841 and 1907. Director Gill's

Denial Determination provides (emphasis added):

> Under the regulations and definitions contained within Title 21, the petitioning entity, Eteros Technologies USA, Inc., and the beneficiary, Mr. McKellar, are encouraging, promoting and assisting in the production of marijuana for the purpose of distributing and dispensing and thus, are aiding and abetting the narcotics trafficking of marijuana in the United States in violation of 21 USC 841.

> In the lawsuit Eteros Technologies USA, Inc. v, United States argued before the United States Court of International Trade (CIT), the petitioning entity stipulated for the purpose of the litigation that the merchandise which they were importing into the United States for distribution to their customers, satisfies the federal statutory definition of "drug paraphernalia". While the ruling in this lawsuit was in favor of Eteros Technologies USA, Inc., it did not determine their business was outside the scope of federally illegal marijuana production, it simply granted them an exemption from the importation prohibitions in Title 21 USC 863. This ruling solely addressed the import restrictions associated with marijuana drug paraphernalia. 21 USC 863, and in particular, 21 USC 863(f), has no basis on the federal legality or immigration consequences pertaining to an individual's involvement in the marijuana industry by a noncitizen. By stipulating that their products are drug paraphernalia, Eteros Technologies USA, Inc. has demonstrated that they are knowingly and intentionally contributing to the proliferation of the marijuana industry in the United States and are therefore in violation of 21 USC 841. The CIT is a court of limited jurisdiction and lacks authority to set precedent over U.S. immigration law. The CIT ruling does not form a basis to argue that Mr. McKellar is admissible in states that have legalized marijuana.

> Based on the aforementioned, Mr. McKellar is inadmissible under section 212(a)(2)(C)(i) of the INA.

30.    On January 29, 2025, Plaintiffs Eteros USA and Aaron McKellar filed an original

complaint in this Court alleging violations of the Administrative Procedure Act, and the Fifth

Amendment to the U.S. Constitution, and alleging ultra vires agency action. Dkt. No. 1 at ¶¶ 11–

19. Plaintiffs sought declaratory and injunctive relief, including an order enjoining Defendants

from enforcing the ERO and requiring that CBP reinstate McKellar's NEXUS membership. *Id.*

at 20–21. Plaintiffs also asked the Court to vacate the ERO, five-year ban, and CBP's denial of McKellar's request for reconsideration. *Id.*

31.    On April 21, 2025, Defendants moved to dismiss this action and included as an attachment to their motion, a letter from CBP vacating the ERO against McKellar. Dkt. No. 19 at 8, Dkt. No. 19-1.

32.    In light of the vacatur of McKellar's ERO, on April 29, 2025, McKellar attempted to enter the U.S. by presenting himself for CBP preclearance at Vancouver International Airport in Canada, seeking to board a flight to Las Vegas, Nevada, to visit Eteros USA's headquarters. McKellar provided CBP with his passport, L-1A visa, and additional materials disclosing recent immigration and litigation events, including the recent vacatur of the ERO. CBP officers directed McKellar to secondary inspection; and once there, CBP officers subjected McKellar to renewed questioning centered almost entirely on Eteros USA's business and its involvement in the cannabis industry. CBP asked McKellar about the nature of Eteros USA's products and implied connections to illicit trafficking, even though McKellar had furnished them with a copy of the CIT's *Eteros I* opinion confirming the lawfulness of cannabis-related equipment importations and the personal authorization of Eteros USA and its employees as "persons authorized" under 21 U.S.C. § 863(f)(1). McKellar answered all questions truthfully. CBP officers informed McKellar that they found him inadmissible to the United States under the controlled substance trafficking provision of the immigration laws.

33.    Specifically, the CBP officers stated that, notwithstanding the vacatur of the prior ERO, they continued to have "reason to believe" that McKellar is or has been involved in illicit drug trafficking (due to his role as CEO of Eteros USA), rendering him inadmissible under INA § 212(a)(2)(C). In other words, CBP refused McKellar's admission on the exact same grounds

FIRST AMENDED COMPLAINT

1     that had been cited previously on October 4, 2024, and in Director Gill's denial of the

2     Reconsideration Request, effectively treating the April 21, 2025 ERO vacatur letter as irrelevant

3     to CBP's inadmissibility determination. However, because McKellar was on Canadian soil during

4     this encounter, CBP officers could not issue a new ERO against McKellar; and instead, he was

5     permitted to withdraw his application for admission pursuant to INA § 235(a)(4). McKellar was

6     not permitted to board his flight to Las Vegas, and he was returned to Canada that same day

7     (April 29, 2025) pursuant to CBP's inadmissibility determination.

8

9           34.     Because McKellar was allowed to withdraw his application for admission, no new

10     removal order was issued during this encounter – but a formal inadmissibility determination was

11     entered against him and, on information and belief, remains on McKellar's file with Defendants.

12     During McKellar's encounter with CBP, officers prepared a written "sworn statement" for

13     McKellar to sign, as well as a Form I-275, Withdrawal of Application for Admission. McKellar

14     refused to sign the sworn statement and ultimately returned to Canada.

15

16           35.     McKellar submitted multiple rounds of FOIA requests to CBP seeking records

17     concerning his October 4, 2024, ERO, the subsequent denial of his reconsideration request, and

18     his April 29, 2025, inadmissibility determination at Vancouver International Airport. *See e.g.,*

19     CBP-FO-2025-017694 (submitted Nov. 4, 2024); CBP-FO-2025-020041 (Nov. 7, 2024); CBP-

20     AP-2025-001065 (Nov. 19, 2024); and CBP-FO-2025-027348 (Nov. 22, 2024). In processing

21     these requests, CBP has engaged in a pattern of obstruction and delay rather than providing

22     responsive records. Despite McKellar supplying passports, notarized identity letters, and all

23     details requested, CBP repeatedly rejected or administratively closed his FOIA submissions,

24     inventing new requirements piecemeal over the course of several months. While CBP eventually

25     marked McKellar's latest request as "searching for records," no production has been made. This

26

27

28

FIRST AMENDED COMPLAINT

conduct deprived McKellar of access to the records underlying CBP's trafficking accusations and further illustrates Defendants' intent to shield their actions from scrutiny and to obstruct Plaintiffs' ability to contest the unlawful determinations made against them.

36.    At no time has any Defendant, or officer thereof, based an inadmissibility determination or proposed an inadmissibility determination, with respect to McKellar on any activity other than the activity and conduct determined to be exempt from federal prohibition under 21 U.S.C. § 863(f)(1), and held lawful in *Eteros I*.

