The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ETEROS TECHNOLOGIES USA, INC.; and AARON MCKELLAR, a citizen of Canada; AMANDA JAMES, a citizen of Canada; and RYAN BJERGSO, a citizen of Canada. <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA; <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, a department of the U.S. government; <br><br> UNITED STATES CUSTOMS AND BORDER PROTECTION, an agency of the U.S. Department of Homeland Security; and <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, an agency of the U.S. Department of Homeland Security; <br><br> Defendants. | CASE No. 25-181 <br><br> **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Noted for Consideration: October 29, 2025 <br><br> **<u>ORAL ARGUMENT REQUESTED</u>** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES.............................................................................. iii

INTRODUCTION ............................................................................................... 1

I.  The Court of International Trade's Final Judgment in *Eteros I* is *Res Judicata* and Precludes Defendants from Relitigating the Legality of Plaintiffs' Conduct. ................... 6

    A.  Defendants Theory is Claim Precluded by *Eteros I*. ............................... 9

    B.  Defendants Theory is Collaterally Estopped by *Eteros I*. ..................... 12

    C.  Defendants' Attempt to Downplay the Binding Judgments of the CIT Rests on a Material Misrepresentation. ..................................... 14

II.  This Court Has Jurisdiction and Plaintiffs Have Stated Valid APA Claims (Counts I–IV). ...................................................................................... 15

    A.  CBP's Revocation/Denial of Plaintiffs' NEXUS Memberships (Count I) .......... 15

    B.  Defendants' "Dual Policy" Toward Plaintiffs (Count II).................................. 17

    C.  Defendants Violated APA and 19 U.S.C. § 1625(c) Notice-and-Comment Requirements by Abruptly Changing its Position on Conduct Involving Cannabis Paraphernalia Without Proper Procedure (Count III). ....................... 20

    D.  USCIS's Protracted Failure to Conclude the L-1A Revocation Process for Amanda James is Actionable as Agency Action Unlawfully Withheld or Unreasonably Delayed (Count IV). .......................... 22

III.  Plaintiff Eteros USA Has Adequately Pleaded a Fifth Amendment Procedural Due Process Claim (Count V). ...................................................................... 26

    A.  Liberty Interests in Lawful Business Operations, Employment, and Reputation.............................................................. 26

    B.  Property Interests in Ongoing Operations and Government Benefits (Visas and NEXUS)......................................................... 28

    C.  Eteros is Entitled to Due Process and Meaningful Review................................. 30

    D.  "Stigma Plus": Reputational Harm Coupled with Tangible Deprivation. ............ 32

    E.  Defendants' Evasion of Meaningful Review...................................................... 34

IV.  Plaintiffs' FOIA Claim is Properly Before the Court and Adequately Pleaded (Count VI). ............................................................................................ 36

CERTIFICATE OF SERVICE........................................................................................

WORD COUNT CERTIFICATION ..............................................................................

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - ii

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

1

2

### <u>TABLE OF AUTHORITIES</u>

3

**Cases**

*Aguirre v. United States NRC*, 11 F.4th 719 (9th Cir. 2021) ......................................................36

*Allen v. McCurry*, 449 U.S. 90 (1980) ......................................................................................7

*Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000) .............................................21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................4, 5

*Bell v. Burson*, 402 U.S. 535 (1971) .....................................................................................29

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ..........................................................27, 28, 30

*Bodenburg v. Apple Inc.*, 146 F.th 761 (9th Cir. 2025).............................................................2, 5

*Borowski v. U.S. Customs and Border Prot.*, 718 F. Supp. 3d 280 (W.D.N.Y. 2024) .................2

*Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986)................................35

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) ..........................................31

*Constantini v. Trans World Airlines, Inc.*, 681 F.2d 1199 (9th Cir. 1982) ...............................11

*Cromwell v. Cty. of Sac*, 94 U.S. 351 (1876) ..........................................................................7

*Eteros Technologies USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022)
..................................................................................................................................passim

*Eteros Technologies USA, Inc. v. United States*, Slip Op. 25-99 (Ct. Int'l Trade Aug. 6, 2025) ......................................................................................................................13, 24

*Fikre v. FBI*, 35 F.4th 762 (9th Cir. 2022) ............................................................................33

*Fuentes v. Shevin*, 407 U.S. 67 (1972).................................................................................31

*Goldberg v. Kelly*, 397 U.S. 254 (1970)................................................................................28

*Goss v. Lopez*, 419 U.S. 565 (1975)....................................................................................29

*Greene v. McElroy*, 360 U.S. 474 (1959)........................................................................27, 35

*Halverson v. Skagit County*, 42 F.3d 1257 (9th Cir. 1994)....................................................31

*Hart v. Parks*, 450 F.3d 1059 (9th Cir. 2006). ....................................................................33

*Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204 (9th Cir. 2017).......................................................5

*Humphries v. Cty. of L.A.*, 554 F.3d 1170 (9th Cir. 2009).....................................................33

*Johnson v. Robison*, 415 U.S. 361 (1974)...........................................................................34

*Johnson v. United States*, 145 F.4th 1158 (9th Cir. 2025) ....................................................15

*Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123 (1951)...........................31, 32

*Keirton USA, Inc. v. United States*, 600 F. Supp. 3d 1270 (Ct. Int'l Tr. 2022)............8, 12, 14, 18

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - iii

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

*Kucana v. Holder*, 558 U.S. 233 (2010)................................................................15

*Landon v. Plasencia*, 459 U.S. 21 (1982) ...........................................................29

*McClain v. Apodaca*, 793 F.2d 1031 (9th Cir. 1986)..........................................8, 9

*Minneapolis & St. Louis R. Co. v. Beckwith,* 129 U.S. 26 (1889)..............................30

*Mt. Diablo Hospital Dist. v. Bowen*, 860 F.2d 951 (9th Cir. 1988)............................21

*Nevada v. United States*, 463 U.S. 110 (1983) ......................................................9

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004) .........................................23

*NRDC v. United States EPA (In re NRDC)*, 956 F.3d 1134 (9th Cir. 2020).............................26

*Old Dominion Dairy Products v. Secretary of Defense,* 631 F.2d 953 (D.C. Cir. 1980)27, 30, 31, 33

*Paul v. Davis,* 424 U.S. 693 (1976) .....................................................................32

*Phillips v. Spencer,* 390 F. Supp. 3d 136 (D.D.C. 2019) ...........................................28

*Ralls Corp. v. CFIUS*, 758 F.3d 296 (D.C. Cir. 2014)...............................................30

*Safe Air For Everyone v. Meyer,* 373 F.3d 1035 (9th Cir. 2004) ..................................5

*Salter v. Quality Carriers, Inc.*, 974 F.3d 959 (9th Cir. 2020)....................................5

*South Delta Water Agency v. United States, Dep't of Interior, Bureau of Reclamation*, 767 F.2d 531 (9th Cir. 1985) .......................................................................9

*Tahoe-Sierra Preservation Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064 (9th Cir. 2003) .......................................................................12

*Telecommunications Research & Action Center v. FCC,* 750 F.2d 70 (D.C. Cir. 1984) ... 3, 23, 25

*U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ......................................35

*United States v. Mendoza-Lopez*, 481 U.S. 828 (1987) ..........................................34

*Vanelli v. Reynolds School District*, 667 F.2d 773 (9th Cir. 1982) .............................33

*Webster v. Doe*, 486 U.S. 592 (1988) ................................................................34

*Wisconsin v. Constantineau*, 400 U.S. 433 (1971) ...........................................30, 32

*Yagman v. Garcetti*, 673 F. App'x 633 (9th Cir. 2017).........................................8, 9

*Yagman v. Pompeo*, 868 F.3d 1075 (9th Cir. 2017) ..........................................36, 37

*Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442 (9th Cir. 1994)........................21

**Statutes**

19 U.S.C. § 1625 ............................................................... 3, 20, 21, 22

21 U.S.C. § 1595a .......................................................................passim

21 U.S.C. § 1907 ........................................................................passim

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - iv

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

21 U.S.C. § 841 .................................................................................................... passim

21 U.S.C. § 863 .................................................................................................... passim

28 U.S.C. § 1581 ......................................................................................................... 13

5 U.S.C. § 552 .......................................................................................................... 4, 36

5 U.S.C. § 553 ............................................................................................. 3, 20, 21, 22

5 U.S.C. § 555 ................................................................................................ 22, 23, 24

5 U.S.C. § 706 ................................................................................................ 22, 23, 25

8 U.S.C. § 1182 ...................................................................................... 10, 12, 34, 35

8 U.S.C. § 1252 ........................................................................................................... 15

8 U.S.C. § 1365b .......................................................................................................... 16

**Other Authorities**

Restatement, Torts, § 559 ........................................................................................... 32

**Regulations**

19 C.F.R. § 177.9 ........................................................................................................... 1

8 C.F.R. § 235.12 ......................................................................................................... 15

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-CV-00181-KKE] - v

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

**INTRODUCTION**

Defendants' Motion to Dismiss (ECF 40) should be denied. The First Amended Complaint ("FAC") sets forth detailed, well-pleaded facts establishing arbitrary, unlawful, contrary to law, and unconstitutional agency conduct. Plaintiffs, Eteros Technologies USA, Inc. and its executives, have been branded narcotics traffickers and punished by U.S. officials despite Eteros's business activities being authorized by federal statute and confirmed by prior *res judicata* litigation against the Federal Government.

