The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ETEROS TECHNOLOGIES USA, INC.; and AARON MCKELLAR, a citizen of Canada; AMANDA JAMES, a citizen of Canada; and RYAN BJERGSO, a citizen of Canada;<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA;<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, a department of the United States government;<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION, the United States Department of Homeland Security; and<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, the United States Department of Homeland Security;<br><br>Defendants. | Case No. 2:25-cv-00181-KKE<br><br>**DEFENDANTS'<br>REPLY TO PLAINTIFFS' OPPOSITION IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Noted for Consideration:<br>December 1, 2025 |

## INTRODUCTION

The Court should grant Defendants' motion (Dkt. 40) and dismiss Plaintiffs' Amended Complaint (Dkt. 34) with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In their opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, Plaintiffs continue to conflate customs and immigration law, waive challenge to key arguments made in the

Motion to Dismiss, and fail to plead sufficient facts to state a plausible claim—all of which warrant dismissal.

## ARGUMENT

**I. PLAINTIFFS' RELIANCE ON CUSTOMS LAW IS ERRONEOUS AND DOES NOT OVERCOME THE FACT THAT ETEROS' EXECUTIVES AID OR ABET THE PROLIFERATION OF MARIJUANA, A CONTROLLED SUBSTANCE ILLEGAL UNDER FEDERAL LAW**

While Plaintiffs begin their opposition by stating that Defendants' motion "rests on a fundamentally flawed premise – that Plaintiffs' conduct constitutes 'narcotics trafficking,'" Pls. Opp'n at 5, it is Plaintiffs' suit that rests on a fundamentally flawed premise—that a ruling of the U.S. Court of International Trade ("CIT") on the importation of equipment is controlling authority in U.S. district court overriding Congress-written immigration law regarding the admissibility of people, which is not the same as the importation of equipment. Indeed, this Court has already plainly stated that CIT cases are not controlling here. Dkt. 30 at 6 n.3 ("CIT decisions are not binding on this Court").

There are no preclusion or estoppel issues in this case because, as stated above, the claim and issue in the case before the CIT are not the same as the claims and issues here. Pls. Opp'n at 5-14. The importation of equipment under customs law is not the same as the admissibility of aliens under immigration law. The claim here involves separate controlling statutes and underlying factual activities than what were at issue in *Eteros Technologies USA, Inc. v. United States*, 592 F.Supp.3d 1313 (Ct. Int'l Trade 2022) ("*Eteros I*"). The facts on which Plaintiffs' claim in this Court are based arose after *Eteros I* and thus involve different facts that could not have been raised before. The issue of Eteros's executives' admissibility under immigration law was not at issue in *Eteros I* and Defendants had no obligation to provide argument for a future issue of immigration law in trade court.

The Court should not give weight to Plaintiffs' "red herring" arguments, which do not change the reality that their reliance on customs law is erroneous and does not overcome the fact that Eteros's executives aid or abet the proliferation of marijuana, a controlled substance illegal under federal law, and are therefore inadmissible under the Immigration and Nationality Act ("INA").

## II. PLAINTIFFS FAIL TO ADDRESS DEFENDANTS' ARGUMENT THAT THE COURT SHOULD DISMISS COUNT I BECAUSE PLAINTIFFS DID NOT EXHAUST THEIR ADMINISTRATIVE REMEDIES

Defendants argued that Plaintiffs' failure to exhaust their administrative remedies regarding the denial or revocations of their NEXUS privileges warranted dismissal. *See* Mot. to Dismiss at 3-7 (citing *McKart v. U.S.*, 395 U.S. 185, 193 (1969) ("no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."); *Parisi v. Davidson*, 405 U.S. 34, 37 (1972) ("The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies."); *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) ("[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided" and "exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration[.]")).

Defendants further explained that because Plaintiffs have not sought redress through the established regulatory procedures at 8 C.F.R. § 235.12(k), the Court lacks a complete administrative record that would be helpful in adjudicating the merits of this issue, and there is also a possibility that use of the regulatory redress procedures would render the current action

moot. *See* Mot. to Dismiss at 5. Therefore, Defendants argued the Court should refuse to review the merits of Plaintiffs' claim and dismiss Count I for failure to exhaust their remedies.