**Plaintiff Ryan Bjergso**

37.    On or around May 1, 2024, Eteros Executive Ryan Bjergso, Vice President of Operations at Eteros Canada and Eteros USA—one of three Eteros USA executives holding L1A "Intracompany Transferee Executive or Manager" work authorization—filed with Defendants an application for NEXUS Trusted Traveler privileges. He was provisionally approved on or around February 9, 2025, and he received an invitation to schedule his interview. However, following adverse actions described herein taken against Eteros USA's other two L-1A visa holders (McKellar and James), and given the substantial concern and uncertainty created by those adverse actions against other Eteros USA L-1A visa holders, Bjergso was unable to proceed with conducting his NEXUS interview as such interview would require his travel to the United States, and he was reasonably concerned about how he would be treated at the border.

38.    On or around May 28, 2025, Bjergso received a notice from Defendants summarily denying his NEXUS application, despite no intervening conduct that would justify reversal of his provisional approval, and with no reasons or justification provided for the denial.

FIRST AMENDED COMPLAINT

1

**Plaintiff Amanda James**

2

39.    Plaintiff Amanda James is a Canadian citizen who serves as the Director of

3

4

Strategy and Business Development with Eteros Canada and Eteros USA. In this role, James

5

manages Eteros USA's strategy, marketing, and customer experience operations and contributes

6

to strategic decisions for the business.

7

40.    For approximately three years prior to June 2024, James has worked in the United

8

9

States under an L-1A nonimmigrant visa, overseeing Eteros USA in a managerial capacity. Eteros

10

USA first applied for James's L-1A status by filing an L-1A petition (Form I-129 for

11

Nonimmigrant Worker, with fee) in person with CBP at the Port of Blaine, WA, on June 10, 2021.

12

James's first L-1A petition was recommended for approval by CBP on June 10, 2021, and later

13

approved by USCIS on July 26, 2021 (USCIS reviews CBP adjudications of L-1A petitions to

14

determine *inter alia* eligibility and legality of employment).

15

41.    James was also an enrolled member of the NEXUS trusted traveler program since

16

17

February 2009, which facilitated her frequent cross-border travel. James's NEXUS membership

18

remained in good standing until the events of June 11, 2024, described below.

19

42.    On February 17, 2023, through counsel, Eteros USA and James filed an I-140

20

Petition "Immigrant Petition for Alien Worker" with USCIS seeking multinational green card

21

22

eligibility for James. USCIS approved James' I-140 petition on March 27, 2023. With an

23

approved I-140, the beneficiary (James) is empowered to apply for a green card in one of two

24

ways: (i) an I-485 Adjustment of Status from within the US; or (ii) an immigrant visa with the

25

US Consulate. The I-140 filing indicated that James would be filing an I-485 Adjustment from

26

within the US (due to events described below, James has been unable to complete this step; and

27

yet, the I-140 approval remains effective as of the date of this filing). Notably, L-1A workers are

28

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

permitted to have "dual intent" when travelling—i.e. they may intend to be permanent residents of the U.S. despite entering in nonimmigrant classification. 8 CFR 214.2(l)(16).

43.    On June 11, 2024, James traveled to the Blaine, Washington Port of Entry seeking renewal by CBP of her L-1A visa (which had recently expired on or around June 9, 2024). The L-1A Petition was presented to CBP using Form I-129 by James as the beneficiary, and with Eteros USA listed as the petitioner. Upon arrival, James was referred to secondary inspection, where CBP Officers (on information and belief, Officers O'Toole, Newhouse, Peppar, and/or Felty) conducted an extensive interview focusing on Eteros USA's business activities and the nature of their imported equipment.

44.    During secondary inspection, James was subjected to aggressive questioning by CBP officers, who – despite James' repeated clarifications that Eteros manufactures and imports lawful agricultural equipment that can be used with *cannabis* – CBP officers repeatedly (and inaccurately) substituted the term *marijuana* for *cannabis* when recording James' responses in her sworn statement. Despite James' material clarifications regarding this terminology (*i.e.,* to clarify that "cannabis" is a broader term, encompassing all forms of cannabis, including federally legal hemp), CBP officers disregarded James's efforts to clarify and continued to draft a sworn statement.

45.    CBP officers accused James of involvement in narcotics trafficking, disregarding her explanations and citations to the CIT's determination in *Eteros I.*

46.    CBP officers presented James with a Record of Sworn Statement they had drafted and demanded that James review and sign. James reviewed the statement but refused to sign (James has consistently denied the accuracy of its contents, particularly that Eteros USA markets its products for any illegal purpose).

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

47.    CBP officers confiscated James's NEXUS card, citing "further review by the NEXUS office." James later received notice that her NEXUS membership was formally revoked on August 13, 2024.

48.    CBP officers issued a recommendation of denial to USCIS regarding James' L1A petition and transmitted the petition to USCIS for final adjudication. Before James departed, CBP officers also advised her that if the L-1A petition supporting her application were later denied by USCIS, she would be deemed inadmissible under the INA's drug-trafficking ground (INA § 212(a)(2)(C)) and could be permanently barred from the United States as a purported "controlled substance trafficker." However, a CBP officer (on information and belief, Officer Newhouse) instructed James that if USCIS approves her L-1A Petition (despite the CBP recommendation of denial), she would be permitted to travel to the United States pursuant to the approved L-1A petition by USCIS.

49.    By emails of June 13 and 18, 2024, Plaintiffs' G-28 counsel, Douglas A. Cowgill, wrote CBP Officer Felty seeking confirmation that USCIS' decision on James' L-1A renewal petition would be honored by CBP—*i.e.,* if USCIS approves James' L-1A renewal, CBP would permit James' entry into the United States and honor her L-1A status. Officer Felty responded by email of June 18, 2024, stating that "What you understand regarding the situation with James' application is correct."

50.    Following James's withdrawal of her request for admission on June 11, 2025, CBP forwarded the L-1A petition materials (the application packets she had presented) to USCIS for adjudication and recommended denial of the application. USCIS assigned a case number and began processing the petition in the summer of 2024.

FIRST AMENDED COMPLAINT

51.     Plaintiff Eteros USA, as the petitioner, twice requested premium processing upgrades from USCIS to expedite a decision (by filing I-907 request for expedition and mailing a check for payment of the $2,805 expedition fee pursuant to 8 C.F.R. § 106.4(e)(5)), but USCIS did not issue a timely determination under the premium processing timeframes (15 business days).

52.     After several weeks of inaction, Eteros USA elected to withdraw the L-1A petition for James on or about September 16, 2024. USCIS was notified of the withdrawal, and the petition was closed without a decision on the merits.

53.     Eteros USA (as petitioner) and James (as beneficiary) filed a new Form I-129 petition for L-1A visa status directly with USCIS on or about October 25, 2024, with an accompanying support letter and additional evidence addressing the legality of Eteros USA's business operations. As before, Eteros USA again requested premium processing to expedite a decision (by filing I-907 request for expedition and mailing a check for payment of the $2,805 expedition fee pursuant to 8 C.F.R. § 106.4(e)(5)), but USCIS again failed to issue a timely determination under the premium processing timeframes (15 business days, or November 18, 2024). After disregarding and exceeding the 15 business day deadline (by 85 calendar days; 54 business days), USCIS finally approved Eteros USA's petition for James's L-1A status on February 11, 2025 (classifying James as an intracompany transferee in an executive capacity for a three-year period), but without honoring their duty to expedite the decision pursuant to 8 C.F.R. § 106.4(e)(5). This approval enabled James to resume her responsibilities in the U.S. pursuant to her L-1A work status, and also strongly suggested that USCIS had (yet again) found Eteros USA's U.S. business and operations to be qualifying and lawful. James, however, remained outside the United States following the June 11, 2024, incident.