As the FAC explains, a final U.S. Court of International Trade ("CIT") judgment and binding U.S. Customs and Border Protection ("CBP") rulings[1] have conclusively determined that Eteros's importation and sale of equipment used in the lawful harvesting of cannabis and other plants does not violate federal law by virtue of 21 U.S.C. § 863(f)(1). Yet Defendants have adopted a punitive "dual policy" permitting Eteros's cannabis equipment lawful U.S. entry while barring Eteros's officers from entering, on the theory that their distribution of the very same licit merchandise constitutes "illicit" drug trafficking. This policy, foreclosed to the government by *res judicata*, has crippled Eteros and deprived it of its L-1A work visa entitled executives, violating the Administrative Procedure Act ("APA"), and the Fifth Amendment to the U.S. Constitution.

At the motion to dismiss stage, Plaintiffs need only allege plausible claims – not prove them – and the Court must presume that the factual allegations in the complaint are true and draw

---

[1] Customs rulings are "binding on all Customs Service personnel" and "represents the official position of the Customs Service with respect to the particular transaction or issue described therein." 19 C.F.R. § 177.9(a).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 1

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

1   all reasonable inferences in Plaintiffs' favor. *Bodenburg v. Apple Inc*., 146 F.th 761, 767 (9th Cir.

2   2025). Under these standards, each of Plaintiffs' claims is more than adequately supported:

3       **APA (Count I – NEXUS Revocations)**: The FAC alleges CBP arbitrarily revoked/denied

4   Plaintiffs' NEXUS Trusted Traveler memberships solely from their involvement with Eteros,

5   without lawful basis or due process. As multiple courts (including this one) have held, NEXUS

6   revocations are APA reviewable and are not "committed to agency discretion by law," because

7   CBP's own rules and criteria provide meaningful standards limiting its discretion. *See* Order of

8   August 7, 2025 Granting/Denying in Part Motion to Dismiss, ECF 30 (citing *inter alia*, *Borowski*

9   *v. U.S. Customs and Border Prot.,* 718 F. Supp. 3d 280, 291-92 (W.D.N.Y. 2024) (finding

10  jurisdiction over APA claim challenging NEXUS denial). Plaintiffs plausibly allege the

11  revocations were an abuse of discretion and not in accordance with law.

12      **APA (Count II – Dual Policy on Cannabis Equipment)**: The FAC details an unlawful,

13  inconsistent policy whereby Defendants treat activities explicitly deemed lawful (*i.e.,* Eteros's

14  importing and distribution conducted pursuant to 21 U.S.C. § 863(f)(1)), as grounds for

15  inadmissibility. Such a policy, which flouts the binding effect of the unappealed CIT judgment in

16  *Eteros Technologies USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022)

17  ("*Eteros I*"), is the epitome of arbitrary and capricious action. Defendants' refusal to heed the

18  result in *Eteros I* (and their reliance on 21 U.S.C. §§ 841 and 1907 to recast Plaintiffs' import and

19  distribution model as illicit narcotics trafficking) is both contrary to law and *res judicata* on the

20  issue of legality.

21      **APA (Count III – Failure to Follow Rulemaking Requirements)**: The FAC further

22  alleges that Defendants, in effect, reversed prior policy and rulings without undertaking required

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 2

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

procedures. CBP's Headquarters Ruling H327540 (Mar. 7, 2024), and numerous other CBP rulings (FAC ¶20) formally cite *Eteros I* and hold that cannabis equipment may be imported legally under § 863(f)(1) by persons authorized under state law. By later treating that same conduct by Eteros as *per se* unlawful (to justify retaliatory inadmissibility determinations under the INA), Defendants have unlawfully modified or revoked their prior position without notice-and-comment rulemaking or the public notice required by 19 U.S.C. § 1625(c) and 5 U.S.C. § 553. The APA forbids such abrupt, unannounced policy reversals.

**APA (Count IV – Unreasonable Delay)**: USCIS has unreasonably delayed final action on Eteros USA's L-1A visa petition for its executive Amanda James by failing to conclude a Notice of Intent to Revoke ("NOIR") that it issued over six months ago. USCIS has kept the NOIR "in limbo," leaving James's visa status – and Eteros's U.S. operations – in an indefinite state of uncertainty. Under the APA and the so-called *TRAC* factors for unreasonable delay,[2] Plaintiffs have stated a valid claim to compel final agency action.

**Fifth Amendment (Count V – Denial of Due Process)**: The FAC alleges that Defendants have imposed a "stigma-plus" economic harm on Eteros – publicly branding the company and its executives as criminal narcotics traffickers, while simultaneously depriving Eteros of concrete interests such as its executives' ability to travel and work in the U.S. pursuant to their L-1A visas, trusted traveler memberships, and business opportunities. This "stigma-plus" harm, coupled with Defendants' deliberate use of procedural sleight of hand to evade judicial review, violates Eteros's Fifth Amendment right to fair process. As a U.S. corporation, Eteros possesses liberty and

---

[2] *See e.g., Telecommunications Research & Action Center v. FCC,* 750 F.2d 70, 80 (D.C. Cir. 1984).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 3

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

property interests in conducting lawful business, maintaining its reputation, and employing its chosen personnel. The government cannot arbitrarily destroy those interests by acting as judge, jury, and executioner – accusing Eteros of crimes that call into question the company's good name and integrity, but denying it any meaningful opportunity to clear its name.

**Freedom of Information Act (Count VI)**: Finally, Plaintiffs Amanda James and Aaron McKellar allege that CBP and USCIS have wrongfully withheld agency records responsive to their FOIA requests about the incidents in question, stating a straightforward claim under 5 U.S.C. § 552(a)(4)(B) for this Court to order the release of the improperly withheld records.

As detailed herein, the Court unquestionably has jurisdiction to review the agency actions challenged in the FAC, as it already ruled when largely denying the Government's earlier motion to dismiss. *See e.g.*, Order of August 7, 2025 (ECF 30). Plaintiffs seek only to hold agencies to the law and to prevent official and pretextual misuse of the INA's drug-trafficking inadmissibility provision as a weapon against lawful enterprises. Accepting Defendants' position would effectively provide the agency a free hand to strategically punish and creatively blacklist lawful companies without regard to binding law, or *res judicata* decisions of other courts. Neither the INA nor the APA countenance such a result, and this Court should reject outright Defendants' motion to dismiss, which is essentially a bid for impunity and immunity.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded facts as true, construe them in the light most favorable to the plaintiff, and draw all reasonable inferences in plaintiff's favor. *Id*.;

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 4

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

1   *Bodenburg v. Apple Inc.,* 146 F.th 761, 767 (9th Cir. 2025). A claim is plausible if the facts alleged

2   allow the court to reasonably infer the defendant's liability. *Iqbal*, 556 U.S. at 678. Importantly,

3   on a 12(b)(6) motion the court does not weigh evidence or resolve factual disputes; it only tests

4   the legal sufficiency of the complaint. *Id*. at 679. Dismissal is inappropriate unless "it appears

5   beyond doubt that the plaintiff can prove no set of facts" entitling it to relief. *Hayes v. Idaho Corr.*

6   *Ctr.,* 849 F.3d 1204, 1208 (9th Cir. 2017).

7        Where a Rule 12(b)(1) motion mounts a facial attack on jurisdiction (as here), the court

8   assumes the truth of the plaintiff's factual allegations and determines whether those facts, on their

9   face, are sufficient to invoke federal jurisdiction. *Safe Air For Everyone v. Meyer,* 373 F.3d 1035,

10  1039 (9th Cir. 2004). The burden of establishing jurisdiction is on the plaintiff, but at the pleading

11  stage this is not onerous – general factual allegations of standing and jurisdiction suffice, as the

12  court presumes those unchallenged facts to be true. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959,

13  964 (9th Cir. 2020).

## **ARGUMENT**

14       Defendants' motion to dismiss rests on a fundamentally flawed premise – that Plaintiffs'

15  conduct constitutes "narcotics trafficking" – a premise colliding head-on with a final, unappealed

16  judgment of the U.S. Court of International Trade and even Defendants' own binding Customs

17  Rulings, all of which hold that Eteros's importation and distribution of cannabis-related

18  equipment is lawful. In *Eteros I*, the CIT held that Plaintiffs' importation and distribution of

19  cannabis trimming equipment violated no federal law and was not subject to any import

20  prohibition. The goods were ordered released into U.S. commerce and the government chose not

21  to appeal that judgment, which is now final.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 5

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

*Res judicata* prohibits the Government from relitigating the Federal legality of Plaintiffs' import operations or repackaging the same facts into a new theory of liability in this Court. Nor may it raise issues which could have been raised in the prior litigation yet were not.

Plaintiffs' FAC clearly articulates Defendants' contradictory and punitive "dual policy": on the one hand, Defendants allows U.S. entry and distribution of Eteros's goods as lawful merchandise; while, on the other hand, Defendants have orchestrated a campaign to bar Eteros's key executives from U.S. entry, revoke their trusted-traveler privileges, and publicly smear the company and its officials as engaged in drug trafficking, based on precisely the same activities CBP itself (and federal courts) hold out as lawful. This incoherent stance is the essence of arbitrary and capricious agency action. Defendants have offered no reasoned explanation for how merchandise can be "legal" enough to import and distribute, yet "illegal" enough to constitute narcotics trafficking and the banishment of its personnel. Absent any such explanation – and none appears in the Motion to Dismiss – Defendants' actions cannot withstand APA review.