While Defendants previously argued in their first motion to dismiss that the Court lacked jurisdiction to review the NEXUS denial and revocations, Defendants did not argue this in their motion to dismiss the amended complaint.[1] Thus, it is curious why Plaintiffs completely ignore Defendants' arguments about exhaustion of administrative remedies in the motion to dismiss the amended complaint and instead only address whether the Court has jurisdiction to review the NEXUS denials and revocations, which the Court has already ruled that it does. *See* Pls.' Opp'n at 15-17.

Because Plaintiffs did not address the administrative remedies exhaustion argument in their opposition in response to Defendants' motion to dismiss, they waive challenge to this ground for dismissal of Count I. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) ("[I]ssues which are not specifically and distinctly argued and raised in a party's opening brief are waived.").

In addition to ignoring Defendants' administrative remedies exhaustion argument, Plaintiffs also ignore why they have not stated a proper claim for Count I. Plaintiffs claim the NEXUS denial and revocations were "undertaken with no explanation/process," Pls' Opp'n at 16, completely ignoring that they were given notice, explanation, and opportunity to contest the denial and revocations of their NEXUS memberships, as evidenced by the letters sent to Amanada James, Aaron McKellar, and Ryan Bjergso. *See* Mot. to Dismiss, Ex. 1. For example, in the letter to McKellar, CBP stated "We regret to inform you that your membership in NEXUS has been

---

[1] While Defendants still believe the Court does not have jurisdiction to review such determinations, and respectfully reserve appeal of that issue, Defendants respect and defer to the Court's decision on the issue and do not re-argue it here.

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION IN RESPONSE
TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
[Case No. 2:25-cv-00181-KKE] - 4

revoked for the following reason(s): You do not meet program eligibility requirements due to Immigration violation(s)." *Id.* at 3. The letter then explained the process for requesting reconsideration of the revocation. *Id.* at 3-4. The letter also further explained several circumstances that may make an applicant ineligible for participation in the voluntary NEXUS program, including if "[t]he applicant has been found in violation of any customs, immigration, or agriculture regulations, procedures, or laws in any country," "[t]he applicant is inadmissible to the United States under applicable immigration laws," or "[t]he applicant cannot satisfy CBP of his or her low-risk status or meet other program requirements." *Id.* at 4. CBP provides a similar letter with similar information to James and Bjergso. *See id.* at 6-10.

Plaintiffs did not address the content of these letters or refute what is in them. *See* Pls. Opp'n at 15-17. A simple read of the letters makes clear that Plaintiffs were given notice, explanation, and opportunity to contest the denial and revocations of their NEXUS memberships, and Plaintiffs' contention that the NEXUS denial and revocations were "undertaken with no explanation/process" is patently false. Therefore, Plaintiffs pled insufficient facts to state a claim under Count I and it should be dismissed.

Additionally, as Defendants stated in their motion, McKellar filed a reconsideration request with CBP to vacate his expedited removal order, *not* to contest his NEXUS revocation. *See* Mot. to Dismiss, Ex. 2. The title of the motion, which does not mention reconsideration of NEXUS eligibility, is "MOTION TO RECONSIDER AND VACATE THE EXPEDITED REMOVAL ORDER," and while it repeatedly asks for the expedited removal order to be vacated (which it was), not once does it request that NEXUS membership eligibility be reconsidered. *See id.* at 12-18. And yet, Plaintiffs do not address this dispositive fact in their opposition. *See* Pls' Opp'n. at 16. Thus, this is not a case in which an applicant has been given no opportunity to contest the

agency's action. Rather, Plaintiffs simply failed to avail themselves of their readily pursuable redress—which is firmly established through regulation. 8 C.F.R. § 235.12(k).