54. On February 11, 2025, following USCIS's approval of James's L-1A petition, Plaintiffs' G-28 counsel, Mr. Cowgill, emailed CBP Officer Felty to follow up on their earlier correspondence and to notify him of the USCIS approval and to confirm that CBP would abide by its earlier assurance — i.e., if USCIS approved the petition, James would be permitted entry to the United States notwithstanding CBP's prior recommendation of denial. Instead of honoring the USCIS approval, on information and belief, CBP caused USCIS to issue a Notice of Intent to Revoke ("NOIR") only weeks later (as described below), recycling CBP's earlier accusations of narcotics trafficking. On information and belief, USCIS acted at the request of CBP in issuing the NOIR, illustrating inter-agency coordination designed to nullify USCIS's approval and to perpetuate CBP's repeated unlawful actions against Plaintiffs.

55. On or about March 28, 2025, USCIS issued a Notice of Intent to Revoke the recent approval of James's L-1A petition. In that NOIR, USCIS stated that it believed the February 11, 2025, approval had been granted in error. The NOIR explicitly referenced and mischaracterized the circumstances of James's June 11, 2024, CBP encounter, and it alleged that James might not be eligible for L-1A status due to the nature of Eteros USA's business. Thus, USCIS relayed the same theory initially advanced by CBP and struck down by the CIT (and CBP rulings): that Eteros USA's products could be deemed prohibited "drug paraphernalia" under federal law, notwithstanding prior legal determinations to the contrary holding that they are lawful and exempt from federal prohibition. USCIS warned that it intended to revoke the approval of James's L-1A petition unless the petitioner could rebut the agency's concerns.

56. On April 24, 2025, Eteros USA and James submitted a timely response to the NOIR contesting USCIS's grounds for the proposed revocation. Plaintiffs formally denied any wrongdoing and addressed each of the agency's allegations with evidence from the record. They

specifically challenged the evidentiary weight of the unsigned June 11, 2024, sworn statement, noting that James had refused to sign it at the time due to multiple inaccuracies, manipulated language, and omissions. The response emphasized that Plaintiffs have never admitted to engaging in any illicit activity, and it underscored the fact that no law or regulation prohibits Eteros USA's business of importing and selling post-harvest cannabis-processing equipment. Plaintiffs cited the 2022 U.S. Court of International Trade *Eteros I* decision which held that Eteros USA's importing activities are lawful.

57.     As of the filing of this Amended Complaint, USCIS has not issued any final decision on the NOIR, the revocation proceedings are ongoing, and Eteros USA's approved L-1A petition for James remains in limbo pending USCIS's final resolution of the matter. Consequently, Plaintiffs' ability to utilize James' L-1A status (for James's U.S. employment by Eteros USA) remains unavailable until Defendants' final determination is made.

58.     In an effort to learn more about James's June 11, 2024, encounter at the Port of Blaine, WA, and the subsequent recommendation of denial CBP issued to USCIS, James has filed multiple rounds of FOIA requests with Defendants CBP, *see* CBP-FO-2024-137927 (submitted Jul. 12, 2024); CBP-AP-2024-002302 (Jul. 15, 2024); CBP-FO-2024-138751 (Jul. 15, 2024); CBP-FO-2025-017669 (Nov. 4, 2024); CBP-FO-2025-020039 (Nov. 7, 2024); CBP-AP-2025-002033 (Feb. 6, 2025), and USCIS. *See* USCIS Control No. NRC2025292805 (submitted Jun. 18, 2024). On or around July 23, 2025, Defendant USCIS produced limited, heavily redacted documents. Until this unlawfully redacted production, Plaintiff James repeatedly sought records under FOIA, 5 U.S.C. § 552, to understand the basis of Defendants' June 11, 2024, actions against James. On July 12, 2024, James submitted a FOIA request to CBP seeking all records concerning her L-1A petition presentation at Blaine, her NEXUS status, and related agency communications.

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

Despite the Secure Release portal showing responsive documents, CBP administratively closed her request as "Closed (No Documents Sent)." Thereafter, CBP repeatedly imposed shifting and piecemeal identification requirements, demanding additional information such as place of birth, despite already having been provided government-issued passports with full identifying details and notarized letters with wet ink signatures. On February 4, 2025, CBP closed yet another of James's renewed FOIA request as "insufficient" for allegedly lacking her date of birth, even though her submission plainly contained it in the opening sentence. These repeated administrative closures, frivolous rejections, and unexplained delays further demonstrate Defendants' concerted effort to deprive Plaintiffs of access to the very records underlying the disputed admissibility determinations, thereby obstructing meaningful review of Defendants' actions

59.    James also filed a FOIA request with USCIS on June 18, 2025. Among the limited information that was left unredacted in the records produced by USCIS about James's June 11, 2024, border encounter with James is language in the "Comments" section following the "Incident Details" section, wherein Defendants provide:

> Based on the evidence and JAMES' sworn statement she appears to be inadmissible to the United States under section 212(a)(2)(C)(i) of the INA as an assistor, aider, and abettor to narcotics trafficking in the United States. However, Eteros Technologies was previously granted an importation exemption for their commercial products as a result of a lawsuit filed against CBP in Blaine, WA. As such, it was determined that JAMES would be found to be inadmissible to the United States under section 212(a)(7)(A)(i)(I) of the INA at this time. JAMES L1 packet was recommended for denial and forwarded to USCIS for their review and a final determination.

This language demonstrates that Defendants specifically considered Eteros USA's 2022 U.S. Court of International Trade decision in *Eteros I,* and concluded that the CIT's judgment prevented a determination that Plaintiffs are inadmissible to the United States under INA 212(a)(2)(C)(i) (narcotics trafficking); and "as such," Defendants declined to explicitly find

FIRST AMENDED COMPLAINT

James inadmissible as a narcotics trafficker, and instead determined that she "would be found to be inadmissible to the United Stats under section 212(A)(7)(A)(i)(I) of the INA at this time." Of course, any inadmissibility determination justified under INA 212(a)(2)(C)(i) would have afforded James the right to appear before an immigration judge for adjudication.

60.    At no time has any Defendant, or officer thereof, based an inadmissibility determination, or proposed inadmissibility determinations, with respect to James on any activity other than the activity and conduct determined to be exempt from federal prohibition under 21 U.S.C. § 863(f)(1), and held lawful in *Eteros I*.