The Government's Motion fails on every count. The *Eteros I* final judgment (and CBP's own rulings) not only refute the factual premise of Defendants' position, but also estop the Government from contesting the legality of Plaintiffs' operations now. Plaintiffs have plausibly alleged that Defendants' retaliatory measures violate the APA, the Due Process Clause, and FOIA. Taking the well-pleaded facts as true, Plaintiffs more than adequately state claims for relief, and the motion to dismiss should be denied in its entirety.

## I.  The Court of International Trade's Final Judgment in *Eteros I* is *Res Judicata* and Precludes Defendants from Relitigating the Legality of Plaintiffs' Conduct.

A final judgment by a court of competent jurisdiction is conclusive in subsequent proceedings between the same parties. Under the doctrine of *res judicata* (claim preclusion), "a

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 6

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Cromwell v. Cty. of Sac*, 94 U.S. 351, 352 (1876)). *Eteros I* was a final judgment on the merits by an Article III Court of national jurisdiction which possessed personal jurisdiction over all parties. The CIT's judgment necessarily decided the core issue presented in this case: whether Eteros can lawfully import, possess, and distribute cannabis equipment in the U.S. without such conduct being "contrary to federal law," 21 U.S.C. § 1595a(c), when state law authorizes the *possession, manufacture,* or *distribution* of such merchandise sufficient to trigger 21 U.S.C. § 863(f)(1). The CIT answered with a resounding yes, holding that the prohibitions of § 863(a) do not apply to Plaintiffs' activities when § 863(f)(1) applies. Thus, the merchandise is neither "contrary to law," nor in conflict with "any restriction or prohibition which is imposed by law." 19 U.S.C. §§ 1595a(c) and (c)(2)(A).[3] As the federal defendant in *Eteros I*, the Government had a full and fair opportunity to litigate any and all reasons why Eteros's conduct might be "contrary to law" under § 1595a. It availed itself of one such theory (*i.e.,* Eteros's conduct is contrary to law under § 1595a, particularly the paraphernalia statute, § 863(a)), and lost. It did not argue that Eteros was violating 21 U.S.C. § 841 (the CSA's general drug trafficking provision), 21 U.S.C. § 1907 (defining "narcotics trafficking"), or any other federal law. CBP is barred from attempting to do so now on the same facts.

---

[3] It must be emphasized that in *Eteros I,* CBP detained and excluded the goods under two federal laws: 21 U.S.C. § 863(a), and 19 U.S.C. § 1595a(c) ("Aiding unlawful importation"), which provides seizure and forfeiture authority for any "Merchandise which is introduced or attempted to be introduced into the United States contrary to law," and allows seizure and forfeiture if the "importation or entry is **subject to any restriction or prohibition which is imposed by law** relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute." (Emphasis added).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-CV-00181-KKE] - 7

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

Importantly, the <u>INA does not itself *prohibit* any conduct relating to narcotics trafficking</u>; rather, the INA relies on Title 21 to determine the contours of "narcotics trafficking"—as relevant here, 21 U.S.C. §§ 841, 863, and 1907 (as asserted by Defendants, *see* FAC ¶29). As the merchandise in *Eteros I* was excluded in part as "contrary to law" under 19 U.S.C. § 1595a(c), Defendants were obligated to pursue all other federal laws implicated by Eteros's same conduct—*i.e.,* import, possession, manufacture, distribution. Having thus failed to pursue its current theory of illegality before the CIT in *Eteros I*,[4] and having foregone an appeal in both *Eteros I* and *Keirton USA, Inc. v. United States,* 600 F. Supp. 3d 1270, 1273 (Ct. Int'l Trade 2022) ("*Keirton*"), and having adopted the holding of those cases in numerous CBP Rulings,[5] the Government cannot now evade the consequences of *Eteros I* by conjuring new theories of illegality from the same litigated facts.

*Res judicata* prevents a dissatisfied party from taking a "second bite at the apple" by raising arguments it could have raised in an earlier litigation. *Yagman v. Garcetti*, 673 F. App'x 633, 634 (9th Cir. 2017) (citing *McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986) ("[Plaintiff] cannot avoid the bar of *res judicata* merely by … pleading a new legal theory.")). *Res judicata* "embraces two doctrines, claim preclusion and issue preclusion (or collateral estoppel), that bar, respectively, a subsequent action or the subsequent litigation of a particular issue because of the adjudication of a prior action." *McClain*, 793 F.2d at 1033.

---

[4] Given CBP's allegation in *Eteros I* that the importation constituted a § 1595a(c) violation, the government had a duty to identify other federal laws allegedly implicated in Eteros's importation of § 863(d) goods. Nothing prevented the assertion that even conduct exempted under § 863(f)(1) constitutes a violation of other portions of Title 21, particularly 21 U.S.C. §§ 841 and 1907 (as later asserted by Defendants, FAC § 29). In the actions before this Court, Defendants maintain that Plaintiffs are in violation of the drug trafficking laws of the United States under §§ 841 and 1907, and nothing would have stopped the same assertion from advancing before the CIT in *Eteros I.*

[5] *See e.g.,* FAC ¶ 20 (citing Customs Rulings adopting *Eteros I* and declaring importations under § 863(f)(1) lawful).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-CV-00181-KKE] - 8

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

1

**A. Defendants Theory is Claim Precluded by *Eteros I*.**

First, claim preclusion "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'" *McClain*, 793 F.2d at 1033. (citing *South Delta Water Agency v. United States, Dep't of Interior, Bureau of Reclamation*, 767 F.2d 531, 538 (9th Cir. 1985)). To be clear, "[a] cause of action does not consist of facts, but of the unlawful violation of a right which the facts show." *Nevada v. United States*, 463 U.S. 110, 130 n.12 (1983). "*Res judicata* applies when there is: (1) identity or privity between the parties; (2) a final judgment on the merits; and (3) identity of claims." *Yagman*, 673 F. App'x at 634.

All three elements are satisfied. First, the relevant parties in *Eteros I* and this action are identical—Eteros USA and the United States. Second, the judgment in *Eteros I* was final and unappealed (even adopted by Customs rulings). And third, there is a common nucleus of operative facts: Plaintiffs' U.S. importation/distribution of licit cannabis equipment, and the Government's flailing attempts to penalize that conduct.

Looking further into the third element – "identity of claims" – the Ninth Circuit considers four factors:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Yagman*, 673 F. App'x at 634. Each factor weighs decisively in favor of Plaintiffs:

1) Impairment of rights established in *Eteros I*. *Eteros I* determined Eteros's importation/distribution of cannabis paraphernalia in the U.S. was lawful under 21 U.S.C.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 9

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

§ 863(f)(1) and that the entirety of "§ 863—including the prohibitions of subsection (a) and the basis for seizure and forfeiture under subsection (c)—is inapplicable to Eteros' Subject Merchandise[.]" *Eteros I,* at 1332. Allowing Defendants to re-characterize the same conduct as "narcotics trafficking" under Title 21 would nullify the rights established in *Eteros I* and permit an administrative end-run around a binding federal decision which already ruled the conduct is not "contrary to law" and fully compliant with "any restriction or prohibition which is imposed by law." 19 U.S.C. §§ 1595a(c) and (c)(2)(A). As the FAC alleges (¶ 59), CBP explicitly acknowledged that *Eteros I* prevents application of INA § 212(a)(2)(c) since Eteros "was previously granted an importation exemption" in *Eteros I.* CBP pivoted and "determined that JAMES would be found to be inadmissible" under INA § 212(a)(7)(A)(i)(I) instead. CBP's own written finding that *Eteros I* "prevented" application of INA § 212(a)(2)(C) and required acknowledgment of Eteros's "importation exemption" from *Eteros I* is a direct admission that the agency itself recognized the preclusive effect of that judgment on the legality of Eteros's operations—effectively conceding that *Eteros I* forecloses any claim that Eteros's conduct is "contrary to law," and that subsequent attempts to recharacterize it under a different statute are improper.

    2) Substantially the same evidence. Both actions depend on the same factual record: the nature of Eteros's products, Eteros's U.S. importation/distribution of same, and the § 863(f)(1) federal exclusion triggered by state authorizations of *personal* conduct involving cannabis paraphernalia. The facts informing the Defendants' latest theory of illegality in this case are lifted directly from stipulations entered for purposes of the litigation in *Eteros I* (*see* FAC ¶ 29) clearly establishing a common nucleus of operative facts. The Government's current theory—that

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 10

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

Eteros's executives are narcotics traffickers—rests on the identical evidentiary premise rejected in *Eteros I*, namely that Eteros's conduct vis-à-vis cannabis equipment is illicit and unlawful. No new facts are alleged; only the legal characterization has changed, and the same "evidence" underlies both suits.

3) Infringement of the same right. Both cases concern Eteros's right to operate lawfully within the U.S. without being penalized for conduct Congress, the Courts, and CBP have exempted from federal prohibitions under § 863(f)(1). In *Eteros I*, the Government sought to exclude Eteros's cannabis equipment as contrary to law (the CIT ordered the goods' released into U.S. commerce for further distribution to the company headquarters in Las Vegas, NV); here, Defendants seek to exclude the people who manage distribution of the same goods as "illicit" narcotics traffickers. The asserted governmental power and the private right infringed—the right of Eteros USA to engage in federally lawful trade—are identical.