In sum, Plaintiffs have failed to pursue their administrative remedies in this matter, thereby depriving the Court of a developed record, and depriving the agency of the opportunity to correct any purported errors. *See Shearson v. Holder*, 865 F.Supp.2d 850, 863 (N.D. Ohio, Sept. 9, 2011) ("Here, because Plaintiff has not availed herself of DHS TRIP, Plaintiff has not afforded the various federal agencies charged with correcting any errors the opportunity to formally review Plaintiff's claims and to make any changes to her records, if necessary . . . [A]llowing Plaintiff to sidestep DHS TRIP would significantly undermine the program itself and Congress' intent in creating the program."); *see also Kildare v. Saenz*, 325 F.3d 1078, 1084-85 (9th Cir. 2003) ("We hold that . . . administrative review could correct the individual errors alleged by Appellants. Thus, there is an adequate alternative remedy."). Accordingly, the Court should dismiss Count I for failure to exhaust administrative remedies.

### III. CBP HAS NOT ADOPTED A "DUAL POLICY"—IT IS FOLLOWING THE LAW; THUS, THE COURT SHOULD DISMISS COUNT II FOR FAILURE TO STATE A CLAIM

The Court should also dismiss Count II for failing to state a claim upon which relief can be granted. Plaintiffs allege CBP is engaged in a "dual policy" because it has simultaneously acknowledged that it not unlawful under the Controlled Substances Act ("CSA") for Eteros to import certain cannabis-related merchandise into the state of Washington (due to a ruling by the CIT) while at the same time finding Eteros executives inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(2)(C) as aliens reasonably believed to be aiding or abetting in the illicit trafficking of a controlled substance. Dkt. 34. ¶¶ 76-84. However, CBP's determination of inadmissibility with respect to James and McKellar does not implicate policy; rather, these are

determinations made pursuant to the INA based on their case-by-case individual border encounters.

As explained, Eteros attempts to force CBP and this Court to follow customs and trade law where the applicable controlling law is immigration law, and tries to expand the narrow holding of *Eteros I* into a sweeping law rewriting immigration legislation. *See* Pls' Opp'n at 17-20. For example, Eteros claims that because of *Eteros I*, Eteros's "enterprise is lawful under all federal and applicable state laws." *Id*. at 18 n.7. This is a gross overstatement of the impact of *Eteros I*, which this Court has acknowledged is not binding on this Court. Dkt. 30 at 6 n.3 (stating the CIT has "limited, specialized jurisdiction" and "CIT decisions are not binding on this Court."). Eteros's successful import challenge in *Eteros I* does not grant "lawfulness under all federal laws." The victory in *Eteros I* was strictly about the importation of merchandise. The company's business involves the subsequent use of that equipment to process a Schedule I controlled substance which remains illegal under federal law. *Eteros I* did not change the sweeping federal prohibition on manufacturing and distributing controlled substances, nor did it change the enforcement of immigration law. The CIT itself in *Eteros Techs. USA, Inc. v. United States*, No. 25-00036, 2025 WL 2238718 (Ct. Int'l Trade Aug. 6, 2025) ("*Eteros II*") said that Eteros's claims regarding immigration law and the admissibility of aliens were not under the CIT's jurisdiction and the CIT could not speak to it. As the CIT held:

> Eteros alleges that CBP has undertaken "unlawful and retaliatory conduct" against it by "issuing an expedited removal order, denying visas, revoking NEXUS memberships, and threatening criminal prosecution." Compl. ¶¶ 1, 53. These allegations pertain to CBP's actions with respect to the entry of Eteros's executives into the United States. Wrongful or not, they do not pertain to "the denial of a protest" as to "the exclusion of <u>merchandise</u> from entry." 28 U.S.C. § 1581(a); 19 U.S.C. § 1514(a)(4) (emphasis added).

*Eteros II* at *5.

The CIT specifically emphasized "merchandise" to make clear that it has jurisdiction to consider the exclusion of *merchandise* from entry, not the exclusion of *people* from entry, which is at issue here. The CIT further stated that "[c]ustoms law, at best, is 'lurking in the background' of this action," *id.*, meaning that customs law is not controlling in this action about the entry of Eteros's executives into the United States—immigration law is. And under U.S. federal immigration law, an alien is inadmissible if he or she aids or abets in the proliferation of an illegal controlled substance. 8 U.S.C. § 1182(a)(2)(C).