**C. Defendants Pattern of Conduct.**

61.    Defendants' actions against Plaintiffs form a deliberate pattern of conduct directed at Plaintiff Eteros USA. After Eteros USA successfully litigated *Eteros I*, and after CBP Headquarters and multiple ruling letters reaffirmed the legality of its business operations, and considering the multiple reviews of its company and personnel by Defendants and reissuance of L-1A visas and NEXUS Trusted Traveler privileges, -- all of which reasonably created an expectation and protectible interest in the viability of continuing the same lawful operations absent a change in law – Plaintiff Eteros USA continued to expand its operations in the United States and invested significant resources. Since it first entered the US market in 2019, more than $20 million (USD) has been invested in the US operations of Eteros USA, including payroll, goods and services, lease costs, and corporate and sales tax.

62.    Defendants began systematically undermining Eteros USA's ability to function as a U.S. enterprise beginning in June 2024. Defendants attacked Eteros USA's corporate reputation by branding its executives as "drug traffickers" despite judicial findings and binding CBP rulings to the contrary. They deprived Eteros USA of the services of its chosen executives by: (i) issuing

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

an expedited removal order, five-year ban, and revoking NEXUS privileges against its CEO, Aaron McKellar; (ii) refusing Director Amanda James admission to the United States, revoking her NEXUS privileges, and later instigating USCIS's Notice of Intent to Revoke her valid L-1A visa; and (iii) summarily denying Vice President Ryan Bjergso's NEXUS application after provisional approval, solely due to his association with Eteros USA. Each of these actions directly impaired Eteros USA's ability to staff and manage its U.S. operations, putting its significant investments at risk of irreparable harm.

63.    Defendants compounded matters by engaging in procedural gamesmanship designed to deny Eteros USA meaningful judicial review. They shifted statutory bases for McKellar and James's inadmissibility (*i.e.,* between INA § 212(a)(7) and § 212(a)(2)(C)) to avoid review before an immigration judge); they vacated McKellar's ERO mid-litigation in an effort to moot this Court's review of the substantive narcotics trafficking issues; and they obstructed Eteros USA's access to records by repeatedly closing FOIA requests on frivolous grounds. USCIS likewise ignored its regulatory duty to honor premium-processing deadlines despite Plaintiffs' payment of fees, and later recycled CBP's discredited trafficking allegations in its NOIR against James.

64.    The events surrounding Plaintiff Amanda James certainly underscore Defendants' unlawful pattern of conduct toward Eteros USA. FOIA records reveal that Defendants expressly acknowledged *Eteros I* prevented it from declaring James inadmissible under INA § 212(a)(2)(C) (narcotics trafficking), and instead deliberately invoked INA § 212(a)(7) (documentation grounds) as a pretext to bar her entry. This maneuver kept James out of the country while insulating CBP's trafficking allegations from judicial review, and punished Eteros USA by depriving it of L-1A executives it expected present in the United States to manage operations.

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

Against that backdrop, recall that CBP assured Plaintiffs in June 2024 that the agency would honor any USCIS approval of Eteros USA and James's L-1A petition. Yet when USCIS approved the petition in February 2025, CBP again reversed course. On information and belief, CBP pressured USCIS to issue a Notice of Intent to Revoke only weeks later, nullifying the USCIS L-1A approval CBP had promised to respect. This sequence — acknowledgment of binding precedent, use of pretextual grounds to exclude, written assurance, reliance, and then reversal engineered through inter-agency coordination — demonstrates that Defendants were not neutrally applying the law, but were instead directing unlawful actions against Eteros USA by targeting and stripping it of its chosen executive and undermining its ability to conduct lawful U.S. operations.

**D.  Harm to Eteros USA and the Plaintiffs.**

65.    Eteros USA is aggrieved by the actions of Defendants, which have inflicted profound and continuing harm on Eteros USA and its executives. These actions have crippled Eteros USA's operations. Since entering the U.S. market in 2019, the company has invested more than $20 million into facilities, personnel, equipment, sales, and marketing. Defendants' conduct now deprives Eteros USA of its chosen executives to oversee those investments, disrupting its cross-border business model, impairing contracts and projects, and causing financial losses. The accusations of drug trafficking have inflicted reputational injury, undermining relationships with customers, employees, and partners, and deterring recruitment and retention of qualified staff.

66.    The individual plaintiffs have also suffered serious and direct harms. McKellar remains excluded from the United States, stigmatized under INA § 212(a)(2)(C), and stripped of trusted traveler privileges. James has been denied entry, lost NEXUS status, and left in prolonged visa limbo. James and McKellar personally own property in the United States they now cannot

visit or use. Bjergso has been arbitrarily denied NEXUS membership, chilling his ability to travel for his U.S. duties. Defendants compounded these injuries by obstructing FOIA requests, depriving Plaintiffs of access to the very records that would allow them to contest these determinations.

67.     Together, these actions threaten the viability of Eteros USA's U.S. enterprise by excluding its leadership, destabilizing its workforce, damaging its reputation, and deliberately evading judicial review.

68.     Plaintiffs have exhausted any required administrative remedies, or such remedies are unavailable or futile.

## CAUSES OF ACTION

### COUNT I: Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C): Revocations and Denial of Plaintiffs' NEXUS Trusted Traveler Privileges.
### (By All Plaintiffs Against All Defendants)

69.     Plaintiffs reallege and incorporate herein all prior allegations.

70.     Under the Administrative Procedure Act ("APA"), a reviewing court must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." CBP's revocation or denial of Plaintiffs' NEXUS Trusted Traveler Program privileges constitutes final agency action subject to APA review.

71.     Defendant CBP revoked or refused Plaintiffs' NEXUS Trusted Traveler program memberships without lawful basis.

72.     Defendants' revocations and denials were arbitrary and capricious because they were predicated solely on activities previously adjudicated to be lawful at the State and Federal levels. *See Eteros I.* CBP also exceeded its authority by inventing new disqualifying criteria not

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

authorized by statute or regulation. Congress has not barred trusted traveler membership based on lawful cannabis industry employment, nor authorized CBP to treat state-legal commerce as *per se* evidence of drug trafficking.

73.     Plaintiffs were given no notice, no individualized explanation, and no opportunity to contest these adverse actions. McKellar's reconsideration request was summarily denied with conclusory allegations of "aiding and abetting" drug trafficking.  James and Bjergso received no process at all.

74.     CBP's actions therefore were arbitrary, capricious, not in accordance with law, and in excess of statutory authority, in violation of 5 U.S.C. § 706(2)(A), (C). Plaintiffs seek declaratory and injunctive relief vacating these unlawful actions and reinstating Plaintiffs' NEXUS privileges absent a lawful basis for denial.

**COUNT II: Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C):**
**Arbitrary, Capricious, and Unlawful Dual Treatment of Cannabis-Related Activities.**
**(By All Plaintiffs Against All Defendants)**

75.     Plaintiffs reallege and incorporate herein all prior allegations.

76.     CBP, through rulings such as *HQ H327540* (Mar. 7, 2024), and other official customs rulings identified herein, has indicated that companies may lawfully engage in the importation and sales of cannabis-related merchandise pursuant to 21 U.S.C. § 863(f)(1) when *persons*, like Eteros USA, are *authorized* to engage in such activities by state law.