4) Same transactional nucleus of facts. The Ninth Circuit treats this as "the most important factor." *Constantini v. Trans World Airlines, Inc.*, 681 F.2d 1199, 1202 (9th Cir. 1982). As indicated above, the present controversy arises from the same "transactional nucleus" as *Eteros I*. Given CBP's allegation in *Eteros I* that the importation constituted a § 1595a(c) "contrary to law" violation, the Government had a duty to identify other federal laws allegedly implicated in Eteros's importation of § 863(d) goods. Nothing prevented the assertion that even conduct exempted under § 863(f)(1) constitutes a violation of other portions of Title 21, particularly 21 U.S.C. §§ 841 and 1907 (as now asserted by Defendants (FAC ¶ 29)). In the actions before this Court, Defendants maintain that Plaintiffs are in violation of the drug trafficking laws under §§ 841 and 1907, but Defendants' invocation of immigration statutes to punish Plaintiffs for the same

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 11

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

underlying conduct at issue in *Eteros I* merely changes the legal theory, not the operative facts. *Tahoe-Sierra Preservation Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) (claim preclusion bars re-litigation where both suits arise from the same transactional nucleus even if different relief is sought).

**B.  Defendants Theory is Collaterally Estopped by *Eteros I*.**

Defendants' theory is also precluded by collateral estoppel (issue preclusion). Issue preclusion applies when an issue of fact or law was actually litigated and necessarily decided in a prior proceeding between the same parties. In *Eteros I*, the central issue was whether federal law (the CSA) rendered Plaintiffs' conduct unlawful notwithstanding (i) state authorizations of that same conduct; and (ii) a federal exemption triggered by such state authorizations. The CIT squarely decided that issue in Plaintiffs' favor: "when the (f)(1) exemption is implicated, none of the provisions under section 863 … apply." *Eteros I*; *Keirton USA, Inc. v. United States*, 600 F. Supp. 3d 1270 (Ct. Int'l Tr. 2022).

Defendants try to parse the CSA into separate pieces – suggesting that even if § 863(f)(1) applies to exempt certain conduct involving goods (a point belied by the § 863(f)(1) language involving conduct of "any person authorized"), Plaintiffs still meet the definition of illicit "narcotics traffickers" under § 1907 in violation of § 841. But the Government's reliance on §§ 841 and 1907 for clearly unjustified INA § 212(a)(2)(C) allegations is an attempt to relitigate the legality of Plaintiffs' conduct under federal law. The CIT answered that question in Plaintiffs' favor, and it would defy logic – and basic fairness – to hold that Eteros's *distribution* of cannabis equipment, while legal, simultaneously and *per se* designates Eteros and its officers criminal narcotics traffickers. Had the Government truly believed that Eteros was violating 21 U.S.C.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 12

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

§§ 841 and 1907, it could have argued (in 2021) that Eteros's conduct is "contrary to law" under 19 U.S.C. § 1595a(c). It did not. Neither did it argue in *Eteros I* that state authorization under § 863(f)(1) was irrelevant because Eteros supposedly was "intentionally contributing to the proliferation of the marijuana industry in the United States," (FAC at ¶ 26)—a theory relying on "health, safety, or conservation" justifications. 19 U.S.C. § 1595a(c)(2)(A). On the contrary, the Government defended the CBP exclusion by rejecting application of § 863(f)(1) outright – a contention the CIT squarely rejected. Defendants cannot now collaterally attack the CIT's *Eteros I* judgment by re-characterizing Plaintiffs' conduct as criminal and citing other provisions of Title 21. That issue – whether Plaintiffs' conduct is contrary to federal law – was already litigated, and issue preclusion now bars re-opening it.

While the CIT dismissed Eteros's recent action for lack of jurisdiction in *Eteros Technologies USA, Inc. v. United States*, Slip Op. 25-99 (Ct. Int'l Trade Aug. 6, 2025) ("*Eteros II*"), the court emphasized that *Eteros I* remains binding as to the law it declared, explaining:

> ... [The Court] does not hoard its prior rulings for private use. Eteros I, as a public decision of a United States court, is free to be cited in any forum for whatever authority it may impart in a given case.

Thus, although the CIT could not itself enforce *Eteros I* through a follow-on action due to the significant jurisdictional limitations imposed by 28 U.S.C. § 1581, its judgment remains authoritative and persuasive in other courts—including this one—on the legality of Plaintiffs' § 863(f)(1) conduct.

To the extent Defendants' Motion contends that Plaintiffs were engaged in wrongdoing or that their activities justified Defendants' actions, this Court should reject those contentions as foreclosed by *Eteros I* under *res judicata*. The FAC's allegations, buttressed by that judgment and

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-CV-00181-KKE] - 13

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

Defendants' conduct alleged here, easily "nudge" Plaintiffs' claims across the line of plausibility by negating any legitimate basis for Defendants' narcotics trafficking claims. Defendants have offered no alternative facts of Plaintiffs' illegality that can sidestep the CIT's review/findings on the same facts. Thus, Defendants' Motion cannot succeed without collaterally overturning *Eteros I* – something this Court must not countenance.

### C. Defendants' Attempt to Downplay the Binding Judgments of the CIT Rests on a Material Misrepresentation.

Perhaps recognizing the power of the CIT's decisions in *Eteros I* and *Keirton,* Defendants strive to marginalize them – but do so by misrepresenting the record. Defendants assert that *Keirton* is distinguishable from *Eteros I* because the *Keirton* plaintiff "did not stipulate" that its goods were drug paraphernalia. ECF 40 at fn2. Defendants (incorrectly) contrast this with *Eteros I*, where Eteros had made such a stipulation, implying that the CIT's analysis might have been different absent a stipulation. This argument is factually false and legally irrelevant.

The falsity is clear: *Keirton* explicitly states that the plaintiff "stipulat[ed] that the subject merchandise meets the Federal definition of 'drug paraphernalia' for the purposes of this case." *Keirton*, 600 F. Supp. 3d at 1273. Defendants' misrepresentation does nothing to diminish the weight of the CIT's unappealed opinions; if anything, it underscores the weakness of the Government's position that it felt compelled to manufacture such an explicitly false distinction. The Court should reject Defendants' invitation to sidestep the CIT precedents. The legality of Plaintiffs' business operations has been conclusively, and preclusively, adjudicated, eliminating any doubt that Plaintiffs' U.S. operations are federally lawful, thereby buttressing the plausibility of Plaintiffs' allegations in the FAC that Defendants have acted without lawful justification. ¶

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 14

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II. This Court Has Jurisdiction and Plaintiffs Have Stated Valid APA Claims (Counts I–IV).

Defendants imply that many of Plaintiffs' APA claims are beyond judicial review – either because they are "committed to agency discretion" or barred by immigration jurisdiction-stripping statutes. These arguments fail under the presumption of judicial review, *Johnson v. United States*, 145 F.4th 1158, 1163 (9th Cir. 2025), and nothing in the INA divests this Court of jurisdiction over the instant APA and constitutional claims.

### A. CBP's Revocation/Denial of Plaintiffs' NEXUS Memberships (Count I).

Defendants argue that the decision to revoke or deny NEXUS trusted traveler cards is so discretionary that it is unreviewable. This Court has already rejected that argument in its August 7, 2025 Order, where the Court held it "has jurisdiction to review the revocation of McKellar's NEXUS card." ECF 30, at 10. The Government had cited 8 C.F.R. § 235.12 and INA 8 U.S.C. § 1252(a)(2)(B) to claim unreviewable discretion, but the Court found those unpersuasive. *Id.* at 12. Only discretionary decisions specified by statute are shielded from judicial review, not those arising solely from regulations or guidance. *Kucana v. Holder*, 558 U.S. 233, 248 (2010). Here, no statute expressly commits NEXUS decisions to the Secretary's discretion; the criteria for NEXUS eligibility are found in agency rules and public notices, which provide "law to apply" for APA purposes.

Thus, the agency's decision can be measured against these criteria – for example, whether a revocation was based on a permissible factor or an impermissible one. Plaintiffs allege their NEXUS privileges were revoked/denied solely from involvement with Eteros, not because of any factor enumerated in the program standards. That allegation presents a straightforward legal issue:

1  whether CBP's use of that ground is arbitrary, not in accordance with law, or beyond its authority.

2  Far from "no law to apply," the APA claim on NEXUS is well within this Court's jurisdiction.

3          The FAC alleges the NEXUS revocations at issue violated the APA. First, CBP had no

4  legal basis to revoke/deny Plaintiffs' NEXUS memberships. When Congress wants to disqualify

5  persons from trusted traveler programs, it does so expressly – *e.g.,* 8 U.S.C. § 1365b(k)(3)

6  (denying Global Entry to human traffickers). There is no equivalent provision targeting

7  employees of companies dealing in cannabis equipment. Nor does any regulation/policy

8  disqualify Plaintiffs based on their line of work. Yet the FAC recounts that CBP gave no reason

9  for these NEXUS actions other than their lawful distribution of Eteros's cannabis equipment. This

10 was arbitrary and capricious for multiple reasons: it relied on an impermissible factor (a factor

11 unsupported by statute or any published rule); it ran counter to the evidence, federal law, and prior

12 court/agency rulings; and it was undertaken with no explanation/process. Plaintiffs were given no

13 notice or opportunity to respond – McKellar's NEXUS was simply stripped during his removal,

14 James's was revoked upon her refused entry, and Bjergso's application was summarily denied.

15 FAC ¶¶ 71–73. Such opaque decision-making fails the APA's fundamental requirement of

16 reasoned explanation. It also appears to contravene CBP's own program guidance, which

17 typically would afford an applicant at least a notice of ineligibility reasons or allow

18 reconsideration. In McKellar's case, when he sought reconsideration of the removal order, he

19 specifically requested reinstatement of NEXUS, pointing out that CBP had exceeded its authority

20 by using unlawful criteria. The denial of reconsideration did not refute that point – it merely

21 doubled down on the erroneous view that Eteros's business was "narcotics trafficking." An

22 agency cannot base its action on a legal error without being "not in accordance with law."