Plaintiffs' participation in the sale of a product/products used in the processing of marijuana to marijuana dispensaries constitutes assistance in the sale of marijuana, which is considered illicit trafficking under federal law. *See, e.g.*, *Fejes v. Fed. Aviation Admin.*, 98 F.4th 1156, 1163 (9th Cir. 2024) (noting that "state law legalizing marijuana distribution does not negate federal law criminalizing the same action"). CBP is responsible for enforcing the federal laws that Congress enacts with respect to individuals who seek admission at the border, and Congress has mandated that aliens reasonably believed to be aiding or abetting in the trafficking of marijuana are not admissible to the United States. 8 U.S.C. § 1182(a)(2)(C); *see Fejes*, 98 F.4th at 1163. CBP's enforcement of this Congressional mandate is not "policy"; CBP is performing its primary function in enforcing the laws of the United States at the border and is not free to set policy at odds with that which Congress mandates. This "conflict" that Plaintiffs allege ("allowing Eteros's products to enter and be distributed in U.S. commerce, while simultaneously deeming the people who design and distribute those lawful products to be engaged in per se narcotics trafficking"), Pls' Opp'n at 17, is not of CBP's making. CBP did not create these "policies." CBP is following the law. The CIT in *Eteros I* ruled that Eteros's equipment could be admitted under a narrow exception, and Congress in the INA legislated that aliens who aid or abet in the proliferation of an illegal controlled substance are inadmissible. CBP is following both commands. Resolving this

"conflict" requires Congress to act, either by de-scheduling marijuana as a Schedule I controlled substance, or by passing legislation that explicitly exempts state-legal activity from the CSA. It is not up to CBP to unilaterally decide to stop enforcing immigration (or any) law.

As the government highlighted in its motion to dismiss, the language of the inadmissibility ground at § 1182(a)(2)(C)(i) is intended to cover a very broad swath of conduct, within which Eteros's conduct easily fits. *See, e.g., Voronin v. Garland*, 2022 WL 3101534, at *4 (C.D. Cal. Aug. 4, 2022) (no error in USCIS's decision to deny an adjustment application on the basis that the plaintiff was inadmissible under § 1182(a)(2)(C)(i) where he worked at an unlicensed cannabis collective maintaining the video surveillance system, explaining that the language of § 1182(a)(2)(C)(i) "aider, abettor, assister . . ." indicated that "Congress meant to include a wide range of assistive conduct within the scope of the statute, beyond the traditional, more narrow concept of 'aiding and abetting'"); *see also King v. Lynch*, 623 F. App'x 861, 863 (9th Cir. 2015); *Morales-Del Valle v. Lynch*, 647 F. App'x 709, 710-11 (9th Cir. 2016). Plaintiffs do not squarely respond to these cases or many of the arguments Defendants raised in their motion to dismiss, and do not recognize the limitation of *Eteros I* or address Defendants' arguments about it. *See* Pls' Opp'n at 17-20. Instead, Plaintiffs bulldoze ahead with their overly broad interpretation of *Eteros I* and double down on attempting to expand the CIT's jurisdiction and regarding it as binding authority on immigration law (which it is not).

Nor do Plaintiffs respond to the case cited by the government in its motion to dismiss showing that the exemption at § 863(f) *does not* affect other federal laws outside the CSA. *See In Re Nat'l Concessions Grp., Inc.*, No. 87168058, 2023 WL 3244416 (May 3, 2023) (finding the CSA did not affect the applicant's rights under federal trademark law). CBP's actions in determining that Plaintiffs are inadmissible to the United States under the INA are not controlled by the trade case allowing the importation of the merchandise which meets the CSA's exemption

under 21 U.S.C. § 863(f)(1). And CBP is not bound, as Plaintiffs demand, to alter its positions regarding the scope of issues which the CIT decision does not reach, and the inadmissibility of the Plaintiffs is precisely such a position.