77.     At the same time, CBP has implemented a new policy of general applicability asserting that individuals involved in these same cannabis-related activities, including executives and employees of companies lawfully importing merchandise under § 863(f)(1), are *per se* inadmissible to the United States under INA § 212(a)(2)(C) for allegedly engaging in illicit conduct constituting "aiding and abetting" narcotics trafficking under 21 U.S.C. §§ 841 and 1907.

FIRST AMENDED COMPLAINT

78.     Defendants acknowledge that 21 U.S.C. § 863(f)(1) authorizes the importation of cannabis-related merchandise in states where such activity is permitted by law. *See e.g., Eteros I; HQ H327540* (Mar. 7, 2024). Absent this statutory exemption, such conduct would otherwise fall within the Controlled Substances Act's general prohibition against importing "drug paraphernalia." See 21 U.S.C. § 863(a)(1). By its plain terms, however, the § 863(f)(1) exemption applies to "any person authorized by local, State, or Federal law," and when the exemption applies, none of the prohibitions in § 863(a) are operative—including the bar on "sell[ing] or offer[ing] for sale drug paraphernalia," 21 U.S.C. § 863(a)(1). Thus, both corporate and individual Plaintiffs are "persons authorized" within the meaning of § 863(f)(1), and their conduct—including importing, selling, and offering for sale cannabis-related equipment in authorized jurisdictions—is lawful under federal law.

79.     The legality of the import activities performed by the Plaintiffs was adjudicated between the parties in *Eteros I, supra,* and is *res judicata,* precluding Defendants from taking the arbitrary, capricious, and unlawful actions complained of herein.

80.     The legality of importing cannabis-related merchandise into the United States in States where possession, manufacture, and/or distribution of same has been authorized by State law has been ruled upon by Defendant CBP in many rulings, including but not limited to *HQ H327540* (Mar. 7, 2024).

81.     These rulings represent the official position of Customs and are binding on the agency and its employees until revoked or modified. *See* 19 U.S.C. § 177.9; *see also* 19 U.S.C. § 1625(c).

82.     Despite these binding authorities, Defendants have adopted a contradictory practice: permitting the entry of Eteros USA's products while simultaneously branding its

FIRST AMENDED COMPLAINT

executives as inadmissible narcotics traffickers under INA § 212(a)(2)(C) solely for managing those same lawful operations. FOIA records confirm that Defendants internally acknowledged *Eteros I* prevented it from invoking § 212(a)(2)(C) against Amanda James, and instead deliberately used INA § 212(a)(7) as a pretext to keep her out of the country and deprive Eteros USA of a key executive previously approved as lawful and qualified for L-1A visas.

83.    The arbitrariness of Defendants' dual treatment is underscored by CBP's June 18, 2024 written assurance to Eteros USA's counsel that it would honor USCIS's decision on James's L-1A petition. When USCIS approved that petition in February 2025, CBP immediately reversed course: on information and belief, CBP induced USCIS to issue a Notice of Intent to Revoke only weeks later, recycling CBP's discredited allegations. This bait-and-switch demonstrates that Defendants' actions were not neutral, but arbitrary, capricious, and unlawful, designed to punish Eteros USA for prevailing in *Eteros I* and to cripple its ability to conduct lawful business through its chosen executives.

84.    CBP's contradictory actions violate the APA because they are arbitrary, capricious and contrary to law.

### COUNT III: Violation of the Administrative Procedure Act Rulemaking Requirements, 5 U.S.C. § 553, and 19 U.S.C. § 1625(c)
### (By All Plaintiffs Against All Defendants)

85.    Plaintiffs reallege and incorporate herein all prior allegations.

86.    Under the Administrative Procedure Act, 5 U.S.C. § 553, federal agencies must engage in notice-and-comment rulemaking before adopting substantive changes to policy or practice of general applicability.

87.    Additionally, 19 U.S.C. § 1625(c) imposes specific procedural requirements on U.S. Customs and Border Protection when modifying or revoking prior interpretive rulings or

FIRST AMENDED COMPLAINT

decisions. Specifically, § 1625(c) requires CBP to *inter alia* publish notice of any proposed modification or revocation in the Customs Bulletin, provide an opportunity for public comment, and issue a reasoned explanation before implementing the change.

88.     CBP's *Headquarters Ruling HQ H327540* (Mar. 7, 2024) explicitly cites the *Eteros* and *Keirton* decisions, upholding the legality of importing cannabis-related equipment pursuant to 21 U.S.C. § 863(f)(1). This ruling represents CBP's established position on the lawfulness of Eteros USA's merchandise under federal law.

89.     By asserting that Eteros USA's business activities are lawful and exempt from federal prohibition under 21 U.S.C. § 863(f)(1), but still constitute *per se* "aiding and abetting narcotics trafficking" under 21 U.S.C. §§ 841, 1907, and INA § 212(a)(2)(C), Defendants effectively reversed CBP rulings on the subject, including *HQ H327540* (Mar. 7, 2024). This policy shift reflects a substantive change in CBP's interpretation of 21 U.S.C. § 863(f)(1) and the treatment of individuals associated with cannabis-related merchandise under the CSA, 21 U.S.C. § 841, 863, and 1907, and the INA § 212(a)(2)(C).

90.     Defendants failed to comply with 19 U.S.C. § 1625(c) by:

    a.  Failing to Publish Notice: Defendants did not publish any notice of the proposed change to their interpretation of 21 U.S.C. § 863(f)(1) in the Customs Bulletin.

    b.  Failing to Solicit Public Comment: Defendants deprived Plaintiffs and other stakeholders of an opportunity to comment on the proposed change.

    c.  Lack of a Reasoned Explanation: Defendants failed to provide any explanation for their departure from *HQ H327540* or reconcile their new position with the CIT's binding decisions in *Eteros Technologies USA, Inc. v. United States*, 592 F. Supp.

FIRST AMENDED COMPLAINT

3d 1313 (Ct. Int'l Trade 2022), and *Keirton, Inc. v. United States*, 600 F. Supp. 3d 1270 (Ct. Int'l Trade 2022).

91.    Defendants also violated the APA, 5 U.S.C. § 553, by failing to conduct notice-and-comment rulemaking before implementing a new policy that treats cannabis-related equipment as *per se* unlawful under 21 U.S.C. §§ 841, 1907, and INA § 212(a)(2)(C). This policy reversal represents a substantive rule change that cannot be imposed without adhering to APA requirements.

92.    Defendants' failure to comply with 19 U.S.C. § 1625(c) and 5 U.S.C. § 553 deprived Plaintiffs and the public of procedural protections and transparency, rendering their actions unlawful, arbitrary capricious and contrary to law.