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 16

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

Plaintiffs have clearly alleged enough to proceed. They have identified the specific agency actions (revocation of McKellar's NEXUS on Oct. 4, 2024; denial of Bjergso's NEXUS in 2024; revocation of James's NEXUS on June 11, 2024) and explained why those actions were unlawful (no valid disqualifying reason, contrary to law and prior decisions, done without due process). The relief requested is also clear: a declaration that those revocations were arbitrary and unlawful, and an order vacating them and reinstating Plaintiffs' NEXUS status. That is classic APA relief, well within the Court's power. Accordingly, Count I properly states a claim.

### B. Defendants' "Dual Policy" Toward Plaintiffs (Count II).

FAC Count II challenges Defendants' irrational "dual policy" in violation of the APA: <u>allowing Eteros's products to enter and be distributed in U.S. commerce, while simultaneously deeming the people who design and distribute those lawful products to be engaged in per se narcotics trafficking.</u> Plaintiffs finds overwhelming support in Defendants' own contradictory statements, a few of which are detailed below:

| | |
|---|---|
| HQ Ruling H327540 (May 7, 2024) | CBP adopted the holding of *Eteros I*, providing: <br><br>The [*Eteros I*] court determined "… authorization' by one legislative body – be it local, state, or federal – to engage in one of the enumerated activities – be it manufacture, possession, or distribution of drug paraphernalia – would be sufficient to trigger the (f)(1) exemption's applicability." <u>Thus, drug paraphernalia that is destined for states that have legalized cannabis may be exempted under 21 U.S.C. § 863(f)(1).</u><br><br>(Emphasis added). |
| DHS Form I-831 Record of Sworn | CBP Officer McMillen stated to McKellar: |

| | |
|---|---|
| Statement: Aaron McKellar (Oct. 4, 2025) | As the CEO of Eteros Technologies USA, Inc., you appear to be knowingly and intentionally contributing to the proliferation of the marijuana industry in the United States in violation of 21 U.S.C. § 841.<br><br>ECF 1-2 (at 9 of 102) |
| CBP Port Director Gill Denial of Request for Reconsideration | After specifically quoting the language of *inter alia* 21 U.S.C. § 841 and 1907, Port Director Gill explained the reasons for denying Eteros USA and McKellar's Request for Reconsideration of the Oct. 4, 2024 Expedited Removal Order, stating in part:<br><br>Under the regulations and definitions contained within Title 21, the petitioning entity, Eteros Technologies USA, Inc., and the beneficiary, Mr. McKellar, are encouraging, promoting and assisting in the production of marijuana for the purpose of distributing and dispensing and thus, are aiding and abetting the narcotics trafficking of marijuana in the United States in violation of 21 USC 841. …..<br><br>By stipulating that their products are drug paraphernalia[6], Eteros Technologies USA, Inc. has demonstrated that they are knowingly and intentionally contributing to the proliferation of the marijuana industry in the United States[7] and are therefore in violation of 21 USC 841.<br><br>(Emphasis added). |

---

[6] Defendants' argument rests on a disproven notion that all items falling into the broad CSA definition of "drug paraphernalia" are illicit and prohibited from entry. The CIT's decisions in the *Eteros I* and *Keirton* cases teach otherwise. Defendant seems to forget that it was a party to both cases, and is bound by the decisions therein.

[7] This presumes that the entirety of the "marijuana industry" in the United States is illegal. State and local laws authorize marijuana industries in various jurisdictions in the United States, and 21 U.S.C. § 863(f)(1) withdraws Federal enforcement over cannabis-related paraphernalia in those cases where States' laws authorize persons to *possess, manufacture,* or *distribute* same. Eteros is uniquely situated and its enterprise is lawful under all federal and applicable state laws.

1    Defendants' Motion does not attempt to rationalize these discrepancies.[8] Instead, the

2    Government seems to imply that one hand of DHS (CBP's customs arm) can pursue one policy

3    while another hand of DHS (CBP's border/admissibility arm and USCIS) pursues the opposite,

4    and that no court is entitled to scrutinize the inconsistency. That is wrong.

5
6    An agency cannot insulate itself from judicial oversight by compartmentalizing

7    contradictory policies internally. Here, DHS's components are applying mutually exclusive legal

8    standards to the same facts and legal issues that arose in *Eteros I*. Under one standard (the

9    CIT/CBP-HQ standard), Plaintiffs' conduct "is not prohibited or unlawful" under federal law

10   pursuant to 21 US.C. § 863(f)(1). Under the other (the "border enforcement standard"), the very

11   same conduct renders Plaintiffs "inadmissible" as illicit drug traffickers. These two positions

12   cannot be reconciled; one of them is necessarily wrong. By failing to acknowledge, let alone

13   reconcile, the inconsistency, Defendants have acted arbitrarily and not in accordance with law –

14   the "law" in question including the controlling interpretation of § 863(f)(1) as pronounced in

15   *Eteros I*.

16
17   Agencies are free to change their policies or interpretations, but they must at least explain

18   why and take proper steps (such as notice-and-comment if a rule change is involved). Defendants

---

[8] Defendants also rely heavily on a 2018 CBP public statement (issued around the time of Canada's marijuana legalization) to claim that Defendants have been "entirely consistent." ECF 40 at 11-12. This argument is doubly flawed. First, the 2018 statement was a general policy announcement predating all of the critical legal developments in this area – it cannot account for the subsequent CIT case law and CBP rulings that have clarified the lawful status of state-authorized persons engaging in federally exempt cannabis business activity. Second, the statement's language falls far short of establishing the blanket rule that Defendants claim, and it said nothing specific about individuals engaged in cannabis-related businesses in U.S. states where such activity is lawful and exempt from federal prohibitions under § 863(f)(1). Defendants' reliance on the 2018 CBP statement cannot salvage its untenable position, especially in the face of CBP's post-2018 legal posture which repudiates any *per se* inadmissibility rule (*e.g.*, publishing repeated Custom rulings citing *Eteros I* and acknowledging § 863(f)(1) imports are lawful (FAC ¶ 20)).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-CV-00181-KKE] - 19

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

did none of that here. They simply moved against Eteros's personnel under a "trafficker" theory that is irreconcilable with the legality of Eteros's conduct involving cannabis paraphernalia. FAC Count II connects all necessary dots in alleging that Defendants' unexplained divergence violates the APA; and from this, plausibility is self-evident.

### C. Defendants Violated APA and 19 U.S.C. § 1625(c) Notice-and-Comment Requirements by Abruptly Changing its Position on Conduct Involving Cannabis Paraphernalia Without Proper Procedure (Count III).

Count III complements Count II by focusing on the procedural unlawfulness of Defendants' sudden policy reversal. Under the APA, agencies must undertake notice-and-comment rulemaking for new substantive rules or policy changes that depart from existing law. 5 U.S.C. § 553. Separately, 19 U.S.C. § 1625(c) provides that if CBP has an established interpretive ruling that would be modified/revoked by a later interpretive action, CBP must first publish notice of the proposed change and allow public comment. Plaintiffs allege that Defendants effectively implemented a new rule in 2024—*i.e.,* that persons involved in state-authorized cannabis paraphernalia commerce are automatically treated as engaging in illicit drug trafficking (for immigration/trusted-traveler purposes). This new policy reverses CBP's prior rulings (FAC ¶ 20) which held such conduct lawful; yet, Defendants did not satisfy APA and § 1625(c) processes, instead applying it *ad hoc* to Plaintiffs—a textbook APA § 553 violation.

Moreover, because CBP had a long-standing and "established practice" – since at least the CIT's 2022 *Eteros I* decision – of not treating § 863(f)(1) distributions of cannabis equipment as unlawful narcotics trafficking, the sudden shift constitutes a *de facto* modification of a prior interpretive position, triggering § 1625(c). The FAC explicitly alleges: "Defendants failed to comply with 19 U.S.C. § 1625(c)" in that they gave no notice and comment before "treat[ing]

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 20

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

state-authorized cannabis equipment as *per se* unlawful" under federal drug laws. It even itemizes the failures: no publication of proposed change, no explanation of reasoning, no opportunity for affected parties to respond. At the motion stage, the Court need not finally resolve the exact parameters of CBP's dual role in customs and immigration – the key is that Plaintiffs have plausibly alleged CBP circumvented required procedures in how it changed course. Even if one viewed this purely as an APA notice-and-comment issue (independent of § 1625), the allegations hold up. A sudden change in a regulatory interpretation that has broad impact (affecting who can enter the U.S. or hold NEXUS based on cannabis industry involvement) is a substantive rule change requiring APA rulemaking. *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 449 (9th Cir. 1994) (agency violated APA by adopting new policy without notice-and-comment); *Mt. Diablo Hospital Dist. v. Bowen*, 860 F.2d 951, 956 (9th Cir. 1988). Plaintiffs were directly impacted by this change without any notice – indeed, they reasonably relied on the CIT judgment and CBP's published rulings which gave them no indication that participating in Eteros's trade would render them illicit narcotics traffickers. Defendants' failure to announce their new policy deprived Plaintiffs and others of the chance to comment or adjust compliance, which is precisely what § 553 and § 1625(c) are meant to prevent.