Plaintiffs do not identify any actual policy position taken by CBP such that the Court could determine that CBP is working in some underhanded way against them. As explained in Defendants' motion to dismiss, *Eteros I*—upon which Plaintiffs so heavily rely—completely undermines the notion that CBP is engaged in a "dual policy" of any sort. CBP has been entirely consistent about precluding the admission of aliens reasonably believed to be engaged in the illicit trafficking of a controlled substance. As noted in the motion, CBP issued a public statement after Canada legalized marijuana explaining that federal marijuana laws would continue to govern its admissibility determinations, well before the CIT's decision was issued. And CBP has stayed true to the position set forth in its public statement, which is why it contested the importation of Plaintiffs' cannabis-related merchandise in the CIT in the first place.

Additionally, because the CIT's decision is limited in scope, CBP's assessment that Plaintiffs are not admissible to the United States under the well-established law of the INA is not in conflict with any "policy" or law of any kind. Thus, Plaintiffs' amended complaint does not set forth a viable legal theory upon which relief can be granted, and their opposition to the motion to dismiss the amended complaint does not either. Plaintiffs have not alleged actual "unlawful" conduct by CBP (to the contrary, CBP is following the law both in the customs and immigration contexts). Accordingly, Count II should be dismissed for failure to state a claim.

**IV. NOTICE AND COMMENT WAS NOT REQUIRED BECAUSE CBP WAS NOT ENGAGED IN RULEMAKING WHEN IT ADJUDICATED PLAINTIFFS' ADMISSIBILITY; THUS, THE COURT SHOULD DISMISS COUNT III FOR FAILURE TO STATE A CLAIM**

Plaintiffs allege that Defendants implemented a new rule "that persons involved in state-authorized cannabis paraphernalia commerce are automatically treated as engaging in illicit drug trafficking (for immigration/trusted-traveler purposes)" and that this "new policy reverses CBP's prior rulings (FAC ¶ 20) which held such conduct lawful." Pls Opp'n at 20-22. However, CBP implemented no such rule and CBP never issued guidance saying that it is per se lawful under the INA for an arriving alien to be engaged in "state-authorized cannabis paraphernalia commerce." While it may be legal for a U.S. citizen to engage in such commerce and import such paraphernalia into the country under limited, state-specific circumstances, Congress has not made an exception for it to be legal under federal law for an alien who engages in such commerce to be admitted into the country. Marijuana is still a Schedule I substance under the CSA. The INA's grounds of inadmissibility do not contain an exemption for marijuana-related conduct that is no longer penalized under state law. This means that aliens who are involved in the marijuana industry can be deemed inadmissible under INA 212(a)(2), which is what happened here. *See Reimers v. United States Citizenship & Immigr. Servs.*, No. 22-35248, 2023 WL 3773644, at *1 (9th Cir. June 2, 2023), *cert. denied*, 144 S. Ct. 563, 217 L. Ed. 2d 300 (2024) (holding petitioner's operation of a licensed marijuana business categorically precluded her from qualifying for naturalization because "[e]ven though Ms. Reimers's business is licensed under Washington law, it nevertheless constitutes a violation of the CSA. *See* 21 U.S.C. § 812, Schedule I(c)(10) (designating marijuana as a controlled substance)").

DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION IN RESPONSE
TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
[Case No. 2:25-cv-00181-KKE] - 11

Nevertheless, Plaintiffs claim that the Court must accept their factual allegation that CBP implemented a "'a new policy of general applicability.'" *See* Pls Opp'n at 22. While the Court presumes all well-pleaded allegations to be true and draws reasonable inferences in favor of the non-moving party, *see In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144-45 (9th Cir. 2013), Plaintiffs cannot avail themselves of this presumption because their allegations are not well pleaded and the inferences they ask the Court to make are not reasonable.