93.    Plaintiffs are entitled to relief under 5 U.S.C. § 706(2)(A), (C), as Defendants' actions are arbitrary and capricious, exceeded statutory authority, failed to follow procedural requirements, and are inconsistent with established law, 21 U.S.C. § 863(f)(1), and federal caselaw in *Eteros I* which is res judicata as to Plaintiff Eteros USA and the United States, precluding Defendants' from recharacterizing the same lawful conduct as unlawful "narcotics trafficking."

**COUNT IV: Agency Action Unlawfully Withheld or Unreasonably Delayed in Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1)**
**(By Plaintiffs Eteros USA and James Against Defendant USCIS)**

94.    Plaintiffs reallege and incorporate herein all prior allegations.

95.    This Count is brought jointly by Plaintiff Amanda James – a Canadian citizen and executive of Eteros – and Plaintiff Eteros USA, as both are directly aggrieved by the agency's failure to act. It is directed at defendant USCIS.

FIRST AMENDED COMPLAINT

96.    On or about March 28, 2025, U.S. Citizenship and Immigration Services issued a Notice of Intent to Revoke the approved L-1A visa petition for James.

97.    However, nearly five months have passed since the NOIR's issuance USCIS has failed to finalize the revocation process by issuing a final decision either revoking James's petition or reaffirming its approval. USCIS's *de facto* refusal to conclude this matter has left the petition and James's L-1A status in limbo, with no indication of when (if ever) a decision will be made.

98.    The Administrative Procedure Act requires federal agencies to proceed with and conclude matters before them "within a reasonable time." See 5 U.S.C. § 555(b). Furthermore, the APA provides that a reviewing court "shall… compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Taken together, 5 U.S.C. §§ 555(b) and 706(1) impose a legal duty on agencies to avoid undue delay and empower courts to order agencies to act when they have failed to do so.

99.    The delay cannot be justified. By February 2025, USCIS had already approved James's petition — approval that CBP had promised to honor by email to Plaintiffs' counsel. In doing so, USCIS necessarily considered and rejected CBP's June 11, 2024 recommendation of denial premised on trafficking allegations, which was already in the USCIS's possession. Thus, the USCIS February approval of the L-1A for James was not issued in ignorance of CBP's narcotics trafficking allegations but in recognition that they are unfounded and did not bar approval (perhaps due to USCIS's defeat on the very same issue in *Treez, Inc. v. United States Dep't of Homeland Sec.*, No. 22-cv-07027-RS, 2024 U.S. Dist. LEXIS 218511 (N.D. Cal. Dec. 3, 2024)). Immediately after counsel notified CBP of that approval, USCIS issued its NOIR on March 28, 2025, which, on information and belief, USCIS issued to Plaintiffs Eteros USA and James at CBP's urging. This sequence reveals that USCIS's refusal to resolve the NOIR is not

the product of independent adjudication, but part of a coordinated effort with Defendants to perpetuate uncertainty and deprive Eteros USA of its chosen executives.

100.    USCIS's ongoing refusal to finalize the NOIR serves no lawful purpose except to delay judicial review. Plaintiffs are entitled to a final agency action so that they may seek relief from this Court. By unjustifiably withholding any decision for many months, USCIS has acted contrary to the APA's mandate and has unlawfully withheld the required action.

101.    Although no statute specifies an exact deadline for USCIS to decide a petition revocation, the absence of a fixed timetable does not excuse interminable delay. Courts assess whether an agency's delay is unreasonable by weighing several factors – often called the "TRAC factors" (from *Telecommunications Research & Action Center* ("*TRAC*") v. *FCC*, 750 F.2d 70 (D.C. Cir. 1984)). These factors are (1) that agencies must govern their decision making by a "rule of reason"; (2) whether Congress has indicated a speed for agency action; (3) that delays are less tolerable when human health or welfare is at stake; (4) the effect expediting the action would have on agency activities of higher priority; (5) the nature and extent of interests prejudiced by the delay; and (6) that a lack of bad faith does not justify delay. Here, applying the *TRAC* factors, USCIS's delay is unreasonable: (1) no "rule of reason" justifies leaving a corporate petitioner without certainty as to its executive staff; (2) Congress has imposed specific timetables for adjudication, including premium processing deadlines USCIS ignored despite receiving Eteros USA's fees; (3) the delay harms Eteros USA's welfare and operations; and (4) all relevant prejudice falls on Plaintiffs, not USCIS.

102.    By failing to timely conclude the adjudication of James's L-1A petition revocation (the March 28, 2025 NOIR), Defendants – acting through USCIS– have unlawfully withheld and unreasonably delayed agency action that they are legally required to take, in violation of the

FIRST AMENDED COMPLAINT

Administrative Procedure Act, 5 U.S.C. § 706(1). Plaintiffs Eteros USA and James therefore respectfully request that this Court compel USCIS to promptly issue a final decision on the NOIR, within a definite and reasonable timeframe set by the Court, so that Plaintiffs may obtain certainty as to James's immigration status and help restore their ability to lawfully manage Eteros USA's U.S. operations.

<u>COUNT V: Denial of Procedural Due Process (Fifth Amendment)</u><br>(By Plaintiff Eteros USA Against All Defendants)

103.    Plaintiffs reallege and incorporate herein all prior allegations.

104.    The Fifth Amendment to the U.S. Constitution prohibits the government from depriving individuals of liberty or property without due process of law.

105.    Plaintiff Eteros USA has cognizable liberty and property interests that are protected by the Fifth Amendment's Due Process Clause. Eteros USA's liberty interests include its right to engage in lawful business activities, to hire and rely on the continued employment of its chosen executives (including those admitted to the United States under valid visas), and to maintain its good name and reputation free from unwarranted government stigma. Its property interests include its legitimate entitlements in ongoing business operations and related benefits conferred by the government – such as valid visas, trusted traveler program memberships, and other licenses or permissions – which cannot be revoked or suspended without due process. Corporations are "persons" under the Fifth Amendment and are entitled to due process protection for such interests on the same terms as natural persons.

106.    Defendants deprived Eteros USA of those interests without due process. FOIA records show Defendants deliberately acknowledged that *Eteros I* barred it from declaring James inadmissible under INA § 212(a)(2)(C), but nonetheless invoked INA § 212(a)(7) as a pretext to exclude her while insulating its trafficking allegations from review. Defendants employed the

FIRST AMENDED COMPLAINT

same tactic against CEO Aaron McKellar on October 4, 2024, issuing an expedited removal order under INA § 212(a)(7) (lack of documentation) even though the record makes clear CBP's true rationale was its trafficking allegations under § 212(a)(2)(C). By recasting trafficking accusations as documentation deficiencies, Defendants deliberately avoided the procedures and judicial review that would have attached to a § 212(a)(2)(C) determination. These maneuvers punished Eteros USA by depriving it of its L-1A executives while evading neutral adjudication, stigmatizing the company and crippling its U.S. operations.