The courts look to whether the agency action "effectively amends" a prior rule or significantly changes a policy. *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020-21 (D.C. Cir. 2000) (agency guidance treated as binding policy can be reviewable rule). Here, the change is evident: pre-2024, CBP's policy (per rulings) allowed Eteros's imports and raised no known bar to its executives; in 2024, CBP started banning those executives by reinterpreting the laws under Title 21 – an abrupt about-face. The results (banned entries, revoked cards) speak loudly

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 21

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

that a rule change occurred. And CBP's internal communications (to be explored in discovery) likely will confirm a deliberate policy decision was made to "get tough" on those dealing in cannabis-related merchandise, notwithstanding prior guidance and notwithstanding the clear attenuation between the conduct of Eteros' executives and any principal controlled substance violator. The APA requires such shifts to be public and reasoned, not hidden.

The FAC thus states a valid claim that Defendants violated both § 553 and § 1625(c). Defendants have not advanced any specific rebuttal except perhaps to deny a "rule" exists. But at minimum, it is a factual question whether a general policy exists – the FAC certainly alleges one (a "new policy of general applicability" deeming such individuals inadmissible). The Court must accept that allegation now. If discovery were to reveal that each Plaintiff's case was a one-off mistake with no broader policy, that might affect the claim – but the consistent pattern among multiple executives strongly indicates a policy. And ironically, Defendants' own motion doesn't dispute they treated Plaintiffs as inadmissible for cannabis-related reasons; they seem to defend it. ECF 40 at 11. So they cannot both insist their actions were correct and disclaim any policy. In any event, Plaintiffs have properly pleaded an APA procedural violation. Count III should proceed to allow development of the record on how and why Defendants deviated from prior law.

### D. USCIS's Protracted Failure to Conclude the L-1A Revocation Process for Amanda James is Actionable as Agency Action Unlawfully Withheld or Unreasonably Delayed (Count IV).

The APA mandates that federal agencies "proceed to conclude a matter presented to [them]" "within a reasonable time." 5 U.S.C. § 555(b). When an agency refuses to act, a reviewing court "shall … compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). To prevail on a 5 U.S.C. § 706(1) claim, a plaintiff must show the agency

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 22

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

failed to take a discrete action that it is legally required to take. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). This Court has authority under § 706(1) to compel USCIS to do what the law requires: timely adjudicate the pending NOIR and issue a final determination on James's L-1A petition.

In assessing whether an agency's delay is "unreasonable," courts apply a six-factor test, *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), known as the "*TRAC* factors":

> (1) <u>Rule of reason</u>: "the time agencies take to make decisions must be governed by a 'rule of reason[.]'" *TRAC*, 750 F.2d at 80;
>
> (2) <u>Congressional timetable</u>: "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[.]" *Id.*;
>
> (3) <u>Delays and human welfare</u>: "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake[.]" *Id.*;
>
> (4) <u>Competing agency priorities</u>: "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[.]" *Id.*;
>
> (5) <u>Nature of plaintiff's interest</u>: "the court should also take into account the nature and extent of the interests prejudiced by delay[.]" *Id.*; and
>
> (6) <u>Impropriety behind delay</u>: "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed[.]'" *Id.*

*See also Indep. Mining Co. v. Babbitt,* 105 F.3d 502, 507 (9th Cir. 1997). As shown below, every *TRAC* factor confirms that USCIS's delay here is egregious and unjustified.

<u>*TRAC* Factors 1 and 2</u>: Congress has set no specific statutory deadline for resolving an L-1A NOIR (Factor 2), but the APA's mandate of prompt resolution supplies the standard. 5 U.S.C. § 555(b).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-CV-00181-KKE] - 23

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

USCIS's protracted failure to finalize the NOIR is not the product of ordinary agency deliberation, but of deliberate coordination with other Defendants to evade judicial review. After initially approving James's L-1A petition on February 11, 2025 (fully aware of CBP's June 2024 recommendation of denial), USCIS abruptly reversed course and issued the March 28, 2025 NOIR, which suddenly included multiple pages of analysis, signaling a firm about-face on an issue the agency had already resolved. On information and belief, this reversal was prompted by pressure from other Defendants, namely CBP, which sought to undo USCIS's approval after committing in writing that it would honor the agency's determination. FAC ¶ 49. Given this background, one might ask: if USCIS has already developed a detailed record and articulated a legal position, why not simply finalize the NOIR and revoke James's L-1A?

The answer lies in a candid acknowledgment by another office of the DOJ in *Eteros II* (CIT Case No. 25-36), where government counsel conceded that issuance of a final revocation would trigger judicial review, stating:

> If USCIS ultimately revokes James's petition, Eteros may appeal the decision to the administrative appeals office or seek review in district court. *See* 8 C.F.R. § 103.3 (outlining the procedures for unfavorable decisions on petitions).

CIT Case No. 25-36, ECF 24 at 4.

This statement, coupled with the agency's sudden refusal to finalize the revocation notwithstanding its entrenched legal position, clarifies Defendants strategy of withholding final action to evade judicial review of its indefensible legal position. Such brazen manipulation of procedure violates the APA's command that agencies proceed "within a reasonable time," 5 U.S.C. § 555(b), and constitutes agency action "unlawfully withheld or unreasonably delayed"

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 24

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

under § 706(1), and in playing judicial review "keep away," further violates Eteros's due process right.

*TRAC* Factors 3 and 5: This case implicates human welfare, not just abstract policy as Eteros's business, and the career and life of James, are in limbo. James has been unable to return to the U.S. to work and lead her colleagues since June 2024. The FAC alleges that Eteros's business operations and growth are damaged by the loss of its executive's leadership – a severe and compounding harm. Such personal and economic harms render the prolonged delay far from tolerable as USCIS's inaction here inflicts tangible hardship on Plaintiffs' welfare and interests, amplifying the unreasonableness of the delay.

*TRAC* Factor 4: The Court must weigh whether expediting this matter would impede agency activities of a higher priority. But Defendants cannot credibly claim that some higher-priority workload justifies leaving this petition in limbo when USCIS has already completed its adjudication once (approving Ms. James's L-1A petition in February 2025), only to later issue the NOIR (on information and belief, at CBP's urging). The work needed to issue a final decision on the NOIR is minimal – USCIS simply needs to either reaffirm the approval or formally revoke. Requiring the agency to do its job expeditiously here does not divert significant resources from other matters. Ensuring timely resolution of this petition will not disrupt USCIS's mission; it will fulfill it.

*TRAC* Factor 6: The *TRAC* test does not require a showing of bad faith, as even a neutral delay can be "unreasonably delayed." However, any "impropriety lurking behind agency lassitude" would make the case for relief even more compelling. *TRAC*, 750 F.2d at 80. Here, the surrounding circumstances strongly suggest that USCIS's inaction is a tactical choice rather than

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 25

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

an innocent backlog issue. The agency appears to be strategically withholding a final decision to avoid scrutiny of its dubious narcotics-trafficking theory. Notably, CBP officials acknowledged that the CIT ruling in *Eteros I* barred them from deeming Ms. James inadmissible as a drug trafficker – yet they sought other pretexts "while insulating [their] trafficking allegations from review." FAC ¶ 106. The amended complaint details "inter-agency coordination to evade review" by using pretextual grounds against Eteros's executives. FAC ¶ 108. USCIS's unexplained failure to act fits this impermissible pattern. By keeping the NOIR perpetually pending, Defendants have effectively accomplished CBP's goal of sidelining James without ever having to defend their accusation in court. The Ninth Circuit has condemned such tactics. *NRDC v. United States EPA (In re NRDC)*, 956 F.3d 1134, 1138 (9th Cir. 2020) (finding agency delay "unreasonable and egregious" where an agency withheld a final action specifically to frustrate the petitioner's ability to seek judicial review). Likewise here, USCIS cannot be allowed to stall indefinitely in order to shield its allegations from an adverse judicial determination. The APA exists to prevent precisely this type of agency abdication.

### III. Plaintiff Eteros USA Has Adequately Pleaded a Fifth Amendment Procedural Due Process Claim (Count V).

Count V, brought by Plaintiff Eteros USA (the U.S. corporate entity), alleges that Defendants' actions violated the company's Fifth Amendment right to due process.

#### A. Liberty Interests in Lawful Business Operations, Employment, and Reputation.

The Due Process Clause of the Fifth Amendment safeguards not only physical liberty but also liberty interests in pursuing lawful occupations and maintaining one's good name. The Supreme Court has long recognized that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference" is encompassed

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE No. 2:25-cv-00181-KKE] - 26

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

within the liberty and property concepts protected by the Fifth Amendment. In *Board of Regents v. Roth*, 408 U.S. 564, 574 (1972), the Supreme Court explained that if the government's actions impose a stigma that seriously damages an individual's standing in the community or "foreclose[s] his freedom to take advantage of other employment opportunities," due process protections are triggered. In *Greene v. McElroy*, 360 U.S. 474 (1959), the Court held that revoking a defense contractor's security clearance (thereby ending his employment) implicated a liberty interest in his profession, warranting procedural protections:

> Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.