CBP has not implemented a new or contrary policy or rule, nor does it make assessments of admissibility through broad *per se* rules such as the one Plaintiffs allege. CBP's assessment of Plaintiffs' inadmissibility at the border is not a matter of rulemaking, but rather an adjudication made at the border on a case-by-case basis, in accordance with the laws set forth in the INA and the relevant procedures established by regulation. *See* Mot. to Dismiss, Ex. 3 ("Determinations about admissibility and whether any regulatory or criminal enforcement is appropriate are made by a CBP officer based on the facts and circumstances known to the officer *at the time*."); 8 C.F.R. § 235.1 (emphasis added); *see also Providence Yakima Medical Center v. Sebelius*, 611 F.3d 1181 (9th Cir. 2010) ("adjudications resolve disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals."). CBP does not have a rule which finds people *per se* inadmissible (such "rules" come in the form of laws enacted by Congress which control which aliens are admissible). The root of Plaintiffs' problems with CBP stems from the admissibility determinations made in their individual cases, but that is not a matter CBP must publish in the Federal Register.

Pleading "adequate factual support" means providing "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs continuously calling CBP enforcing immigration law in individual adjudications "policy" and "rulemaking" is nothing more than providing mere labels and conclusions, which the Court does not have to accept as true and

which is insufficient to state a claim upon which relief can be granted. Thus, Plaintiffs continue to fail to advance a cognizable legal theory such they could prevail on their claim and the Court should dismiss Count III.

V. **THE COURT SHOULD DISMISS COUNT IV AS PREMATURE, AS JAMES HAS NOT SUFFERED ANY INJURY WHICH WOULD GIVE HER STANDING TO PURSUE RELIEF, AND USCIS IS NOT REQUIRED TO PROVIDE ANY FURTHER AGENCY ACTION**

On March 28, 2025, USCIS issued James a Notice of Intent to Revoke ("NOIR") her approved L-1A visa petition pursuant to 8 C.F.R § 214.2(l)(9)(iii). Dkt. 34. ¶ 96; *see* Mot. to Dismiss, Ex. 4. On April 24, 2025, James filed a response to the NOIR with USCIS. Dkt. 34. ¶ 56. As of the date of this filing, USCIS has not revoked the petition. Accordingly, the L-1A petition remains approved. James has therefore not yet suffered any injury which would give her standing to pursue relief.

Plaintiffs assert that USCIS "needs to either reaffirm the approval or formally revoke," and that USCIS not having done so is "agency action unlawfully withheld or unreasonably delayed." Pls. Opp'n at 25, *id.* at 22-26. However, nothing in the regulation requires USCIS to issue a reaffirmation notice after issuing a NOIR an approved L-1A visa petition. The regulation says that after receiving rebuttal evidence,

> [t]he director shall consider all relevant evidence presented in deciding whether to revoke the petition in whole or in part. If a blanket petition is revoked in part, the remainder of the petition shall remain approved, and a revised Form I-797 shall be sent to the petitioner with the revocation notice.

8 C.F.R § 214.2(l)(9)(iii)(B).

The regulation does not require a reaffirmation notice if the petition remains approved. *See* 8 C.F.R § 214.2(l)(9)(iii). Thus, there is no remaining agency action required that is being "unlawfully withheld or unreasonably delayed." If USCIS decides not to revoke the petition, it

simply maintains the status quo, as it is now. No further action or reaffirmation is required. James's petition remains approved, and so long as the petition remains approved, James remains eligible to apply for admission (and an admissibility determination would be made by CBP, not USCIS). Accordingly, the Court should dismiss Count IV as premature, as James has not suffered any injury which would give her standing to pursue relief, and USCIS is not required to provide any further agency action.

### V. THE COURT SHOULD DISMISS COUNT V AS ETEROS HAS NO LIBERTY INTEREST IN HAVING ITS EXECUTIVES ADMITTED

Plaintiffs aver that "authorization to travel under NEXUS and to live and work in the U.S. under a visa [] are property interests once conferred [. . .]." Pl. Opp'n at 29, *id.* at 26-30. However, this argument fails because visas and NEXUS memberships are not protected property interests under the U.S. Constitution. The Supreme Court has "long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). And NEXUS membership is not a right but a mere privilege, described as "a voluntary program available to travelers that pass a comprehensive background investigation. Applicants found to be ineligible for NEXUS participation may still be permitted to enter into the United States although they will not be permitted to use the NEXUS dedicated lanes." *See* Mot. to Dismiss, Ex. 1 at 3.