107.    Defendants similarly targeted Eteros USA's other executives: revoking CEO McKellar's NEXUS status and issuing inconsistent inadmissibility findings; summarily denying Vice President Bjergso's NEXUS application after provisional approval; and branding Plaintiffs as narcotics traffickers despite judicial and agency precedent to the contrary. Each of these acts deprived Eteros USA of the executives it relies on to manage its U.S. operations, damaged its reputation, and disrupted its contracts and workforce stability.

108.    By employing pretextual grounds of inadmissibility, shifting legal justifications, and inter-agency coordination to evade review, Defendants denied Eteros USA meaningful notice and opportunity to be heard. The Fifth Amendment requires fair procedures and meaningful due process – including, as required here, judicial review – before the government may stigmatize a U.S. company as a criminal narcotics trafficking enterprise and cripple its U.S. operations. This combined stigma plus tangible deprivation – government-imposed stigma coupled with the loss of executives' visas/status and related business rights – constitutes a deprivation of liberty and property under the Fifth Amendment, violating constitutional guarantees and depriving Eteros USA of due process of law.

FIRST AMENDED COMPLAINT

109.    Defendants carried out the foregoing deprivations without providing Plaintiff (or its executives) notice or a meaningful opportunity to be heard at a meaningful time. No pre-deprivation hearing or other process was afforded to Eteros USA to contest the "drug trafficking" allegations or the resultant adverse actions. Defendants did not give Eteros USA or its officers timely notice of the specific accusations or an opportunity to present evidence and argument in their defense before revoking visas, issuing ban orders, or stripping away NEXUS memberships. This complete failure to provide notice and a hearing violated Eteros USA's procedural due process rights.

110.    Defendants further deprived Eteros USA of protectible interests without providing constitutional due process by repeatedly employing procedural tactics designed not only to brand Eteros USA and its executives as criminal narcotics traffickers, but to deliberately evade meaningful judicial or administrative review:

    a.   On October 4, 2024, CBP issued CEO McKellar an Expedited Removal Order under INA § 212(a)(7) (documentation grounds) rather than INA § 212(a)(2)(C) (controlled substance trafficker grounds) — a misclassification that insulated CBP's trafficking allegation from immigration judge review.

    b.   Defendants later vacated McKellar's ERO mid-litigation in April 2025 in an effort to moot Plaintiffs' federal complaint, while simultaneously re-issuing a "reason to believe" finding of inadmissibility under § 212(a)(2)(C) at Vancouver International Airport, again without affording any hearing or review.

    c.   Defendants refused to revoke or formally adjudicate either McKellar's or Bjergso's valid L-1A visas, despite branding both Plaintiffs as drug traffickers. By avoiding revocation, Defendants intentionally insulated their actions from APA

review, leaving Plaintiffs stigmatized without any avenue to challenge the allegations.

d. Defendants obstructed James's lawful L-1A petition rights by failing to honor premium-processing timelines despite Defendants' receipt of Eteros USA's payment of expedited fees, and by refusing to finalize the March 28, 2025 Notice of Intent to Revoke for more than five months, thereby leaving James's petition and L-1A status in indefinite limbo and denying Eteros USA the certainty needed to lawfully employ her in the United States.

111. Absent fair procedures, Defendants' "trafficking" label risks inflicting continued and ongoing irreparable and erroneous harm on Plaintiffs' lawful business. Far more process was constitutionally required than Defendants provided—at a minimum, Plaintiffs have a right to notice and an opportunity to be heard before they are deprived of their reputational and economic interests.

112. The cumulative effect of these violations has inflicted serious harm on Eteros USA. Its executives have been excluded from entering the United States, crippling its ability to manage U.S. operations; its reputation has been damaged by Government branding of its officers as narcotics traffickers; its contracts, customer relationships, and employee morale have been destabilized; its access to immigration benefits and trusted traveler programs (NEXUS) has been arbitrarily denied; and its business model — built on lawful cross-border commerce — has been disrupted. Defendants' deliberate evasion of review and denial of basic procedural protections therefore constitute a violation of Eteros USA's right to due process under the Fifth Amendment.

113. Plaintiff Eteros USA has been denied due process of law in violation of the Fifth Amendment of the United States Constitution.

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

**COUNT VI: Violation of the Freedom of Information Act (5 U.S.C. § 552)**
**(By Plaintiffs Amanda James and Aaron McKellar Against**
**Defendants U.S. Customs and Border Protection and**
**United States Citizen and Immigration Services)**

114.    Plaintiffs reallege and incorporate herein all prior allegations.

115.    FOIA requires federal agencies to make records promptly available upon request to any person who has reasonably described the records sought, 5 U.S.C. § 552(a)(3)(A), and to determine within 20 business days whether to comply, 5 U.S.C. § 552(a)(6)(A)(i).

116.    On multiple occasions between July 2024 and February 2025, Plaintiffs Amanda James and Aaron McKellar submitted FOIA requests to Defendants CBP and USCIS seeking records concerning their June 11, 2024, October 4, 2024, and April 29, 2025 border encounters, the ERO, 5-year ban, and inadmissibility determinations issued against McKellar, the referral of James's petition to USCIS, the revocation of James and McKellar's NEXUS privileges, and related determinations. Plaintiffs' requests included passport copies and other identifying information, and reasonably described the records sought.

117.    Defendants have failed to timely and lawfully respond. Defendants repeatedly issued arbitrary "administrative closures" or rejected requests on frivolous grounds (such as asserting Plaintiffs omitted date of birth when it was repeatedly included), and have withheld responsive documents.

118.    By failing to provide the requested records or a lawful basis for withholding, Defendants have "improperly withheld agency records" within the meaning of 5 U.S.C. § 552(a)(4)(B). Plaintiffs have constructively exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(C).

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

38

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

1. **As to Count I (APA – Revocation of NEXUS Privileges):**

   a. <u>Declaratory Relief</u>: Issue an order and judgment declaring that Defendants' revocation or denial of Plaintiffs' NEXUS Trusted Traveler Program memberships was arbitrary, capricious, and not in accordance with law, and was in excess of Defendants' statutory authority.

   b. <u>Vacatur and Reinstatement</u>: Vacate the decisions revoking or denying Plaintiffs' NEXUS memberships and direct Defendants to reinstate Plaintiff Aaron McKellar's and Plaintiff Amanda James's NEXUS membership status and to approve Plaintiff Ryan Bjergso's NEXUS membership application (absent any disqualifying factors unrelated to Plaintiffs' lawful business activities).