*Id.* at 496. Whereas reputation alone is not a standalone liberty interest, reputational harm combined with alteration of legal status or tangible rights (the "stigma plus" doctrine, discussed below) will implicate liberty interests requiring fair procedure.

Here, Eteros alleges that the Defendants' actions – branding its lawful operations as illicit narcotics trafficking and barring its executives from the country – have stigmatized the company and its executives, jeopardizing their business relationships and property interests, and the ability of Eteros to take advantage of lawful business opportunities. Such governmental stigmatization and disruption of a lawful business implicate the liberty to engage in business and employment free from unwarranted state-imposed stigma. Accordingly, Eteros can claim a liberty interest[9] in

---

[9] Courts have recognized that corporate entities too may suffer liberty deprivations – for instance, being effectively blacklisted from an industry or government contracting can trigger due process protections for a company's good name and business goodwill. *Old Dominion Dairy Products v. Secretary of Defense,* 631 F.2d 953, 964 (D.C. Cir. 1980) ("[I]t cannot be disputed that the Government action in this case effectively foreclosed Old Dominion's freedom

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 27

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

the continuation of its lawful business operations, executive employment, and reputational standing, all of which cannot be impaired by the Defendants without due process of law.

Count V of the FAC implicates significant liberty interests, including the right to continue lawful business without unjustified government interference, the right to pursue lawful business operations, and the right to avoid official stigma on a business's reputation. These interests require robust procedural safeguards before a deprivation may occur.

**B. Property Interests in Ongoing Operations and Government Benefits (Visas and NEXUS)**

Procedural due process also extends to protect property interests that Eteros has in continuing its lawful business operations and in certain government-conferred benefits. A property interest is not defined by the Constitution itself but rather by independent sources such as statutes, regulations, or understandings that secure benefits and support claims of entitlement. In *Board of Regents v. Roth*, the Supreme Court explained:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

408 U.S. at 577. Thus, once an individual or entity has a legitimate claim of entitlement to a benefit, that benefit may be treated as "property" which cannot be taken away without due process. For example, in *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970), the Court held that statutorily-entitled welfare benefits are property, requiring a hearing before termination, and in

---

to take advantage of other Government employment opportunities, and barred ODDPI from all public employment."); *Phillips v. Spencer,* 390 F. Supp. 3d 136, 155 (D.D.C. 2019) (discussing de facto debarment).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 28

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

*Bell v. Burson*, 402 U.S. 535, 539 (1971), the Court ruled that a driver's license, once issued, is a protected property interest because "continued possession of [the] license may become essential in the pursuit of livelihood," and such licenses "are not to be taken away without" the due process of law. *See also Goss v. Lopez*, 419 U.S. 565, 585 (1975).

By analogy, because Eteros's executives were granted NEXUS memberships and L-1A work visas under established criteria, they obtained those benefits for a fixed duration subject to meeting certain program conditions. The continued enjoyment of those benefits – authorization to travel under NEXUS and to live and work in the U.S. under a visa – are property interests once conferred, as long as the individuals met the requirements. While the government retains discretion in immigration and border matters, courts have recognized that certain benefits or status, *once lawfully conferred*, cannot be arbitrarily revoked without procedure. For instance, lawful permanent residents have a recognized property or liberty interest in their residency status which cannot be rescinded without due process. *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (noting even aliens have procedural due process rights in exclusion hearings). The FAC (¶105) alleges that Eteros's U.S. operations and its executives' government benefits – specifically visas allowing U.S. employment and NEXUS trusted traveler memberships – were stripped away by Defendants. If Eteros and Plaintiffs had more than a unilateral expectation – if they met all legal criteria and their status conferred a legitimate entitlement to continue operating or traveling – then those interests qualify as property. The deprivation of the ability to operate a lawful business (for example, by barring its principals from entry) or the revocation of memberships in a government

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 29

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

program like L-1A or NEXUS, without cause or process, raises a colorable property deprivation claim.[10]

Here, Eteros's interest in continuing its lawful U.S. commerce (as a corporate "person"[11]) and its interest in the continued employment of its executives pursuant to validly issued work visas and NEXUS privileges are interests that, once granted, cannot be rescinded in a manner that "contravene[s]…Due Process." *Board of Regents v. Roth*, 408 U.S. at 566. Thus, the FAC properly frames Eteros's property interests, the loss of which – via visa cancellation and NEXUS revocation/denial – required fair procedures.

**C. Eteros is Entitled to Due Process and Meaningful Review.**

Procedural due process requires a fair procedure and a meaningful opportunity to be heard before the government inflicts grave harm that stigmatizes a company or effectively cripples its ability to continue its lawful business. When the government takes action that calls into question one's "good name, reputation, honor, or integrity," due process normally accords an opportunity to refute the charge before the full brunt of the injury is felt. *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."); *Board of Regents v. Roth*, 408 U.S. at 573.

---

[10] *See also e.g., Ralls Corp. v. CFIUS*, 758 F.3d 296 (D.C. Cir. 2014) (U.S. company's ownership of business assets was deemed a property interest, and an executive order forcing divestiture without a hearing violated due process); *Old Dominion Dairy Products v. Secretary of Defense*, 631 F.2d 953, 964 (D.C. Cir. 1980).

[11] Corporations are "persons" entitled to due process protection under the Fifth (and Fourteenth) Amendment's Due Process Clause. *Minneapolis & St. Louis R. Co. v. Beckwith,* 129 U.S. 26, 28-29 (1889) (corporations cannot be deprived of property by the government without due process of law).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-CV-00181-KKE] - 30

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

Defendants' actions – falsely associating the company and its executives with illicit drug trafficking, revoking trusted traveler statuses, and banning entry – both stigmatized the Plaintiffs and dealt severe consequences calculated to drive Eteros from the U.S. market. Case law underscores that such actions demand due process and review. Notably, *Old Dominion Dairy Products v. Secretary of Defense*, 631 F.2d 953, 964 (D.C. Cir. 1980), held that when the Government effectively debarred a contractor from future federal contracts without process (by circulating a blacklist deeming the company "lacked integrity"), it implicated a "due process liberty right" under the Fifth Amendment. The de facto blacklisting "<u>called into question the company's 'good name and integrity,</u>'" thus implicating a protected liberty interest. *Id.* (emphasis added). Because the stigma (questions about the company's integrity) was coupled with a tangible loss (exclusion from work), the court found a due process violation. "[I]t was Old Dominion's due process liberty interest, rather than any federal regulation, that entitled the company to notice of the charges against it and an opportunity to respond." *Id.* In other words, fundamental due process requires a chance to defend itself *before* effectively destroying its business.[12]

So too here: before publicly branding Eteros's business as illicit narcotics trafficking and acting to cripple its U.S. operations, due process principles require that the government provide

---

[12] In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985), the Court distilled the rule succinctly: "The essential requirements of due process … are notice and an opportunity to respond" *before* the termination of a protected interest. Likewise, in *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972), the Supreme Court reaffirmed that "any significant taking of property by the State" necessitates prior notice and hearing except in extraordinary situations where a valid governmental interest justifies postponement. The Court noted that a post-deprivation remedy is not enough where the government's actions are deliberate and foreseeable; due process demands the hearing before the harm occurs, since "no later hearing and no damage award can undo" the wrongful deprivation of a livelihood or status. *Id.* at 82. As the Ninth Circuit explains: "due process ordinarily requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Halverson v. Skagit County*, 42 F.3d 1257, 1260 (9th Cir. 1994); *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 200-01 (1951).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-CV-00181-KKE] - 31

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

notice of the allegations, a meaningful review of the evidence, and a neutral forum to meaningfully contest the agency's stance. Eteros's claim in Count V alleges that Defendants effectively labeled the company (and its executives) as illicit drug traffickers – an accusation carrying severe stigma and criminal consequences – and then leveraged that accusation to inflict concrete harms (deportation, bans, business disruption), all without giving Plaintiffs necessary due process to clear their names.

### D.  "Stigma Plus": Reputational Harm Coupled with Tangible Deprivation.

Count V of the FAC invokes the "stigma plus" doctrine which provides that, defamation or stigma by the Government,[13] when accompanied by an alteration of legal status or the loss of a tangible right or interest, gives rise to a liberty interest protected by due process.

The Supreme Court and the Ninth Circuit consistently recognize that reputational harm coupled with tangible injury triggers due process safeguards. In *Paul v. Davis,* 424 U.S. 693, 701-02 (1976), the Supreme Court held that mere damage to reputation, by itself, does not invoke the Due Process Clause; reputation alone is not a liberty or property interest; however, reputational damage plus some additional harm or alteration of status does implicate a liberty or property interest. In *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), the Court held that where posting someone's name as an "excessive drinker" (stigma) had the legal effect of barring them from buying alcohol (a right/interest), then a stigma-plus deprivation occurs requiring notice and an opportunity to be heard. *Id.* at 437 ("Where a state attaches 'a badge of infamy' to a citizen, due process comes into play.").

---

[13] "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *McGrath*, 341 U.S. at 139 (citing Restatement, Torts, § 559).