While Plaintiffs also cite *Landon* to state that "lawful permanent residents have a recognized property or liberty interest in their residency status which cannot be rescinded without due process" and "even aliens have procedural due process rights in exclusion hearings," Pl. Opp'n at 29, *Landon* specifically distinguishes between aliens seeking an initial admission

and continuously present resident aliens, which Plaintiffs are not. *Id.* at 32-33. Plaintiffs are not entitled to the same level of process as lawful permanent residents. *See id.*

The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." Procedural due process is not implicated unless there has been a deprivation of one of these interests. *See Kerry v. Din*, 576 U.S. 86, 92-94 (2015). Eteros does not have a constitutional right to have its alien employees admitted to the United States. *Department of State v. Muñoz*, 602 U.S. 899, 908 (2024). "[A] petitioning employer has no property right to have an alien admitted for employment purposes." *Spencer Enterprises, Inc. v. U.S.*, 229 F.Supp.2d 1025, 1043 (E.D. Cal. 2001), *aff'd*, 345 F.3d 683 (9th Cir. 2003) ("The corporation . . . has no constitutionally protected 'property interest' to have an alien admitted into the United States for business purposes."). And "[w]ell settled law [] precludes the [plaintiffs] from arguing that they have a protected interest in obtaining or continuing to hold a visa." *Does 1 through 16 v. U.S. Dep't of Homeland Sec.*, 843 F. App'x 849, 852 (9th Cir. 2021) (holding no protected property interest for F-1 visas) (citing *Kleindienst v. Mandel*, 408 U.S. 753, 762, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)).

Thus, Plaintiffs state no cognizable due process claim. *See, e.g., Khachatryan v. Blinken*, 4 F.4th 841, 862 (9th Cir. 2021) ("an adult citizen lacks a constitutionally protected liberty interest, protected by the Fifth Amendment's Due Process Clause, in the Government's decision whether to admit the citizen's unadmitted nonresident alien parent into the United States.").

And even if Plaintiffs had a protected liberty interest in visas and NEXUS membership (which they do not), Defendants provided Plaintiffs with due process "to clear their names." Pl

Opp'n at 32, *id.* at 30-36.[2]  As previously explained, the NEXUS denial and revocation letters provided means of contesting the decisions, *see* Mot. to Dismiss, Ex. 1, and the NOIR also provided means for challenge.  *See id.*, Ex. 4 at 28-29.  Thus, Plaintiffs' arguments that they were not afforded due process also fail and Count V should be dismissed.

### VI. THE COURT SHOULD DISMISS COUNT VI FOR FAILURE TO STATE A CLAIM. PLAINTIFFS DID NOT EXHAUST THEIR ADMINISTRATIVE REMEDIES FOR THEIR FOIA REQUESTS OR DEMONSTRATE THAT IT WOULD HAVE BEEN FUTILE TO DO SO

The Court should dismiss Count VI of the amended complaint because it fails to set forth allegations sufficient to state a claim for relief.  As Defendants explained in their motion to dismiss, the core problem with Plaintiffs' complaint in this regard is that it lumps together multiple FOIA requests, without sufficiently pleading to a violation for each individual FOIA request made.  *See Aguirre v. United States NRC*, 11 F.4th 719 (9th Cir. 2021) (resolving a case involving multiple FOIA requests by separately assessing the merits of each individual request); *see also Bender v. United States Dept. of Transportation*, 2025 WL 2099194 (S.D. Cal. July 25, 2025) (addressing the merits of multiple FOIA requests individually).  Because Plaintiffs combine their FOIA requests into one untransparent picture, there are insufficient factual allegations to discern what action the agency took as to any particular FOIA request, or whether they administratively appealed any denials or redactions.