2. **As to Count II (APA – Arbitrary "Dual Policy" on Cannabis Equipment):**

   a. <u>Declaratory Relief</u>: Issue an order and judgment declaring that Defendants' practice of deeming Plaintiffs inadmissible as controlled-substance traffickers (or as aiders and abettors of narcotics trafficking) based on their involvement in Eteros USA's cannabis-related business is arbitrary, capricious, an abuse of discretion, and contrary to law.

   b. <u>Declaratory Relief</u>: Issue an order and judgment declaring that the final judgment in *Eteros Technologies USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022), is *res judicata* and binding upon Defendants, conclusively establishing that Plaintiff Eteros USA's importation and distribution of cannabis-

related equipment in states where such activity is authorized by state law is lawful and exempt from federal prohibition under 21 U.S.C. § 863(f)(1).

    c.   <u>Vacatur of Dual Policy and Related Actions</u>: Vacate and set aside Defendants' unlawful "dual policy" that simultaneously permits the importation of cannabis-related equipment under 21 U.S.C. § 863(f)(1) while branding individuals engaged in the same state-authorized activities as inadmissible narcotics traffickers under INA § 212(a)(2)(C). This relief includes vacatur of all determinations, findings, and adverse actions taken against Plaintiffs pursuant to or in reliance on that policy – including but not limited to inadmissibility determinations, visa denials or revocations, trusted traveler revocations, and any records reflecting Plaintiffs' alleged involvement in illicit drug trafficking.

**3. As to Count III (APA and 19 U.S.C. § 1625(c) – Failure to Follow Rulemaking Requirements):**

    a.   <u>Declaratory Relief</u>: Issue an order and judgment declaring that Defendants violated the Administrative Procedure Act's notice-and-comment requirements (5 U.S.C. § 553) and 19 U.S.C. § 1625(c) by effectively modifying or revoking their prior rulings and established policy – including *CBP Headquarters Ruling H327540* (Mar. 7, 2024), which recognizes the legality of importing state-authorized cannabis paraphernalia under 21 U.S.C. § 863(f)(1) – without following the required procedures.

    b.   <u>Declaratory Relief</u>: Declare that any new policy or practice that treats Plaintiffs' lawful cannabis-related activities as a basis for inadmissibility or as illicit "trafficking" under federal law is invalid and without force or effect unless and until Defendants properly promulgate such a policy through lawful APA

FIRST AMENDED COMPLAINT

rulemaking and compliance with 19 U.S.C. § 1625(c). In particular, the Court should declare that the judgment in *Eteros I* remains binding on the parties, and that Defendants cannot disregard that judgment or *HQ H327540*'s interpretation absent proper rulemaking.

**4.  As to Count IV (APA – Agency Action Unlawfully Withheld/Delayed):**

a.  <u>Declaratory Relief</u> (Unreasonable Delay): Declare that Defendant USCIS has unlawfully withheld or unreasonably delayed final agency action on Plaintiffs Eteros USA and Amanda James's L-1A petition revocation proceeding (specifically, USCIS's pending Notice of Intent to Revoke issued March 28, 2025).

b.  <u>Compelled Agency Action</u>: Issue an order compelling USCIS to promptly conclude the adjudication of Plaintiff Eteros USA and Amanda James's L-1A visa petition status. Specifically, order USCIS to issue a final decision on the pending March 28, 2025 Notice of Intent to Revoke for James's approved L-1A petition within 30 days of the Court's order, or within such other timeframe as the Court deems appropriate.

**5.  As to Count V (Fifth Amendment – Denial of Due Process):**

a.  <u>Declaratory Relief</u>: Issue an order and judgment declaring that Defendants' actions have deprived Plaintiff Eteros Technologies USA, Inc. of protected liberty and property interests without due process of law, in violation of the Fifth Amendment. In particular, Defendants have effectively branded Plaintiff Eteros USA and its executives as illicit drug traffickers and have taken punitive action (such as revoking travel privileges and barring entry of its personnel) without providing

FIRST AMENDED COMPLAINT

notice or a meaningful opportunity to be heard, thereby violating Plaintiffs' right to procedural due process.

b. <u>Injunctive Relief</u>: Grant appropriate injunctive relief to remedy these constitutional violations and prevent their recurrence. Such relief should include, but is not limited to: (a) expunging or correcting any government records that label or treat any of the Plaintiffs as narcotics traffickers or as inadmissible on that basis, where such designations were made without affording due process; (b) prohibiting Defendants from taking any further adverse action against Plaintiff Eteros USA or its officers based on allegations of involvement in illicit drug trafficking, unless and until Defendants provide constitutionally adequate process (including, where applicable, timely notice of the allegations, a fair opportunity to rebut them, and a decision by a neutral adjudicator); and (c) restoring, to the extent possible, the status quo ante that existed before Defendants' unlawful actions, so that Plaintiff Eteros USA can continue its lawful U.S. business operations through its chosen executives and personnel without arbitrary or unlawful governmental interference.

6. **As to Count VI (Violation of FOIA, 5 U.S.C. § 552):**

a. <u>Declaratory Relief</u>: Issue an order and judgment declaring that Defendants' failed to provide the requested records in violation of the Freedom of Information Act, 5 U.S.C. § 552.

b. <u>Injunctive Relief</u>: Grant appropriate injunctive relief to remedy Defendant's FOIA violations, including but not limited to: (a) ordering Defendants to promptly conduct an adequate search for all responsive records and produce all non-exempt

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

records; (b) require Defendants to provide Vaughn indices for any withheld

records; and

**7. Attorney's Fees and Costs**

    a.  Award Plaintiffs reasonable attorney's fees and costs under 28 U.S.C. § 2412, 5

        U.S.C. § 552(a)(4)(E), and any other applicable statute or regulation.

**8. Further Relief**

    a.  Grant such other and further relief as the Court deems just, equitable, and

        appropriate under the circumstances.

DATED this 29th day of August, 2025.

FIRST AMENDED COMPLAINT

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

1  PRESENTED BY:        NEVILLE PETERSON LLP

2                        /s/ Richard F. O'Neill

3                       Richard F. O'Neill, WSBA 43858
                        NEVILLE PETERSON LLP
4                       701 Fifth Ave., Ste. 4200-2159
                        Seattle, WA 98104-4089
5                       (206) 905-3648
6                       roneill@npwny.com

7                        /s/ John M. Peterson

8                       John M. Peterson*
                        Patrick B. Klein*
9                       NEVILLE PETERSON LLP
                        One Exchange Plaza at 55 Broadway
10                      New York, NY 10006
                        (212) 635-2730
11                      jpeterson@npwny.com

12                      /s/ Douglas A. Cowgill

13                      Douglas A. Cowgill, WSBA 44319
                        CROSS BORDER VISAS, U.S. BUSINESS IMMIGRATION LAWYERS
14                      808 Nelson Street Box 12148, 17th Floor
                        Vancouver, BC, Canada, V6Z 2H2
15                      (604) 689-8472
16                      dcowgill@crossbordervisas.com

17                      *Counsel for Plaintiffs Eteros Technologies USA, Inc.,*
                        *Aaron McKellar, Amanda James, and Ryan Bjergso*
18

19                      *Admitted Pro Hac Vice*

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT                                    NEVILLE PETERSON LLP
                                                  701 FIFTH AVE., STE. 4200-2159
                                                    SEATTLE, WA 98104-4089
                                                          (206) 905-3648