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 32

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

The Ninth Circuit provides that the "stigma-plus" test can be satisfied in two ways: (1) the injury to reputation is inflicted in connection with the deprivation of some federally protected right or status; or (2) the reputational injury is caused by the government and the stigma itself results in the denial of a tangible right or status (*e.g.,* exclusion from employment). *Fikre v. FBI*, 35 F.4th 762, 776 (9th Cir. 2022); *Humphries v. Cty. of L.A.*, 554 F.3d 1170 (9th Cir. 2009). In either scenario, the person's liberty interest is implicated, and procedural due process (*e.g.* a name-clearing hearing) is required. In *Hart v. Parks*, the Ninth Circuit explained that a plaintiff who suffers reputational harm at the government's hands has a due process liberty interest if either the defamation is "inflicted in connection with the deprivation of a federally protected right," or the defamation "caused the denial of a federally protected right." 450 F.3d 1059, 1071 (9th Cir. 2006). Likewise, in *Vanelli v. Reynolds School District*, 667 F.2d 773, 777-78 (9th Cir. 1982), dismissal of a teacher amid charges of dishonesty was entitled to due process:

> Appellant's interest in liberty is similarly implicated if a charge impairs his reputation for honesty or morality. The procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment or the alteration of some right or status recognized by state law. Under these principles, appellant's midyear dismissal implicated a protectible liberty interest.

The government cannot circumvent the Fifth Amendment by stigmatizing and punishing Plaintiffs without a hearing. When a Government action "calls into question [a company's] good name and integrity" and simultaneously bars it from opportunities, the company's liberty interest is at stake and due process (notice and hearing) is required. *Old Dominion*, 631 F.2d at 964.

In Eteros's case, the "stigma" is clear: Defendants tarred the company and its executives as illicit drug traffickers, a "badge of infamy" harming their operations/reputations. And the "plus" is also evident: that stigma came hand-in-hand with concrete deprivations – McKellar was

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 33

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

expelled and banned from reentry, executives lost NEXUS travel privileges and L1A benefits, and Eteros's business has been damaged by the loss of its leadership and reputation. Eteros was entitled to a meaningful opportunity to contest the allegations (the "stigma") that served as the basis for the drastic actions against them (the "plus"), and Defendants' deprivation thereof violated due process.

### E. Defendants' Evasion of Meaningful Review.

The FAC alleges that Defendants acted unlawfully to evade meaningful review of their actions. In particular, CBP officials misclassified the basis for McKellar's expedited removal to avoid the normal process that a serious allegation (INA § 212(a)(2)(C), relating to illicit trafficking) would entail (*i.e.* a formal removal proceeding before an immigration judge). Only after McKellar was summarily removed did the agency belatedly "justify" the removal on the trafficking-related ground – by then too late for a hearing. Agencies cannot avoid constitutional scrutiny by clever procedural evasion, and this is precisely the sort of procedural end-run that courts condemn as violating due process.

It is patently unconstitutional for the government to engineer a situation in which it insulates its actions from review and thereby deprives a person of liberty or property with no recourse. *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). In *Webster v. Doe*, 486 U.S. 592 (1988), the Supreme Court held that even where a statute gave the CIA Director broad discretion to terminate employees (and purported to preclude review), courts will presume Congress did not intend to foreclose judicial review of colorable constitutional claims absent an extraordinarily clear statement. *Id.* at 603 (citing *Johnson v. Robison*, 415 U.S. 361, 373-74 (1974)). "Serious constitutional questions" are raised by a scheme that leaves no avenue to challenge an

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 34

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

unconstitutional action. *Id.* (citing *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 681, n. 12 (1986)).

The import for Eteros's case is plain: by disguising the true basis for removal and invoking a summary process with no pathway to judicial review, Defendants deliberately circumvented the normal process (which would have included a hearing and the possibility of administrative appeal or judicial review), violating Plaintiffs' due process. Courts have long frowned upon agencies "gaming" the system to avoid checks and balances. For instance, the *Accardi* doctrine (from *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)), requires agencies to follow their own regulations – they cannot ignore procedural rules to achieve a desired outcome without review. In the context of FAC Count V, Plaintiffs allege that CBP ignored the required procedure (formal removal hearing for a trafficking charge) to sidestep judicial review of the narcotics trafficking allegations, offending due process. The Fifth Amendment's promise of due process protects against deliberate circumvention of procedural protections that Congress or the Constitution has established. "Traditional forms of fair procedure" cannot be so easily side-stepped without running afoul of the Constitution. *Greene v. McElroy*, 360 U.S. 474, 505 n.30, (1959).[14]

Here, by Defendants' design, the FAC alleges Plaintiffs were never allowed to contest the real charges against them. CBP officials knew that if they charged McKellar under the trafficking provision (INA § 212(a)(2)(C)), he would be entitled to a host of procedural rights (formal notice of charges, a hearing before an immigration judge, ability to contest evidence, etc.).

---

[14] In *Greene v. McElroy*, the Court refused to assume Congress authorized the imposition of career-ending sanctions via secret hearings that lacked confrontation rights; absent explicit authorization, the agency's use of procedurally deficient methods to deprive someone of their chosen profession was not permitted.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 35

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

Acknowledging this, they schemed to avoid triggering those protections: mislabeling the charge and using expedited removal, precisely to prevent McKellar (and by extension Eteros) from availing themselves of the normal procedural process. The Constitution does not tolerate such a "heads I win, tails you cannot challenge me" approach by Defendants, and the deliberate circumvention of procedural protections is unconstitutional.

### IV. Plaintiffs' FOIA Claim is Properly Before the Court and Adequately Pleaded (Count VI).

Federal courts have authority "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld," 5 U.S.C. § 552(a)(4)(B) – precisely the relief Plaintiffs seek. The FAC alleges that Plaintiffs submitted multiple FOIA requests to CBP and USCIS regarding the incidents at issue, and that Defendants "failed to timely and lawfully respond," instead issuing ad hoc "administrative closures" and rejecting requests on frivolous grounds. FAC ¶¶ 35, 58-59, 63, 115-18. Defendants withheld responsive records or provided only non-substantive responses with no indication what request(s) the highly redacted production supposedly responds to. By failing to lawfully provide requested records or a lawful withholding basis, Defendants improperly withheld agency records under 5 U.S.C. § 552(a)(4)(B).

The Ninth Circuit has squarely held that courts can waive exhaustion where "further administrative proceedings would prove futile." *Aguirre v. United States NRC*, 11 F.4th 719, 728 (9th Cir. 2021) (citing *Yagman v. Pompeo*, 868 F.3d 1075, 1083-84 (9th Cir. 2017)). FOIA's exhaustion rule is a claims-processing requirement, not a limit on the Court's subject-matter jurisdiction, and dismissal under Rule 12(b)(1) is unwarranted due to alleged non-exhaustion.

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 36

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

Courts have ample discretion to waive exhaustion where insisting on further agency processes would be futile or inefficient. *Id.*. Here, pursuing further processes would clearly be futile. CBP was given multiple opportunities to comply with its FOIA duties but repeatedly thwarted the process, and ultimately failed in its obligations. Plaintiffs' FOIA claim is adequately pleaded and properly before this Court.

## **CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court deny the Motion and allow this case to proceed to a determination on the merits.

DATED this 22nd day of October, 2025.

PRESENTED BY:          NEVILLE PETERSON LLP

/s/ Richard F. O'Neill
Richard F. O'Neill, WSBA 43858
NEVILLE PETERSON LLP
701 Fifth Ave., Ste. 4200-2159
Seattle, WA 98104-4089
(206) 905-3648
roneill@npwny.com

/s/ John M. Peterson
John M. Peterson*
Patrick B. Klein*
NEVILLE PETERSON LLP
One Exchange Plaza at 55 Broadway
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

/s/ Douglas A. Cowgill
Douglas A. Cowgill, WSBA 44319
CROSS BORDER VISAS,
U.S. BUSINESS IMMIGRATION LAWYERS
808 Nelson Street Box 12148, 17th Floor

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-cv-00181-KKE] - 37

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

Vancouver, BC, Canada, V6Z 2H2
(604) 689-8472
dcowgill@crossbordervisas.com

*Counsel for Plaintiff Eteros Technologies USA, Inc. and
Plaintiff Aaron McKellar*

*\*Counsel admitted pro hac vice*

PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FAC
[CASE NO. 2:25-CV-00181-KKE] - 38

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

## CERTIFICATE OF SERVICE

  I hereby certify that on today's date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the defendants, who are CM/ECF participants.


Dated: this 22nd day of October, 2025

/s/ Richard F. O'Neill
Richard F. O'Neill

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
[CASE NO. 2:25-CV-00181-KKE]

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648

## **WORD COUNT CERTIFICATION**

I, Richard F. O'Neill, hereby certify that this memorandum contains 11,171 words, in compliance with the Local Civil Rules, specifically LCR 7(e) and (f), and in accordance with this Court's Order of October 22, 2025 (granting Plaintiffs' Overlength Motion and allowing 3,000 additional words).

 /s/ Richard F. O'Neill
Richard F. O'Neill, WSBA 43858
NEVILLE PETERSON LLP
701 Fifth Ave., Ste. 4200-2159
Seattle, WA 98104-4089
(206) 905-3648
roneill@npwny.com

RESPONSE IN OPPOSITION TO MOTION TO DISMISS
[CASE NO. 2:25-CV-00181-KKE]

NEVILLE PETERSON LLP
701 FIFTH AVE., STE. 4200-2159
SEATTLE, WA 98104-4089
(206) 905-3648