---

[2] Plaintiffs argue that "CBP officials misclassified the basis for McKellar's expedited removal to avoid the normal process that a serious allegation […] would entail." Pls.' Opp'n at 34-36. First, Defendants deny this allegation as it is not true. DHS may pursue any applicable charges of inadmissibility and the Section 212(a)(7)(A)(i)()(l) charge of inadmissibility was applicable given McKellar refused to provide a formal statement at the border such that CBP could verify the documents he purported to represent. Second, these allegations are not properly raised here because CBP vacated the expedited removal order and the Court held in its August 7, 2025 order that issues relating to the now vacated expedited removal order are moot. Dkt. 30 at 8 ("With respect to the challenge to the vacated ERO itself, the Court agrees that claim is moot."). Thus, the Court should not consider these improperly raised allegations.

In their amended complaint, Plaintiffs vaguely assert they submitted FOIA requests "on multiple occasions" to both CBP and USCIS, and allege "Defendants have failed to timely and lawfully respond." Dkt. 34. ¶¶ 116-17. They acknowledge, however, that the Defendants *did* provide a variety of responses to their requests for both McKellar and James, though they do not specify which requests received a response and which did not. Dkt. 34. ¶ 35, 58, 117; *see Agua Caliente Tribe of Cupeño Indians of Pala Rsrv. v. Sweeney*, 932 F.3d 1207, 1219 (9th Cir. 2019) (administrative remedies not futile when agency has provided some responses and communicated with requester); *see also Aguirre*, 11 F.4th at 727-28 (same). Though Plaintiffs allege the responses from Defendants were insufficient for a variety of reasons, their amended complaint does not allege that they properly exhausted their remedies by pursuing administrative appeal of each of these responses.

And the problem continues in their opposition to the motion to dismiss. Indeed, Plaintiffs now seem to admit that they did not exhaust their administrative remedies by stating that courts can waive exhaustion where "further administrative proceedings would prove futile." Pls.' Opp'n at 36-37. The entirety of their FOIA argument in their opposition is essentially only one page, and all they say to support that exhaustion would be futile in this case is "CBP was given multiple opportunities to comply with its FOIA duties but repeatedly thwarted the process, and ultimately failed in its obligations." *Id*. at 37. But this is insufficient to demonstrate futility, especially where the Ninth Circuit has held that administrative remedies are not futile when the agency has provided some responses and communicated with the requester. *See Agua Caliente Tribe of Cupeño Indians of Pala Rsrv*, 932 F.3d at 1219. Again, Plaintiffs fail to plead with any specificity regarding their FOIA claim. *See Windom v. Drug Enforcement Agency*, 2020 WL 3791643 (N.D. Cal. July 7, 2020) ("Under the pleading standard of *Iqbal* and *Twombly*, [] '[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements, do not suffice.'"). Accordingly,

Count VI should be dismissed for failure to state a claim and failure to exhaust administrative remedies.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

DATED this 1st day of December, 2025.

    Respectfully submitted,

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERNESTO MOLINA
Deputy Director
Office of Immigration Litigation

JONATHAN ROBBINS
Assistant Director
Office of Immigration Litigation

*s/Roberta O. Roberts*
ROBERTA O. ROBERTS, DC Bar #263073
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Phone: 202-532-4595
Email: Roberta.O.Roberts2@usdoj.gov

*Attorneys for Defendants*

I certify that this memorandum contains 5,534 words, in compliance with the Local Civil Rules and the Court's October 22, 2025 order.

# CERTIFICATE OF SERVICE

I hereby certify that I am an employee in the Office of Immigration Litigation, Civil Division, U.S. Department of Justice, and of such age and discretion as to be competent to serve papers.

I further certify that on today's date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the Plaintiffs, who are CM/ECF participants.

DATED this 1st day of December, 2025.

> _s/Roberta O. Roberts_
> ROBERTA O. ROBERTS
> Trial Attorney
> U.S. Department of Justice
> Civil Division
> Office of Immigration Litigation
> P.O. Box 878, Ben Franklin Station
> Washington, D.C. 20044
> Phone: 202-532-4595
> Email: Roberta.O.Roberts2@usdoj.gov